## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BLAKE LIVELY,<br><br>                              Plaintiff,<br><br>v.<br><br>WAYFARER STUDIOS LLC, a Delaware Limited Liability Company, JUSTIN BALDONI, an individual, JAMEY HEATH, an individual, STEVE SAROWITZ, an individual, IT ENDS WITH US MOVIE LLC, a California Limited Liability Company, MELISSA NATHAN, an individual, THE AGENCY GROUP PR LLC, a Delaware Limited Liability Company, JENNIFER ABEL, an individual,<br><br>                              Defendants. | Civ. Action No. 1:24-cv-10049-LJL (Consolidated for pretrial purposes with 1:25-cv-00449-LJL) rel. 1:25-cv-00779-LJL |
| WAYFARER STUDIOS LLC, a Delaware Limited Liability Company, JUSTIN BALDONI, an individual, JAMEY HEATH, an individual, IT ENDS WITH US MOVIE LLC, a California Limited Liability Company, MELISSA NATHAN, an individual, JENNIFER ABEL, an individual, and STEVE SAROWITZ, an individual,<br><br>                              Plaintiffs,<br><br>v.<br><br>BLAKE LIVELY, an individual, RYAN REYNOLDS, an individual, LESLIE SLOANE, an individual, VISION PR, INC., a New York corporation, and THE NEW YORK TIMES COMPANY, a New York corporation,<br><br>                              Defendants. | |

## CONSOLIDATED PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO CONSOLIDATED DEFENDANT THE NEW YORK TIMES COMPANY'S MOTION TO DISMISS THE AMENDED COMPLAINT

Consolidated Plaintiffs Wayfarer Studios LLC ("Wayfarer"), Justin Baldoni ("Baldoni"), Jamey Heath ("Heath"), It Ends With Us Movie LLC ("IEWU"), Melissa Nathan ("Nathan"), Jennifer Abel ("Abel"), and Steve Sarowitz ("Sarowitz") (collectively, the "Wayfarer Parties") respectfully submit this memorandum of law in opposition to the motion filed by Consolidated Defendant The New York Times Company ("NYT") to dismiss the First Amended Complaint (the "FAC") for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion").

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. iii

RELEVANT BACKGROUND ................................................................................................. 3

LEGAL STANDARD ................................................................................................................ 5

ARGUMENT .............................................................................................................................. 5

I.      THE NYT HAS AMPLE NOTICE OF ITS ACTIONABLE CONDUCT ........................ 5

II.     CALIFORNIA LAW APPLIES TO THE WAYFARER PARTIES' CLAIMS ............... 7

III.    THE WAYFARER PARTIES' CLAIMS SHOULD NOT BE DISMISSED ................. 11

        A.      The Defamation Claim Should Not Be Dismissed .................................................. 11

                1.      The Fair Report Privilege Does Not Apply to Protect the NYT .................... 13

                2.      The NYT's Statements Are Not Constitutionally Protected Opinions ........... 15

                3.      Actual Malice Has Been Pleaded Against The NYT ...................................... 18

        B.      The False Light and Promissory Fraud Claims Should Not Be Dismissed ........... 22

        C.      The Breach of Implied-In-Fact Contract Claim Should Not Be Dismissed .......... 24

IV.     THE MOTION SHOULD, AT MOST, BE GRANTED WITH LEAVE TO
        AMEND ................................................................................................................................ 25

CONCLUSION ........................................................................................................................ 25

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adelson v. Harris*,
  973 F. Supp. 2d 467 (S.D.N.Y. 2013)....................................................8, 10

*Algarin v. Town of Wallkill*,
  421 F.3d 137 (2d Cir. 2005)..............................................................12

*AroChem Int'l, Inc. v. Buirkle*,
  968 F.2d 266 (2d Cir. 1992)...............................................................8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).........................................................................5

*Atuahene v. City of Hartford*,
  10 F. App'x. 33 (2d Cir. 2001) ..........................................................7

*Baker v. L.A. Herald Examiner*,
  42 Cal. 3d 254 (1986) ......................................................................16

*Ball v. Taylor*,
  416 F.3d 915 (8th Cir. 2005) (per curiam)..........................................13

*Bartholomew v. YouTube, LLC*,
  17 Cal. App. 5th 121 (2017) .............................................................12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..........................................................................5

*Biro v. Conde Nast*,
  807 F.3d 541 (2d Cir. 2015)..............................................................19

*Blatty v. New York Times Co.*,
  42 Cal. 3d 1033 (1986) ....................................................................13

*Bose Corp. v. Consumers Union of U.S., Inc.*,
  692 F.2d 189 (1st Cir. 1982), *aff'd,* 466 U.S. 485 (1984)......................19

*Boule v. Hutton*,
  328 F.3d 84 (2d Cir. 2003)................................................................12

*Brady v. Ottaway Newspapers, Inc.*,
  445 N.Y.S.2d 786 (2d Dep't 1981)...................................................12

*Bryks v. Canadian Broad. Corp.*,
　928 F. Supp. 381 (S.D.N.Y. 1996) ....................................................................8

*Carroll v. Trump*,
　664 F. Supp. 3d 550 (S.D.N.Y. 2023) ..............................................................15

*Cassava Scis., Inc. v. Bredt*,
　2024 WL 1347362 (S.D.N.Y. Mar. 28, 2024) ..................................................25

*Chau v. Lewis*,
　771 F.3d 118 (2d Cir. 2014) .............................................................................18

*Church of Scientology of California v. Flynn*,
　744 F.2d 694 (9th Cir. 1984) ...........................................................................13

*Church of Scientology Int'l v. Behar*,
　238 F.3d 168 (2d Cir. 2001) .............................................................................21

*Clyburn v. News World Commc'ns, Inc.*,
　903 F.2d 29 (D.C. Cir. 1990) ...........................................................................20

*Colt v. Freedom Comm'r*,
　109 Cal. App. 4th 1551 (2003) ........................................................................14

*Condit v. Dunne*,
　317 F. Supp. 2d 344 (S.D.N.Y. 2004) ............................................................8, 9

*Conklin v. Laxen*,
　180 A.D.3d 1358 (4th Dep't 2020) ...................................................................16

*Conti v. Doe*,
　535 F. Supp. 3d 257 (S.D.N.Y. 2021) ..............................................................16

*Crane v. Arizona Repub.*,
　972 F. 2d. 1511 (9th Cir. 1992) ...........................................................13, 14, 15

*Cummings v. City of New York*,
　2020 WL 882335 (S.D.N.Y. Feb. 24, 2020) ....................................................25

*Curtis Publishing Co. v. Butts*,
　380 U.S. 130 (1967) .....................................................................................20, 21

*De Havilland v. FX Networks, LLC*,
　21 Cal. App. 5th 845 (2018) ..........................................................................7, 22

*DeIuliis v. Engel*,
　2021 WL 4443145 (S.D.N.Y. Sept. 27, 2021) ...................................................8

*Diaz v. NBC Universal, Inc.*,
  536 F. Supp. 2d 337, *aff'd,* 337 Fed. Appx. 94 (2d Cir. 2009) ...............................................13

*Dong v. Board of Trustees*,
  191 Cal. App. 3d 1572 (1987) ...............................................17

*eCommission Sols., LLC v. CTS Holdings, Inc.*,
  2017 WL 985881 (S.D.N.Y. Mar. 13, 2017) ...........................................23

*Edwards v. Nat'l Audubon Soc'y, Inc.*,
  556 F.2d 113 (2d Cir. 1977)...........................................22

*Eramo v. Rolling Stone, LLC*,
  209 F. Supp. 3d 862 (W.D. Virginia 2016) ...........................................22

*Erickson v. Pardus*,
  551 U.S. 89 (2007)...........................................6

*Freeman v. Mills*,
  97 Cal. App. 2d 161 (1950) ...........................................12

*Fuks v. Vanetik*,
  2024 WL 94312 (9th Cir. Jan. 9, 2024) ...........................................23

*Gilbert v. Seton Hall Univ.*,
  332 F.3d 105 (2d Cir. 2003)...........................................7

*Globaltex Grp., Ltd. v. Trends Sportswear, Ltd.*,
  2009 WL 1270002 (E.D.N.Y. May 6, 2009) ...........................................24

*Goldberg v. TeachBK, Inc.*,
  2025 WL 296143 (N.D. Cal. Jan. 24, 2025)...........................................14

*Goldfarb v. Channel One Russia*,
  663 F. Supp. 3d 280 (S.D.N.Y. 2023)...........................................16

*Goldwater v. Ginzburg*,
  414 F.2d 324 (2d Cir. 1969)...........................................19

*Greenbelt Co-op. Pub. Ass'n v. Bresler*,
  398 U.S. 6 (1970)...........................................17

*Greenberg v. Spitzer*,
  155 A.D.3d 27 (2017)...........................................15

*Gross v. N.Y. Times*,
  82 N.Y.2d 146 (1993)...........................................16

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
    491 U.S. 657 (1989)...................................................................................19, 20, 22

*Hayward v. Watsonville Register-Pajaronian and Sun*,
    265 Cal. App. 2d. 255 (1968) ...........................................................................13

*Heitkoetter v. Domm*,
    2024 WL 325134 (E.D. Cal. Jan. 29, 2024) ..................................................14, 15

*Horton v. Greenwich Hosp.*,
    2014 WL 956468 (S.D.N.Y. Mar. 10, 2014) .......................................................7

*Houlahan v. World Wide Assn of Specialty Programs & Sch.*,
    2006 WL 2844190 (D.D.C. Sept. 29, 2006) ......................................................22

*Jacob v. Lorenz*,
    626 F. Supp. 3d 672 (S.D.N.Y. 2022) ..............................................................11

*Jacobs v. Sustainability Partners LLC*,
    2020 WL 5593200 (N.D. Cal. Sept. 18, 2020) ..................................................24

*Jensen v. Hewlett-Packard Co.*,
    14 Cal. App. 4th 958 (1993) .......................................................................15, 16

*Jones v. Inner City Press*,
    2024 WL 4403746 (C.D. Cal. Aug. 7, 2024)......................................................25

*Kesner v. Dow Jones & Co., Inc.*,
    515 F. Supp. 3d 149 (S.D.N.Y. 2021)................................................................7

*Kilgore v. Younger*,
    30 Cal. 3d 770 (1982) .....................................................................................13

*Kinsey v. New York Times*,
    991 F.3d 171 (2d Cir. 2021)............................................................................11

*Koch v. Christie's Int'l PLC*,
    699 F.3d 141 (2d Cir. 2012)..............................................................................5

*Komatsu v. City of New York*,
    2021 WL 3038498 (S.D.N.Y. Jul. 16, 2021) ......................................................7

*La Luna Enters., Inc. v. CBS Corp.*,
    74 F. Supp. 2d 384 (S.D.N.Y. 1999)..................................................................9

*Lazar v. Superior Court*,
    12 Cal. 4th 631 (1996) ....................................................................................23

*Lee v. Bankers Trust Co.*,
  166 F.3d 540 (2d Cir. 1999) ..................................................................................8

*Liberty Lobby, Inc. v. Dow Jones & Co.*,
  838 F.2d 1287 (D.C. Cir. 1988) ...........................................................................19

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
  797 F.3d 160 (2d Cir. 2015) ................................................................................25

*Lyon v. Fairweather*,
  63 Cal. App. 194 (1923) ......................................................................................14

*MacLeod v. Tribune Publishing Co.*,
  52 Cal. 2d 536 (1959) .........................................................................................12

*Manchanda v. Navient Student Loans*,
  2020 WL 5802238 (S.D.N.Y. Sept. 29, 2020) .......................................................6

*Mandel v. Hafermann*,
  503 F. Supp. 3d 946 (N.D. Cal. 2020) .................................................................25

*Masson v. New Yorker Magazine, Inc.*,
  960 F.2d 896 (9th Cir. 1992) ...............................................................................20

*Moyer v. Amador Valley Joint Union High School District*,
  225 Cal. App. 3d 720 (1990) ...............................................................................16

*Murray v. Bailey*,
  613 F. Supp. 1276 (N.D. Cal. 1985) ....................................................................13

*Murray v. Samsung Elecs. Am., Inc.*,
  83 Misc. 3d 1290(A), (N.Y. Sup. Ct. 2024) .........................................................24

*New York Times Co. v. Sullivan*,
  376 U.S. 254 (1964) .............................................................................................19

*Nunes v. Cable News Network, Inc.*,
  31 F.4th 135 (2d Cir. 2022) .......................................................................9, 10, 24

*Nunes v. NBCUniversal Media, LLC*,
  643 F. Supp. 3d 403 (S.D.N.Y. 2022) ..................................................................15

*Okun v. Superior Court*,
  29 Cal. 3d 442 (1981) ..........................................................................................16

*OneWest Bank N.A. v. Lehman Bros. Holding Inc*,
  2015 WL 1808947 (S.D.N.Y. Apr. 20, 2015) .........................................................6

*Palin v. New York Times Co.*,
   940 F.3d 804 (2d Cir. 2019)............................................................................22

*Patterson v. Morgan Stanley*,
   2017 WL 11569235 (S.D.N.Y. Sept. 27, 2017)................................................25

*Pease v. Tel. Pub. Co.*,
   121 N.H. 62 (1981) ........................................................................................17

*Pierce v. San Jose Mercury News*,
   214 Cal. App. 3d 1626 (1989) .......................................................................15

*Press v. Primavera*,
   685 F. Supp. 3d 216 (S.D.N.Y. 2023).............................................................7

*Reader's Digest Ass'n v. Superior Court*,
   37 Cal. 3d 244 (1984) ...................................................................................19

*Reeves v. American Broad. Co.*,
   719 F.2d 602 (2d Cir. 1983)..........................................................................8, 9

*Sackler v. American Broadcasting Companies, Inc.*,
   2024 WL 4041715 (N.Y. Sup. Ct. Sep. 04, 2024)..........................................10

*Savage v. Pacific Gas & Electric Co.*,
   21 Cal. App. 4th 434 (1993) ..........................................................................15

*Seelig v. Infinity Broad. Corp.*,
   97 Cal. App. 4th 798 (2002) ..........................................................................16

*Slaughter v. Friedman*,
   32 Cal. 3d 149 (1982) ...................................................................................16

*St. Amant v. Thompson*,
   390 U.S. 727 (1968).........................................................................19, 20, 21

*Summit Bank v. Rogers*,
   206 Cal. App. 4th 669 (2012) ........................................................................15

*Sydney v. MacFadden Newspaper Pub. Corp.*,
   242 N.Y. 208 (1926) ......................................................................................12

*TheECheck.com, LLC v. NEMC Fin. Servs. Grp. Inc.*,
   2017 WL 2627912 (S.D.N.Y. June 16, 2017) .................................................7

*Three Amigos SJL Rest., Inc. v. CBS News Inc.*,
   15 N.Y.S.3d 36 (1st Dep't 2015), *aff'd*, 28 N.Y.3d 82 (2016) ..............................12

*Treppel v. Biovail Corp.*,
    2005 WL 2086339 (S.D.N.Y. Aug. 30, 2005) ........................................................17

*Vantone Grp. Liab. Co. v. Yangpu NGT Indus. Co.*,
    2015 WL 4040882 (S.D.N.Y. July 2, 2015) ...........................................................6

*Weller v. American Broadcasting Companies, Inc.*,
    232 Cal. App. 3d 991 (1991) .................................................................................16

*Wilbank v. Wolk*,
    121 Cal. App. 4th 883 (2004) ...............................................................................15

*Wynder v. McMahon*,
    360 F.3d 73 (2d Cir. 2004) .................................................................................5, 6

*Yari v. Producers Guild of Am., Inc.*,
    161 Cal. App. 4th 172 (2008) ...............................................................................24

**Statutes**

Cal. Civ. Code § 45a ...................................................................................................12

Cal. Civ. Code § 47(d) .................................................................................13, 14, 15

Fed. R. Civ. P. 8 .......................................................................................................5, 6

Fed. R. Civ. P. 12(b)(6) ........................................................................................2, 5, 24

Fed. R. Civ. P. 15 ................................................................................................2, 4, 9, 25

N.Y. Civ. Rights Law § 74 ........................................................................................15

N.Y. Civ. Rights Law § 76-a ....................................................................................18

**Other Authorities**

Black's Law Dictionary (12th ed. 2024) ....................................................................17

Restatement (Second) of Torts (1977) .......................................................................14

## PRELIMINARY STATEMENT

A pietistic bastion of the media establishment, the NYT has long presumed itself beyond accountability. Not here. The NYT went past merely reporting on Plaintiff Blake Lively's ("Lively") California Civil Rights Department Complaint ("CRD Complaint") and actively vouched for the veracity of its false narrative. The fair report privilege the NYT seeks to hide behind does not protect it from liability for maliciously colluding with Lively and her cohort to publish a false and defamatory hit piece about the Wayfarer Parties, wrongly casting them as villains and making them scapegoats for Lively's well-publicized media missteps.

On December 21, 2024, the NYT published a story titled "'*We Can Bury Anyone': Inside a Hollywood Smear Machine*" (ECF No. 107-1) (the "Article") and a related video (the "Video") featuring NYT journalist Megan Twohey ("Twohey"), who co-wrote the Article along with Mike McIntire and Julie Tate, purporting to tell the world "what really happened"—specifically, that the Wayfarer Parties orchestrated a retaliatory "campaign to tarnish Lively" after she alleged that Baldoni and Heath "engaged in misconduct while shooting the film." The Article and Video echoed *and compounded* the baseless accusations made by Lively and her co-defendants (the "Lively Parties") about the Wayfarer Parties and falsely accused them of having "waged" a "smear campaign" against Lively. The press enjoys the fair report privilege when faithfully relaying the contents of a filed complaint. But that is not what the NYT did; it (admittedly) based its Article and Video on its reporters' review of "thousands of pages" of documents and expressly credited Lively's claims, framing them as having been verified by the NYT's own investigation. In doing so, the NYT forfeited the fair report privilege.

The NYT prepared its salacious Article and Video well before Twohey contacted the

Wayfarer Parties the night before publication for "fact-checking."[1] After the NYT's *months* of plotting with the Lively Parties, the Wayfarer Parties got *hours* to respond.

The NYT complains of "group pleading," claiming it cannot tell the allegations against it from those against its co-conspirators. Of course, it is premature to require the Wayfarer Parties to specify the acts taken by the NYT in connection with its scheme with the Lively Parties. A jury will determine the truth based on the evidence. But the Wayfarer Parties' allegations are clear.

The NYT argues New York bars two California tort claims, but as the Wayfarer Parties suffered damages in California, where nearly all make their personal and professional homes, they may bring claims under the law of California, which has a strong interest in protecting its citizens. The New York-based NYT insists it is entitled to New York law no matter where their harm was felt. But California law remedies harms suffered in California by California residents.

Under either California or New York law, the Wayfarer Parties have stated a claim for defamation against the NYT, even under the "actual malice" standard. The NYT contends that the Article and Video merely reported "facts" and thus the NYT is shielded by the fair report privilege; yet in the same breath, the NYT also insists that its defamatory statements are not factual at all, but rather hyperbolic, non-actionable "opinion." Neither theory holds up. The FAC also states claims for false light, promissory fraud, and breach of implied-in-fact contract.

Even if the Motion is granted, it should be granted only with leave to amend. Federal courts apply an extremely liberal policy of amendment under Federal Rule of Civil Procedure 15. The Wayfarer Parties' claims against the NYT are well-grounded in fact and law. In addition, based on their own continued investigation and on facts drawn to their attention, the Wayfarer Parties have

---

[1] While the NYT baselessly claims in the Motion that the FAC's "allegations regarding the metadata associated with the Article and Video" are "wrong" (ECF No. 106 at 17 n.16), a Rule 12(b)(6) motion to dismiss is not a proper venue to raise factual disputes. The NYT does this repeatedly throughout its Motion.

obtained additional information since filing the FAC that would enable them to plead further facts in support of their claims. This dispute should be resolved by a jury at trial.

<u>**RELEVANT BACKGROUND**</u>

Wayfarer acquired the film rights to Colleen Hoover's novel "It Ends With Us" in 2019. FAC ¶ 22. Justin Baldoni took on the role of director as well as male lead character Ryle. FAC ¶ 23. On December 31, 2022, Lively agreed to take on the lead role of Lily Bloom. FAC ¶ 27. It initially appeared that Baldoni and Lively would have a productive working relationship, as they collaborated closely in the production's early days. *E.g.*, FAC ¶¶ 28-30. However, Lively soon began intruding into the production in ways well beyond the scope of her contractual entitlements. FAC ¶ 31. At one point, Lively issued an ultimatum that if Baldoni could not get on board with her work methods, he may have to recast her role. FAC ¶ 51.

On November 9, 2023, Lively's lawyer sent an unexpected and confusing 17-point list of non-negotiable demands that had to be met before Lively would return to work following the SAG-AFTRA strike, apparently drafted for the purpose of falsely insinuating that Baldoni, Heath, and others had engaged in sexually inappropriate conduct during filming. FAC ¶ 75. While the Wayfarer Parties disputed that Lively's demands had any legitimate predicate, they nevertheless found the requests largely unobjectionable and generally consistent with existing practices. *E.g.*, FAC ¶¶ 76-122. Filming proceeded thereafter uneventfully through the second phase of production, without any further purported incidents of which Lively could complain. FAC ¶ 132. However, Lively exploited her carefully constructed paper trail of false insinuations to complete a hostile takeover of the Film based on the implicit threat that she would ruin the Wayfarer Parties' careers and reputations. FAC ¶ 133. Gradually, Lively took over the Film's editing, ultimately extorting Sony and Wayfarer into releasing *her* cut despite its poor performance in audience tests.

FAC ¶¶ 134-146. She also dictated the Film's marketing, erasing Baldoni and driving a lighthearted, frothy, self-involved promotional campaign, which resulted in harsh blowback from the press and the public, who viewed Lively's marketing as tacky and tone-deaf. FAC ¶¶ 147-149, 179-186.

As the premiere of the Film approached, Lively told Sony that she and the rest of the cast would not participate in any marketing or promotion alongside Baldoni, deliberately creating the false impression that Baldoni had committed some serious offense. FAC ¶¶ 158-161. On information and belief, Sloane was throughout this time working to spread false and defamatory allegations against the Wayfarer Parties to members of the press. FAC ¶ 187.

The Wayfarer Parties finally stood up to Lively and Reynolds and refused their final demand that the Wayfarer Parties put out a false and humiliating statement admitting wrongdoing. FAC ¶¶ 250-256. In response, Lively and the Sloane Parties worked with the NYT to concoct a story that would blame Lively's downfall on the Wayfarer Parties, relying heavily on deceptively spliced private text messages stolen from Abel's phone by her former employer and Baldoni and Wayfarer's former publicist, Stephanie Jones of Jonesworks LLC. FAC ¶ 246.

The NYT coordinated its publication with Lively's filing of the otherwise confidential CRD Complaint on December 20, 2024. FAC ¶¶ 261, 266. As a direct result, the Wayfarer Parties have suffered untold harm. FAC ¶ 299. The Article states that during production of the Film, Lively "had complained that [Heath and Baldoni] had repeatedly violated physical boundaries and made sexual and other inappropriate comments to her." Art. at 3. The Article continues, "The documents show an additional playbook for waging a largely undetectable smear campaign in the digital era." *Id.* As admitted in the Article, the NYT relied not (just) on the CRD Complaint itself for its reporting, but on "thousands of pages" of documents that the NYT "reviewed." FAC ¶ 262. The

Video likewise confirms the NYT's statements were based on "private text messages and other documents that [the NYT] obtained [that] reveal what really happened." FAC ¶ 266; Sunshine Decl. Ex. 1 ("Video Tr.") at 3. The Video and the Article both state that the Wayfarer Parties engaged in a "smear campaign" against Lively, with the Video proclaiming: "[I]t's impossible to know how much [the Wayfarer Parties] planted and how much of it was originating organically. Whatever the case, they seized on it and amplified it." Video Tr. at 5:1-5. In sum, as detailed in the FAC, the NYT published an Article and Video advancing a factually false and defamatory narrative about the Wayfarer Parties based on deceptively spliced and cherry-picked text messages. FAC ¶¶ 272-278, 283-287. Now it must answer to them.

## LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a motion to dismiss, the Court must accept the factual allegations as true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

## ARGUMENT

### I.    THE NYT HAS AMPLE NOTICE OF ITS ACTIONABLE CONDUCT

Rule 8 of the Federal Rules of Civil Procedure imposes a "lenient standard" for pleading. *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004). Under Rule 8, a pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the [pleading] need only give the defendant fair

notice of what the [] claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The Second Circuit has noted that "Rule 8 does not necessarily require . . . that the complaint separate out claims against individual defendants." *Wynder*, 360 F.3d at 80. "Nothing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant." *Manchanda v. Navient Student Loans*, 2020 WL 5802238, at *2 (S.D.N.Y. Sept. 29, 2020).[2]

The FAC gives the NYT adequate notice of the claims against it. The FAC alleges that the NYT conspired with Lively, Reynolds, Sloane, and Vision PR to advance a false and defamatory narrative concerning the Wayfarer Parties, ultimately coordinating a near-simultaneous "drop" of the Article, Video, and CRD Complaint. The allegations in these three documents fall into two principal categories: (1) Allegations that certain of the Wayfarer Parties engaged in sexual misconduct towards Lively; and (2) Allegations that the Wayfarer Parties orchestrated a retaliatory "smear campaign" to damage Lively's image and reputation after she purportedly reported their alleged misconduct. Those allegations are *false*, and the NYT either knew they were false or acted with reckless disregard as to their falsity. To the extent the NYT is grouped in parts of the FAC with other Consolidated Defendants, that is because, as alleged in the FAC, they conspired in secret "over a matter of months"; the precise contours of the NYT's involvement were carefully concealed and impossible to ascertain fully without discovery. FAC ¶ 263. The FAC alleges that the NYT "participated actively in the legal maneuvering at the heart of Lively's strategy" (FAC ¶ 260) and —with an articulated basis in fact—that the coordination began as early as *October 31, 2024*. FAC ¶ 268 (noting references in the Article's HTML source code to "2024-10-31" and alleging that the NYT "had already begun building [the] Article no later than [that date]").

---

[2] *See also Vantone Grp. Liab. Co. v. Yangpu NGT Indus. Co.*, 2015 WL 4040882, at *3 (S.D.N.Y. July 2, 2015); *OneWest Bank N.A. v. Lehman Bros. Holding Inc*, 2015 WL 1808947, at *3 (S.D.N.Y. Apr. 20, 2015).

The cases cited by the NYT are inapposite. *TheECheck.com, LLC v. NEMC Fin. Servs. Grp. Inc.*, 2017 WL 2627912, at *1 (S.D.N.Y. June 16, 2017) concerns motions for entry of default judgment where the plaintiff failed to differentiate between defendants and attributed no specific conduct to *any* of them individually. *Id.* at *3; *see also Atuahene v. City of Hartford*, 10 F. App'x. 33, 34 (2d Cir. 2001) (affirming dismissal of complaint lacking *any* differentiation between defendants or identifiable factual basis for claims despite *multiple* amendments). Similarly, the pleadings at issue in *Komatsu v. City of New York*, 2021 WL 3038498, at *6 (S.D.N.Y. Jul. 16, 2021) "raise[d] approximately 200 claims against 125 defendants, spread across 1,713 pages[.]" Any lack of differentiation in the FAC does not rise nearly to those extremes.[3]

## II.    CALIFORNIA LAW APPLIES TO THE WAYFARER PARTIES' CLAIMS

"In diversity cases, federal courts apply the choice of law rules of the forum state[.]" *Gilbert v. Seton Hall Univ.*, 332 F.3d 105, 109 (2d Cir. 2003). The choice of law rules of New York therefore apply. *Press v. Primavera*, 685 F. Supp. 3d 216, 225 (S.D.N.Y. 2023). The first step is to evaluate conflicts between New York and California law. *Kesner v. Dow Jones & Co., Inc.*, 515 F. Supp. 3d 149, 167 (S.D.N.Y. 2021). A conflict "exists where the applicable law from each jurisdiction provides differing rules that have the potential to affect the outcome of the case significantly." *Horton v. Greenwich Hosp.*, 2014 WL 956468, at *2 n.1 (S.D.N.Y. Mar. 10, 2014).

Here, there exist substantive conflicts between the laws of New York and California as to the Wayfarer Parties' claims against the NYT. As to false light invasion of privacy,[4] the conflict between the two states' laws is total: California recognizes the claim, while New York does not.[5]

---

[3] If the Court finds some merit in the "group pleading" argument, it should afford the Wayfarer Parties leave to amend. Notably, even the plaintiff in *Komatsu* was granted leave to re-plead. *Komatsu*, 2021 WL 3038498, at *6.

[4] Although the false light invasion of privacy claim is personal to and brought only by Baldoni, Heath, Nathan, Abel, and Sarowitz, for simplicity's sake, the opposition refers to the claim as brought by the Wayfarer Parties.

[5] *Compare De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 865 (2018) ("A 'false light' claim, like libel,

There are also important differences with respect to the defamation claim. For example, with respect to defamation, "California extends no greater protection to opinions than does the United States Constitution," while "New York law, by contrast, in excess of the United States Constitution, provides for absolute protection of opinions." *Condit v. Dunne*, 317 F. Supp. 2d 344, 352 (S.D.N.Y. 2004). Because there is a substantive conflict between the laws of New York and California as to the Wayfarer Parties' claims, the Court must analyze whether to apply New York or California law.[6]

"In defamation cases, 'New York applies the law of the state with the most significant interest in the litigation.'" *Condit*, 317 F. Supp. 2d at 352 (quoting *Lee v. Bankers Trust Co.*, 166 F.3d 540, 545 (2d Cir. 1999)). "Under New York choice-of-law rules in defamation cases, 'the state of the plaintiff's domicile will usually have the most significant relationship to the case,' and its law will therefore govern." *Lee*, 166 F.3d at 545 (quoting *Reeves v. American Broad. Co.*, 719 F.2d 602, 605 (2d Cir. 1983)); *see also Bryks v. Canadian Broad. Corp.*, 928 F. Supp. 381, 383 (S.D.N.Y. 1996) (collecting cases). "Although the preference for the plaintiff's domicile is not conclusive, 'the significant contacts [in a defamation case] are, almost exclusively, the parties' domiciles and the locus of the tort.'" *Lee*, 166 F.3d at 545 (quoting *AroChem Int'l, Inc. v. Buirkle*, 968 F.2d 266, 270 (2d Cir. 1992)). The interest of a state in a defamation action is "significant and incontrovertible" where the plaintiffs are citizens of that state and live and conduct their business there. *Adelson v. Harris*, 973 F. Supp. 2d 467, 477-78 (S.D.N.Y. 2013).

---

exposes a person to hatred, contempt, ridicule, or obloquy and assumes the audience will recognize it as such.") *with DeIuliis v. Engel*, 2021 WL 4443145, at *9 (S.D.N.Y. Sept. 27, 2021) ("New York does not recognize the tort of false light invasion of privacy.") (citation omitted).

[6] Each claim's choice of law is analyzed separately. *DeIuliis*, 2021 WL 4443145, at *4 ("New York follows the doctrine of dépeçage, under which the choice-of-law analysis is conducted separately for each individual claim.")

In this case, California has a significant interest because nearly all of the plaintiffs[7] are residents of California; the two corporate plaintiffs are both incorporated and/or have their principal place of business in California; the plaintiffs suffered injury to their reputations in California;[8] and the economic losses to the plaintiffs were all felt in California. *La Luna Enters., Inc. v. CBS Corp.*, 74 F. Supp. 2d 384, 389 (S.D.N.Y. 1999); *Reeves*, 719 F.2d at 605 (applying California law "since the state of the plaintiff's domicile will usually have the most significant relationship to the case"). Here, each of the Wayfarer Parties "lives, works, and[/or] maintains social relationships" in California, and the law of California should therefore apply. Moreover, as participants in Hollywood's entertainment industry—the beating heart of which is indisputably the State of California—the Wayfarer Parties' reputations "mattered most in California." *Condit*, 317 F. Supp. 2d at 354 (plaintiff congressman's "reputation necessarily was a matter of national significance, but it mattered most in California where he had been elected to office").

The NYT argues that New York law applies because the Article "emanated" from New York, i.e., entirely reported from and conceived in New York. However, the FAC itself *does not* "allege that the Article is based on information provided in New York by individuals residing in New York to reporters in New York" (ECF No. 106 at 8), and discovery will be needed to reveal, among other things, precisely where the NYT's "reporting" took place. Furthermore, the FAC does not say, as the Wayfarer Parties do not (yet) know, "where the content was uploaded or where the relevant server resided, much less that either event occurred in New York." *Nunes v. Cable News Network, Inc.*, 31 F.4th 135, 142 (2d Cir. 2022). To the extent the NYT has attempted to introduce

---

[7] The only non-Californian plaintiff is Steve Sarowitz, of Illinois. No party has yet argued the law of Illinois should apply in this action. Moreover, Sarowitz's connection to this action is through his ties to California-based Wayfarer.

[8] The FAC alleges that the Wayfarer Parties also suffered injury in New York as well as in their home state of California, which is a true statement though the bulk of the harms were felt in California. To the extent that additional allegations are necessary to cure any inartful pleading as to the primary location of the harms, the Court should grant leave to amend pursuant to the "extremely liberal standard" of Fed. R. Civ. P. 15(a)(2).

ostensible evidence via declaration of counsel about the Article and Video's purported New York nexus, consideration of such materials outside the pleadings is inappropriate on a motion to dismiss. *Id.* (rejecting argument that New York law applies to defamation claim against CNN because it "is unsupported by the allegations of the complaint, to which [the court is] limited on a motion to dismiss" and refusing to consider purported evidence in defendant's affidavits).

Even if, as the NYT contends, its reporting and defamatory statements "emanated" from New York, "[s]imply because the defendant issues its nationwide publication from its principal place of business in New York does not mean that [courts] should automatically apply New York law to th[e] dispute." *Sackler v. American Broadcasting Companies, Inc.*, 2024 WL 4041715, at *4 (N.Y. Sup. Ct. Sep. 04, 2024). In *Sackler*, a plaintiff brought a defamation claim against the publisher of the *New York Post* arising from the publication's misuse of plaintiff's photo "in an online article." *Id.* at *1. The *Sackler* court explained that "the New York choice of law principles . . . point not to the act as the locus of the tort but instead to the injury which is the final element that would make the defendant liable." *Id.* at *4. The *Sackler* court found that "the defendant's nationwide publication of his photograph had the greatest affect [sic] to the plaintiff and his overall reputation in the state where he resides." *Id.* at *4 (rejecting application of New York law and applying law of plaintiff's state of residence, New Jersey). This reasoning applies here, particularly given that the defamatory statements were published primarily via the Internet.[9] *Adelson*, 973 F. Supp. 2d at 480-81 ("[I]t is quite foreseeable that the brunt of the reputational harm that results from internet-based defamation is most likely to be felt in the forum where the defamed individual lives, works, and maintains social relationships.") (quotation omitted).

---

[9] Notably, according to NYT itself, of its approximately 11 million total subscribers in 2024, nearly 10.5 million subscribers "were to digital products only," leaving only around 500,000 subscribers for NYT print newspaper. *See* https://www.nytimes.com/2024/11/04/business/media/new-york-times-earnings.html.

Two cases the NYT discusses and relies on, *Jacob* and *Kinsley*, are inapplicable. The courts in both those cases noted that the defamation claims "emanated" from New York. *Jacob v. Lorenz*, 626 F. Supp. 3d 672, 685 (S.D.N.Y. 2022) (article "emanated from New York"); *Kinsey v. New York Times*, 991 F.3d 171, 178 (2d Cir. 2021) (defamatory statement "emanated from New York"). Here, other than alleging that the NYT is a corporation with a principal place of business in New York (FAC ¶ 311), the FAC is silent on where the NYT's reporting took place and where the Article and Video "emanated" from. Regardless, California has a *far more* powerful interest in the application of its law than the states at issue in *Jacob* and *Kinsley* because this case involves not only California residents but also Hollywood's entertainment industry, which is centered in California and is the source of employment of all of the parties in these proceedings. Indeed, the Article's title refers to a "*Hollywood* smear machine" in recognition of subject's intrinsic connection to California's entertainment industry. By a wide margin, California's interest in having its laws apply to this dispute outweighs that of New York.

The Article is also purportedly based on reporting concerning Lively's CRD Complaint filed in *California* which purported to assert claims under *California's* employment and labor laws. FAC ¶¶ 4, 262. The NYT also glosses over the fact that filming took place not in New York but in *New Jersey*, which is where Lively alleges most of the events took place. FAC, Ex. A, at 51.

In short, the laws of California can and should supply the remedy for harms suffered primarily in California by plaintiffs who all live, work, and/or do business in California, resulting from conduct aimed at California, all in connection with the entertainment industry centered in California.

## III.    THE WAYFARER PARTIES' CLAIMS SHOULD NOT BE DISMISSED

### A.    The Defamation Claim Should Not Be Dismissed

California recognizes two types of libel: per se and per quod. *See Bartholomew v. YouTube, LLC*, 17 Cal. App. 5th 121, 1226 (2017) (discussing distinction between libel per se and libel per quod). A statement is libel per se when it "is defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact." Cal. Civ. Code § 45a.

Whether a publication is libelous on its face is a question of law. *Freeman v. Mills*, 97 Cal. App. 2d 161, 165-66 (1950). "[T]he publication is to be measured not so much by its effect when subjected to the critical analysis of a mind trained in the law, but by the natural and probable effect upon the mind of the average reader. A defendant is liable for what is insinuated, as well as for what is stated explicitly." *Bartholomew*, 17 Cal. App. 5th at 1227 (citing *MacLeod v. Tribune Publishing Co.*, 52 Cal. 2d 536, 547-48 (1959)).[10] False allegations of sexual misconduct are defamatory per se. The crux of the Article and Video is that the Wayfarer Parties engaged in and/or condoned sexual misconduct and took revenge on the victim of such misconduct. These allegations "tend to expose [the Wayfarer Parties] to public contempt, ridicule, aversion, or disgrace, or induce an evil opinion of [them] in the minds of right-thinking persons, and to deprive [them] of friendly intercourse in society." *Sydney*, 242 N.Y. at 211-12. As to IEWU and Wayfarer, it is well settled that a statement that "impugns the basic integrity of a business" is per se defamatory. *Boule v. Hutton*, 328 F.3d 84, 94 (2d Cir. 2003).[11] And contrary to the NYT, it is clear that the defamatory

---

[10] The same is true under New York law. A statement is "actionable without alleging special damages if it tends to expose the plaintiff to public contempt, ridicule, aversion, or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society." *Sydney v. MacFadden Newspaper Pub. Corp.*, 242 N.Y. 208, 211–12 (1926).

[11] The Wayfarer Parties' allegations also implicate the "small group exception" of the "group libel doctrine." Under the group libel doctrine, typically "a statement made about an organization is not understood to refer to any of its individual members unless that person is distinguished from other members of the group." *Three Amigos SJL Rest., Inc. v. CBS News Inc.*, 15 N.Y.S.3d 36, 41 (1st Dep't 2015), *aff'd*, 28 N.Y.3d 82 (2016). But where a statement defames all members of a small group, the "reference to the individual plaintiff reasonably follows from the statement." *Brady v. Ottaway Newspapers, Inc.*, 445 N.Y.S.2d 786, 790 (2d Dep't 1981). Accordingly, "an individual belonging to a small group may maintain an action for individual injury resulting from a defamatory comment about the group, by showing that he is a member of the group." *Id.*; *see also Algarin v. Town of Wallkill*, 421 F.3d 137, 139

statements made by the NYT in the Article and Video were "of and concerning" each of the Wayfarer Parties, either directly by implication, and all have become figures of infamy as a direct result.[12] *Blatty v. New York Times Co.*, 42 Cal. 3d 1033, 1043 (1986). Because this is not a case in which a jury would be *incapable* of finding that the statements at issue refer to each of the Wayfarer Parties, the NYT is raising a question of fact for the jury and not a question of law for the Court. *See Diaz v. NBC Universal, Inc.*, 536 F. Supp. 2d 337, 343, *aff'd,* 337 Fed. Appx. 94 (2d Cir. 2009) (jury generally decides whether defamatory statement is "of and concerning" plaintiff).

### 1. The Fair Report Privilege Does Not Apply to Protect the NYT

For the fair report privilege to apply under California law, the publication at issue must: (1) report on the contents of a judicial or other public proceeding, (2) be a "fair and true" report of the proceeding, and (3) be published in or made to a public journal. Cal. Civ. Code § 47(d). A publication is "fair and true" under Section 47(d) only if it "captures the substance" of the proceeding as "measured by the natural and probable effect on the mind of the average reader." *Kilgore v. Younger*, 30 Cal. 3d 770, 777 (1982); *Murray v. Bailey*, 613 F. Supp. 1276, 1284 (N.D. Cal. 1985); *see also Hayward v. Watsonville Register-Pajaronian and Sun*, 265 Cal. App. 2d. 255, 262 (1968). A report is not "fair and true" if the publication deviates from the judicial proceeding such "that it produce[s] a different effect on the reader" than the actual truth of the proceeding. *Crane v. Arizona Repub.*, 972 F. 2d. 1511, 1519 (9th Cir. 1992) (quoting *Hayward*, 265 Cal. App. 2d. at 300). Here the privilege can apply only if "the effect on the readers [and listeners] of the

---

(2d Cir. 2005); *Church of Scientology of California v. Flynn*, 744 F.2d 694, 697 n.5 (9th Cir. 1984); *Ball v. Taylor*, 416 F.3d 915 (8th Cir. 2005) (per curiam) (finding small group exception applied where statement defamed approximately one-hundred individuals).

[12] Although the NYT now argues its statements did not implicate Sarowitz, it is telling that Twohey reached out to him for comment along with the other Wayfarer Parties before publication. She clearly was not of the belief that the Article and Video did not implicate him personally.

[Article and Video] would have been substantially the same as the effect on the readers of the" CRD Complaint itself. *Colt v. Freedom Comm'r*, 109 Cal. App. 4th 1551, 1561 (2003).[13]

In the Article and Video, the NYT offers its own commentary that goes well beyond merely reporting on the CRD Complaint and therefore falls outside the scope of the privilege. *See Lyon v. Fairweather*, 63 Cal. App. 194, 197 (1923) ("[Section 47(d)] does not include as privileged facts outside the record or comments by the writer.") For example, in both the Article and Video, the NYT presented as unquestioned fact the false and defamatory claim that the Wayfarer Parties orchestrated a "smear campaign." *See* FAC ¶¶ 257, 266-267; Art. at 3; Video Tr. at 3-4. The NYT cites to "thousands of pages" of documents it had "reviewed" and claims that "the text messages show" that the Wayfarer Parties had engaged in the wrongdoing of which Lively accused them. Video Tr. at 3:6-7 ("private text messages and other documents that [the NYT] obtained reveal what really happened.") These extraneous comments and defamatory allegations, at least one of which the NYT *admits* was not taken from the CRD Complaint (ECF No. 106 at 15), are not a report of the CRD Complaint and undoubtedly would "produce a different effect on the reader" than would the CRD Complaint. *Crane*, 972 F. 2d. at 1519; *see also Colt*, 109 Cal. App. 4th at 1561. Thus, they fall outside the bounds of California's fair report privilege. *See e.g. Heitkoetter v. Domm*, 2024 WL 325134, at *11 (E.D. Cal. Jan. 29, 2024) (holding fair report privilege did not apply to the portions of the defendant's video that consisted of "tangential commentary" since it "deviate[d] substantially from reporting [on his counterclaim] and produce[d] a different effect"

---

[13] *See also* Restatement (Second) of Torts § 611, cmt. f (1977) ("Not only must the report be accurate, but it must be fair. Even a report that is accurate so far as it goes may be so edited and deleted as to misrepresent the proceeding and thus be misleading. Thus … it is necessary that nothing be omitted or misplaced in such a manner as to convey an erroneous impression to those who hear or read it … The reporter is not privileged under this Section to make additions of his own that would convey a defamatory impression, nor to impute corrupt motives to anyone, nor to indict expressly or by innuendo the veracity or integrity of any of the parties.")

on the listener); *Goldberg v. TeachBK, Inc.*, 2025 WL 296143, at *14 (N.D. Cal. Jan. 24, 2025)
(holding defendant's statements that plaintiff "leaks her clients' information to the Russian
government and is a 'double agent'" were not privileged as a fair and true report of a judicial
proceeding).[14] The NYT vouched for Lively's allegations by affirming that its reporters'
independent investigation supported her claims, and thus lost the protection of the fair report
privilege. *Heitkotter*, 2024 WL 325134, at *11; *Wilbank*, 121 Cal. App. 4th at 904-05.[15]

Whether the NYT's publications are "fair and true" accounts of the CRD Complaint are
questions of fact that cannot be resolved at this stage. *See e.g. Pierce v. San Jose Mercury News*,
214 Cal. App. 3d 1626, 1634 (1989) ("Where, as here, reasonable minds could disagree on what
is fair, the issue is a question of fact to be determined by the jury.")[16]

### 2. The NYT's Statements Are Not Constitutionally Protected Opinions

Under California law, to constitute defamation, the offensive publication must consist of
statements of fact, not opinion. *Summit Bank v. Rogers*, 206 Cal. App. 4th 669, 695-96 (2012). A
statement is defamatory only if it is capable of being proved true or false. *See Savage v. Pacific
Gas & Electric Co.*, 21 Cal. App. 4th 434, 445 (1993); *Jensen v. Hewlett-Packard Co.*, 14 Cal.

---

[14] *Wilbank v. Wolk*, 121 Cal. 4th 883, 904-05 (2004) (Section 47(d) did not protect defendant where statements "were more than a report of an official proceeding; they were express and implied assertions that plaintiffs … were incompetent and unethical"); *Crane*, 972 F. 2d. at 1519 (fair report privilege inapplicable as editing altered tenor).

[15] The same outcome would be reached under New York's fair report privilege, codified in N.Y. Civ. Rights Law § 74. *Carroll v. Trump*, 664 F. Supp. 3d 550, 558-60 (S.D.N.Y. 2023). (if the challenged portion of the publication "focuses exclusively on underlying events rather than a judicial proceeding relating to those events," is "commentary on the proceeding" or sets forth "additional facts not established in the proceedings" the privilege does not apply); *see also Greenberg v. Spitzer*, 155 A.D.3d 27, 49 (2017) (reversing trial court's application of the privilege as to statements that "went beyond merely summarizing or restating the … proceedings" because "when viewed in context, we cannot say, as a matter of law, that the statements provided substantially accurate reporting of the case.")

[16] *See also Nunes v. NBCUniversal Media, LLC*, 643 F. Supp. 3d 403, 413 (S.D.N.Y. 2022) ("Application of the fair reporting privilege is inappropriate at the motion to dismiss stage if a reasonable jury could conclude the report suggested more serious conduct than that actually suggest[ed] in the … proceeding."); *Carroll*, 664 F. Supp. 3d at 562 ("The Court need not … decide the ultimate issue of whether [the] statement is or is not a 'fair and true' report of a judicial proceeding as a matter of law. It suffices for the purpose of denying summary judgment that a reasonable jury could find so as a matter of fact.")

App. 4th 958, 970-71 (1993). "Statements do not imply a provably false factual assertion and thus cannot form the basis of a defamation action if they cannot reasonably be interpreted as stating actual facts[.]" *Seelig v. Infinity Broad. Corp.*, 97 Cal. App. 4th 798, 809–10 (2002).

But expressions of opinion often imply assertions of fact and are therefore actionable. *Weller v. American Broadcasting Companies, Inc.*, 232 Cal. App. 3d 991, 999 (1991). Thus, a statement in the form of an opinion may be actionable if it is implied that it is based on some undisclosed defamatory facts. *Baker v. L.A. Herald Examiner*, 42 Cal. 3d 254, 266 (1986); *Okun v. Superior Court*, 29 Cal. 3d 442, 451-52 (1981). The issue of whether the statement is fact or opinion is one for the jury. *Slaughter v. Friedman*, 32 Cal. 3d 149, 154 (1982). The dispositive question is whether a reasonable fact finder could conclude that the published statements imply a provably false assertion of fact. *Moyer v. Amador Valley Joint Union High School District*, 225 Cal. App. 3d 720, 724 (1990). To answer that question, the court applies a "totality of the circumstances" test and reviews the "language of the statement" and "the context in which the statement was made[.]" *Baker*, 42 Cal. 3d at 260-61.[17]

Here, the NYT made statements that the Wayfarer Parties engaged in, permitted, and/or failed to prevent sexual misconduct and orchestrated a "smear campaign" in retaliation for Lively's purportedly protected disclosure thereof. FAC ¶¶ 257, 266-267, 272, 274-275. Furthermore, the NYT asserted not only that the Wayfarer Parties engaged in a "smear campaign," but also stated

---

[17] Similarly, courts applying New York law generally consider "(1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact." *Goldfarb v. Channel One Russia,* 663 F. Supp. 3d 280, 302 (S.D.N.Y. 2023). But even "opinions" can be the subject of a defamation claim where they imply that they are "based upon facts which justify the opinion but are unknown to those reading or hearing it," i.e., a "mixed opinion." *Conklin v. Laxen*, 180 A.D.3d 1358, 1361 (4th Dep't 2020) (citation omitted); *Conti v. Doe*, 535 F. Supp. 3d 257, 267 (S.D.N.Y. 2021). Ultimately, "[t]he dispositive inquiry … is whether a reasonable reader could have concluded that [the statements were] conveying facts about the plaintiff." *Gross v. N.Y. Times*, 82 N.Y.2d 146, 152 (1993).

in the Article's title that the Wayfarer Parties operated, or were a part of, a "Hollywood smear machine." FAC ¶ 261. The NYT's assertion that the Wayfarer Parties operated a "smear machine" that waged a "smear campaign" was a factual statement that went beyond even Lively's allegations in the CRD Complaint, which does not contain these phrases. The Article claimed to expose the existence of a hidden, nefarious "machine" devised by the Wayfarer Parties that "wages" undetectable "smear campaigns" to destroy its enemies. The NYT's statements imply misconduct "on a scale larger" than that at issue in the CRD Complaint and are not immune from suit as opinion. *Treppel v. Biovail Corp.*, 2005 WL 2086339, at *10 (S.D.N.Y. Aug. 30, 2005) (denying 12(b)(6) motion to dismiss defamation counterclaims based on statements that "suggest wrongdoing on a scale larger than would be discerned from reports of a regulatory investigation").

The Article's false assertion of a "smear campaign" suggested the NYT was making a factual statement. Black's Law Dictionary (12th ed. 2024) defines the phrase "smear campaign" as "[t]he deliberate telling and repetition of untrue or distorted stories about a person in order to make others lose respect for that person." The phrase is inherently factual in that it suggests that a person waging such a "campaign" is spreading stories that are "untrue" or "distorted."

The cases cited by the NYT are again entirely inapposite. In the New Hampshire case of *Pease v. Tel. Pub. Co.*, 121 N.H. 62 (1981), a journalist brought a defamation claim arising from a letter to the editor in which defendant "prefaced two of his assertions with language such as 'I do feel'" and coupled his statement of a "journalistic smear" with the epithet that the plaintiff was the "holder of the title 'journalistic scum of the earth.'" *Id.* at 64-65. The *Pease* court concluded that readers would interpret the writer's hyperbolic statements as opinion rather than as assertions of provable fact. *Id.* at 65. None of the other cases cited by the NYT involved "smear" accusations. In *Dong v. Board of Trustees*, 191 Cal. App. 3d 1572 (1987), the statements at issue were preceded

by qualifying language that the assertions were merely a claim and that a peer committee should investigate. In *Greenbelt Co-op. Pub. Ass'n v. Bresler*, 398 U.S. 6 (1970), the statement at issue was "blackmail" and not "smear campaign[,]" as the NYT suggests. And in *Chau v. Lewis*, 771 F.3d 118 (2d Cir. 2014), the defamatory statements were epithets such as "sucker" and "fool."

The statements at issue here were made not in an editorial or letter but rather in an explosive feature-length exposé reported by (among others) the NYT's Pulitzer Prize-winning star journalist, Twohey, based on their own review of "thousands of pages of text messages and emails." Art. at 2. The NYT's statements in the Article and Video are not couched or qualified by equivocal language suggesting that the NYT or Twohey were expressing an opinion. They were presented as statements of fact based on first-hand knowledge of the evidence. In that context, a reasonable viewer would have interpreted the NYT's "smear machine" and "smear campaign" statements not as mere hyperbole but instead as provable, verified assertions of fact. Statements of this nature are not shielded from suit as non-actionable opinion.[18]

The NYT's statements state or imply that the Wayfarer Parties engaged in grossly immoral conduct to cover up even more grossly immoral conduct, and such statements resulted in the destruction of their reputations and careers. The statements by the NYT cannot be—and were not—construed as mere statements of opinion or of hyperbole. They were (false) statements of fact. And if the Court finds that the statements could be reasonably construed as either fact or opinion, the issue should be resolved by a jury, thereby warranting the denial of the Motion. *Good Government Group of Seal Beach, Inc. v. Superior* Court, 22 Cal. 3d 672, 680 (1978).

### 3. Actual Malice Has Been Pleaded Against The NYT

---

[18] To be clear, the allegations in the FAC are unequivocal that none of the Wayfarer Parties engaged in any kind of misconduct towards Lively, the Wayfarer Parties did not permit or fail to prevent any such misconduct, and the Wayfarer Parties did not orchestrate a "smear campaign" in retaliation for Lively's purported disclosures. FAC ¶¶ 8, 10, 178-185, 279, 280-281.

The NYT argues that the Wayfarer Parties have to satisfy the "actual malice" standard because of Baldoni's status as a public figure and New York's amended anti-SLAPP law, N.Y. Civ. Rights Law § 76-a. Though California and New York law diverge on whether the "actual malice" standard applies to *all* of the Wayfarer Parties, it is irrelevant for present purposes because the FAC adequately alleges "actual malice" with respect to each of them.[19]

To plead actual malice, a plaintiff must allege a statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not." *Reader's Digest Ass'n v. Superior Court*, 37 Cal. 3d 244, 256 (1984) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 285-86 (1964)); *see also Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015). While "'reckless disregard' cannot be fully encompassed in one infallible definition ... the defendant must have made the false publication with a high degree of awareness of probable falsity, or … entertained serious doubts as to the truth of his publication." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989); *see also St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).

Construed as true, the FAC's allegations set forth "plausible grounds" to infer actual malice. *Biro*, 807 F.3d at 546. Actual malice is subjective, but a "court typically will infer actual malice from objective facts." *Bose Corp. v. Consumers Union of U.S., Inc.*, 692 F.2d 189, 196 (1st Cir. 1982) ("whether [a defendant] entertained serious doubts as to the truth of the statement may be proved by inference, as it would be rare for a defendant to admit such doubts."), *aff'd,* 466 U.S. 485 (1984). This refers to evidence of "negligence, motive and intent such that *an accumulation of the evidence and appropriate inferences* supports the existence of actual malice." *Bose Corp.*, 692 F.2d at 196 (emphasis added).[20] Actual malice is established "[t]hrough the defendant's own

---

[19] This is true despite the fact that six of the Wayfarer Parties are certainly not even limited public figures.

[20] *Goldwater v. Ginzburg*, 414 F.2d 324, 342 (2d Cir. 1969) ("There is no doubt that evidence of negligence, of motive and of intent may be adduced for the purpose of establishing, by cumulation and by appropriate inferences, the fact of a defendant's recklessness or of his knowledge of falsity.")

actions or statements, the dubious nature of his sources, [and] the inherent improbability of the story [among] other circumstantial evidence [.]" *Liberty Lobby, Inc. v. Dow Jones & Co.,* 838 F.2d 1287, 1293 (D.C. Cir. 1988); *see Clyburn v. News World Commc'ns, Inc.,* 903 F.2d 29, 33 (D.C. Cir. 1990) (proof of actual malice "may take the form of circumstantial evidence, such as … 'obvious reasons to doubt the veracity of the informant or the accuracy of his reports'").

Here, it is not just that the NYT failed to adequately investigate, but rather that it did investigate and obtained and reviewed communications that disproved what it later published, and that it edited and spliced documents to mislead viewers. FAC ¶¶ 272-278, 283-287. Willfully disregarding (let alone manipulating) information casting doubt on a story is altogether different from negligently failing to investigate in the first place. *See St. Amant*, 390 U.S. at 733 (citing *Curtis Publishing Co. v. Butts*, 380 U.S. 130, 153 (1967)). "Where [a] publisher undertakes to investigate the accuracy of a story and learns facts casting doubt on the information contained therein, it may not ignore those doubts, even though it had no duty to conduct the investigation in the first place." *Masson v. New Yorker Magazine, Inc.*, 960 F.2d 896, 901 (9th Cir. 1992). In *Masson*, for instance, the court noted that "there was evidence from which a jury could infer that The New Yorker [investigated] the facts underlying [the] article, including the quotations, and that this investigation yielded information that gave the New Yorker 'obvious reasons to doubt' the accuracy of the disputed quotations." *Id.* at 902. Likewise, in *Harte-Hanks*, the Supreme Court affirmed an actual malice finding where the newspaper refused to listen to recordings or interview witnesses denying the allegations. *Harte-Hanks*, 491 U.S. at 691-92.

The NYT admits it *did* undertake an investigation. As alleged in the FAC, the NYT made clear that the Article and Video were not merely recitations of Lively's CRD Complaint but were, instead, a work of independent investigative reporting. *See e.g.* FAC ¶¶ 266-267; Art. at 3

(describing the Wayfarer Parties' alleged "playbook for waging a largely undetectable smear campaign in the digital era."); Video Tr. at 3:5-7 (describing "private text messages and other documents that [the NYT] obtained [that] reveal what really happened.") As alleged in the FAC and conceded by the NYT, the substance of the reporting was based on "thousands of pages of text messages and emails . . . [which, along with] other documents were reviewed by the [NYT]." FAC ¶ 262. Armed with this voluminous evidence, the NYT either knew or recklessly ignored proof that the contents of its Article and Video were factually false. FAC ¶ 274.

The notion that Lively's bad press in August 2024 was actually caused by an "untraceable" smear campaign is "so inherently improbable that only a reckless person would have put [the claim] in circulation." *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 174 (2d Cir. 2001) (citing *St. Amant*, 390 U.S. at 731); FAC ¶¶ 279-281. There were "obvious reasons to doubt the veracity" of these statements in light of the reporters' common sense, the NYT's prior reporting, and the relevant primary source documents and communications that the NYT obtained and that its reporters claimed to have reviewed. *Curtis Publishing*, 388 U.S. at 158. Indeed, the NYT itself reported on Lively's public missteps in an August 17, 2024, article entitled "It Ends with Us: The Press Tour Drama, Explained." FAC ¶ 279. Not only were NYT reporters[21] privy to Lively's missteps in real time along with the world, they also reviewed private internal communications amongst the Wayfarer Parties directly refuting the Article. Worse, the NYT worked on the Article for many weeks before publishing (perhaps since October 2024). FAC ¶¶ 263-268. Yet the NYT deliberately waited until the last possible moment to seek a response from the Wayfarer Parties.

---

[21] The NYT's argument concerning the FAC's purported failure to attribute actual malice to specific individuals is unavailing. The FAC is laden with references to the Article's principal author, Megan Twohey, and alleges that she and her co-authors, Mike McIntire and Julia Tate, knew that what they were publishing was false and/or recklessly disregarded the probability it was false by, at best, purposefully avoiding the truth. *See, e.g.,* FAC ¶¶ 257-269. Twohey herself is featured in the Video.

FAC ¶¶ 257-259. Indeed, on the evening of December 20th, Twohey contacted the Wayfarer Parties for a response by *the next morning* concerning explosive and false allegations. FAC ¶ 258. The Wayfarer Parties denied the allegations and specifically warned Twohey that her story was false and based on cherry-picked and context-free communications spliced into a provably false narrative. FAC ¶¶ 258, 294. A publisher need not accept "denials, however, vehement[,]" before publication. *Harte-Hanks*, 491 U.S. at 691 n.37 (citing *Edwards v. Nat'l Audubon Soc'y, Inc.*, 556 F.2d 113, 121 (2d Cir. 1977). But here, the NYT could verify the denials because it had—and had purportedly reviewed—those communications. FAC ¶¶ 257-259, 294-295. "[P]urposeful avoidance of the truth" supports a finding of actual malice. *Harte-Hanks*, 491 U.S. at 692.[22]

At this stage, the Wayfarer Parties have met their "burden to plead facts giving rise to the plausible inference that [the NYT] published the allegedly defamatory [Article and Video] with actual malice." *Palin v. New York Times Co.*, 940 F.3d 804, 815 (2d Cir. 2019). "The test is whether the complaint is plausible, not whether it is less plausible than an alternative explanation. The jury may ultimately agree with [the NYT]—but it is the jury that must decide." *Id.*

### B. The False Light and Promissory Fraud Claims Should Not Be Dismissed

"False light is a species of invasion of privacy, based on publicity that places a plaintiff before the public in a false light that would be highly offensive to a reasonable person, and where the defendant knew or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed." *De Havilland v. FX Networks, LLC*, 21 Cal.

---

[22] *See also Eramo v. Rolling Stone, LLC*, 209 F. Supp. 3d 862, 872 (W.D. Virginia 2016) ("Although failure to adequately investigate, a departure from journalistic standards, or ill will or intent to injure will not singularly provide evidence of actual malice, the court believes that proof of all three is sufficient to create a genuine issue of material fact."); *Houlahan v. World Wide Assn of Specialty Programs & Sch.*, 2006 WL 2844190, *5-6 (D.D.C. Sept. 29, 2006) (failure to further investigate "biased" and "unreliable" source with "demonstrated animosity" toward plaintiff provided an "obvious reason to doubt th[e] accuracy of the statements").

App. 5th 845, 865 (2018). The FAC alleges the NYT falsely and recklessly accused the Wayfarer Parties of "orchestrat[ing] a smear campaign against Lively" and purporting to "reveal[] a new playbook for waging a far-reaching and largely undetectable smear campaign in the digital age." FAC ¶¶ 262, 267, 273-274. The FAC adequately states a claim for false light.[23]

Under California law, "[t]he elements of a promissory fraud action are: (1) misrepresentation, (2) knowledge of falsity, (3) intent to defraud, (4) justifiable reliance, and (5) resulting damage." *Fuks v. Vanetik*, 2024 WL 94312, at *2 (9th Cir. Jan. 9, 2024) (citing *Lazar v. Superior Court*, 12 Cal. 4th 631, 49 (1996)).[24] Promissory estoppel is "a subspecies of the action for fraud and deceit" in which a defendant makes a promise, inducing the plaintiff to enter into a contract, without the intention of keeping it. *Lazar*, 12 Cal. 4th at 638.

Here, on the evening of December 20, 2024, the NYT promised to delay until noon the next day so the Wayfarer Parties could respond to questions and inaccuracies. FAC ¶ 377. The Wayfarer Parties accepted the offer and tried to correct the record, albeit in the context of a brief, overnight window of time during the holidays. FAC ¶ 379. As alleged in the FAC, the NYT's outreach to the Wayfarer Parties was a ruse; the NYT never intended the Wayfarer Parties to respond. FAC ¶ 381. The NYT had already decided that the Article and Video would "drop" regardless of feedback from the Wayfarer Parties, as shown by the fact that both the Article and Video were ready to go at least days before the NYT contacted the Wayfarer Parties. FAC ¶¶ 259-267. Indeed, although the Wayfarer Parties accepted the NYT's offer and scrambled to respond in just hours, the NYT published early and without warning at 7:11 a.m. (PST). FAC ¶ 379-380. The

---

[23] In a footnote, the NYT argues that, if California law applies, the false light claim should be dismissed because the false light claim is "independently barred by California's fair report privilege." ECF No. 106 at 23 n.22. That argument fails for the same reasons as the NYT's challenge to the Wayfarer Parties' defamation claim.
[24] *Accord eCommission Sols., LLC v. CTS Holdings, Inc.*, 2017 WL 985881, at *5 (S.D.N.Y. Mar. 13, 2017) (same elements under New York law).

release of the false Article and Video damaged the Wayfarer Parties. FAC ¶¶ 298-299, 383.

The Wayfarer Parties' promissory fraud and implied contract claims cannot be dismissed as duplicative. And "a claim for promissory fraud does *not* depend on whether a defendant's promise is ultimately enforceable as a contract." *Jacobs v. Sustainability Partners LLC*, 2020 WL 5593200, at *15 (N.D. Cal. Sept. 18, 2020) (emphasis in original). As in *Globaltex*, which the NYT cites, the FAC does not just assert a contract the NYT did not intend to perform; it alleges conduct beyond the contract, namely, that the NYT and the Lively Parties conspired. *Globaltex Grp., Ltd. v. Trends Sportswear, Ltd.*, 2009 WL 1270002, at *6 (E.D.N.Y. May 6, 2009).[25]

### C.    The Breach of Implied-In-Fact Contract Claim Should Not Be Dismissed

Under California law, "a cause of action for breach of implied contract has the same elements as does a cause of action for breach of contract, except that the promise is not expressed in words but is implied from the promisor's conduct." *Yari v. Producers Guild of Am., Inc.*, 161 Cal. App. 4th 172, 182 (2008).[26] Here, the NYT does not (and cannot) argue that the FAC fails to properly allege the elements of a breach of implied-in-fact contract. Instead, the NYT relies on certain outside-the-pleadings "correspondence" improperly introduced through its counsel's declaration to supposedly "contradict[]" the FAC's allegations. ECF No. 106 at 24. The NYT's attempt to raise and determine issues of fact on a Rule 12(b)(6) motion to dismiss is improper.[27] *Nunes*, 31 F.4th at 142 (declining to consider evidence attached to affidavits on Rule 12(b)(6) motion to dismiss). Though the NYT claims that its promise to wait until noon to publish "is

---

[25] The NYT's unsupported and extrinsic assertion that the Wayfarer Parties had no "intention of doing anything in the two hours between the publication and deadline for comment" (ECF No. 106 at 24) not only raises a fact issue that cannot be adjudicated on a Rule 12(b)(6) motion, it is belied by conduct of the Wayfarer Parties since, including filing the instant lawsuit and releasing voluminous exculpatory evidence. *Globaltex Grp., Ltd.*, 2009 WL 1270002, at *6.

[26] *Accord Murray v. Samsung Elecs. Am., Inc.*, 83 Misc. 3d 1290(A), at *3 (N.Y. Sup. Ct. 2024) ("The elements are the same for a breach of a contract or implied contract" under New York law).

[27] The email correspondence attached to the declaration of Katherine Bolger (ECF No. 107) is not referenced or incorporated into the FAC, and the mere fact that the FAC refers to *other* communications between the NYT and the Wayfarer Parties does not permit the NYT to introduce purported evidence outside the scope of pleadings.

nowhere seen or implied in the correspondence" (ECF No. 106 at 25), Twohey's emails expressly state she "need[ed] to hear back … by noon Eastern" (ECF No. 107, Exs. 4-9), thereby offering to give the Wayfarer Parties until noon (EST) on December 21st to respond to the inflammatory allegations.

## IV.    THE MOTION SHOULD, AT MOST, BE GRANTED WITH LEAVE TO AMEND

"[G]ranting leave to amend is consistent with the liberal standard of Rules 15 . . . and with the Second Circuit's 'strong preference for resolving disputes on the merits." *Patterson v. Morgan Stanley*, 2017 WL 11569235, at *2 (S.D.N.Y. Sept. 27, 2017). This liberal amendment policy is applied to cases in which statements alleged to be defamatory were privileged under the fair report privilege, and when the requisite level of fault was inadequately alleged.[28],[29]

## <u>CONCLUSION</u>

The Wayfarer Parties respectfully urge that the Court deny the Motion in its entirety. In the alternative, should the Court be inclined to grant the Motion in whole or in part, the Wayfarer Parties respectfully request that they be granted leave to amend their pleading as stated herein.[30]

---

[28] *Cummings v. City of New York*, 2020 WL 882335, at *27 (S.D.N.Y. Feb. 24, 2020) (granting leave to replead defamation claim where fair report privilege applied); *Jones v. Inner City Press*, 2024 WL 4403746, at *5 (C.D. Cal. Aug. 7, 2024) (granting leave to amend claims, including defamation claim where statements were "subject to the fair and true report privilege"); *Mandel v. Hafermann*, 503 F. Supp. 3d 946, 968-69 (N.D. Cal. 2020) (granting leave to amend defamation claim though defendant "met his burden of establishing that the litigation privilege applies to his conduct"); *Cassava Scis., Inc. v. Bredt*, 2024 WL 1347362, at *29 (S.D.N.Y. Mar. 28, 2024) (granting leave to replead allegations of "actual malice").

[29] Though the Wayfarer Parties have once amended their complaint, they have not done so in response to the purported deficiencies raised in the Motion, which was filed after the FAC. "Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015). If any of the Wayfarer Parties' claims against the NYT are dismissed, the Wayfarer Parties respectfully urge that the dismissal be without prejudice and they be given leave to amend.

[30] The Wayfarer Parties incorporate by reference the contents of their opposition to the Sloane Parties' motion to dismiss the FAC and strike Exhibit A. (ECF No. 121).

Dated:  March 14, 2025                    Respectfully submitted,
        New York, NY

                                          **MEISTER SEELIG & FEIN PLLC**


                                          By: _/s/ Mitchell Schuster_____
                                                Mitchell Schuster
                                                Kevin Fritz
                                          125 Park Avenue, 7th Floor
                                          New York, NY 10017
                                          Tel: (212) 655-3500
                                          Email: ms@msf-law.com
                                                  kaf@msf-law.com


Dated:  March 14, 2025                    **LINER FREEDMAN TAITELMAN**
        Los Angeles, CA                    **+ COOLEY**


                                          By:  _/s/ Bryan Freedman_____
                                                Bryan J. Freedman (*pro hac vice*)
                                                Miles M. Cooley (*pro hac vice*)
                                                Theresa M Troupson (*pro hac vice*)
                                                Summer Benson (*pro hac vice*)
                                                Jason Sunshine
                                          1801 Century Park West, 5th Floor
                                          Los Angeles, CA 90067
                                          Tel: (310) 201-0005
                                          Email: bfreedman@lftcllp.com
                                                  mcooley@lftcllp.com
                                                  ttroupson@lftcllp.com
                                                  sbenson@lftcllp.com
                                                  jsunshine@lftcllp.com