

**Brett Douglas McDowell, (Pro Se)**
c/o Red River Rebellion Ltée
1460 Chevrier Blvd #200,
Winnipeg, MB R3T 1Y6

legal@redriver-rebellion.ca
+12042025904

> The Court may not consider letters or requests from persons who are not parties to the proceedings. The proper procedure for a person with an interest in the case who wishes to be heard and who qualifies for intervention is to file a motion for intervention. Pursuant to the consolidation order at Dkt. No. 49, any request related to this case should be filed in Case No. 24-cv-10049.

April 27, 2025

**VIA ECF & U.S. MAIL**

Date: 5/9/25

SO ORDERED.
LEWIS J. LIMAN
United States District Judge

The Honorable Lewis J. Liman
United States District Court Judge
Southern District of New York
500 Pearl Street, Room 1620
New York, NY 10007

**Re: Non-Party Request for Preservation and Consideration of Discovery Materials – Case No. 1:25-cv-00449 (LJL), *Lively v. Wayfarer Studios LLC et al.***

Dear Judge Liman,

I write as a non-party individual in connection with the above-captioned matter. I respectfully request that the Court ensure the preservation of all discovery materials—including internal communications, design documentation, and drafts—relating to the creation, development, and portrayal of the character "Nicepool" in *Deadpool & Wolverine*, and any related character likenesses, including "Dogpool."

Recent admissions by Marvel Entertainment LLC, made in its April 25, 2025, letter-motion to quash filed in *Lively v. Wayfarer Studios LLC* (ECF No. 86), regarding the creation and portrayal of the characters "Nicepool" and "Dogpool" in *Deadpool & Wolverine* — including references acknowledging derivative "joke" and caricature elements — further reinforce the material relevance of the discovery materials sought. These admissions shed new light on patterns of conduct at issue and support the inference that creative decisions may have been informed by real-world experiences, relationships, and prior notices of concern. Accordingly, full preservation and review of related development materials is critical to ensuring a fair and complete discovery record.

This request is made in good faith and arises from a separate but closely connected pattern of facts. My spouse, Eiko Ishiwata, and I are public figures within the independent game and entertainment community in Montreal. In recent years, we have observed repeated instances where aspects of our lived experience, likeness, creative content, and service animal have appeared mirrored in productions involving Mr. Reynolds, including *Free Guy*, *Mythic Quest*, and *Deadpool & Wolverine*. These concerns were previously raised internally with Disney-affiliated counsel in 2021 and are now the subject of pending and contemplated proceedings, including human rights claims addressing appropriation, retaliatory conduct, and systemic exclusion within the entertainment industry.

Importantly, I am an Indigenous person and a citizen of the Red River Métis Nation (Native Canadian/Indigenous), a widely recognized Indigenous people whose citizens have historically lived in, and continue to maintain traditional ties to, what is now the United States. Historically, the Red River Métis share strong kinship and territorial ties with the Little Shell Tribe of Chippewa Indians of Montana, a federally recognized tribe in the United States. The Red River Métis also historically engaged with the United States Department of Indian Affairs concerning land use, hunting rights, and community protections. Today, the Red River Métis Nation continues to assert its international presence, engaging in diplomatic relations with bodies such as the Organization of American States where the United States is a full member. In 2023, the City of Los Angeles formally recognized the Red River Métis Nation, acknowledging both the Nation's distinct identity and its historical ties to U.S. territory. The Red River Métis Nation formally recognizes its citizens whose families historically and presently reside within the United States as part of the broader Métis Nation Homeland. This reflects a longstanding and continuing Indigenous presence relevant to matters before the Court.

As such, these matters also involve concerns of retaliation and potential targeting connected to my Indigenous identity, and to my prior efforts to raise concerns about fairness, ethical practices, and equitable treatment in relation to Maximum Effort productions, and Mr. Reynolds' affiliated business activities. Public statements made by Mr. Reynolds regarding commitments to fairness, diversity, and respect create a reasonable expectation that such advocacy would not result in retaliation or exclusion. The pattern of appropriation, exclusion, and retaliatory imagery alleged here must therefore be considered within the broader context of racialized harassment and professional retaliation, not mere creative liberties.

We are not seeking to disrupt this proceeding. Rather, we believe that some of the same internal documents currently sought under subpoena—particularly those Marvel now seeks to quash in Document No. 86—may bear directly on ongoing and contemplated legal matters, including intellectual property concerns, allegations of retaliatory representation, and emerging claims related to harassment and retaliation. In particular, recent discoveries and admissions before this Court raise the possibility of future litigation within the State of California and/or the State of New York concerning retaliatory conduct directed toward my spouse and myself.

These concerns arise from my spouse's experience at the 2017 Game Developers Conference (GDC) in San Francisco, where she reported experiencing symptoms consistent with drugging, and the subsequent portrayal of similar traumatic themes in the television series *Mythic*

*Quest*—a production cross-promoted with Wrexham AFC and involving Mr. Rob McElhenney. The marketing and creative overlap between *Mythic Quest*, Wrexham, and Disney-affiliated productions, alongside the known public knowledge of my spouse's traumatic experience, raise serious concerns that these portrayals may have been harassing in nature and retaliatory in effect. We are also engaged in human rights proceedings in Canada addressing similar themes of appropriation, retaliatory exclusion, and professional discrimination tied to the entertainment industry, including issues related to bona fide occupational requirements. In light of recent developments, we are also assessing whether the United States may be the appropriate jurisdiction for additional proceedings related to these matters.

Aspects of the targeting and trivialization described herein implicate serious concerns under harassment protection frameworks, including protections against retaliation for reporting sexual harassment or related misconduct. My spouse's disclosure regarding a suspected drugging incident at the 2017 Game Developers Conference (GDC) — a matter involving serious trauma and vulnerability — precedes many of the creative portrayals now at issue. The subsequent incorporation of similar traumatic themes in *Mythic Quest*, alongside the broader exclusionary and retaliatory patterns described herein, raises substantial concerns that the protected activity of reporting trauma may have triggered systemic retaliation. These concerns further reinforce the need for full preservation and review of all relevant materials, including internal discussions regarding harassment, retaliation, and handling of trauma-related disclosures.

Furthermore, given the close relationship between my Indigenous identity, the creative materials at issue, and the commercial enrichment of Maximum Effort, Mr. Reynolds, and Mr. McElhenney through productions such as *Free Guy*, *Mythic Quest*, and *Deadpool & Wolverine*, there appears to be a credible basis for potential claims of unjust enrichment. Notably, public information indicates that *Deadpool & Wolverine* was not only a major commercial project in its own right, but also served to bolster cross-promotional efforts related to the Wrexham AFC brand and other associated ventures. This raises serious concerns that elements derived from my and my spouse's lived experiences — including aspects tied to my Indigenous identity — were not only utilized without consent but were repurposed to generate broader financial benefit.

The broader public context during the development of *Deadpool & Wolverine*, including increasing scrutiny over Indigenous representation and casting practices, further underscores these concerns. In this environment, there are reasonable grounds to believe that my spouse's targeting and exclusion may have been motivated, at least in part, by my Indigenous identity. Additionally, aspects of the targeting and trivialization described herein appear to have extended to representations bearing resemblance to my service animal, which is connected to my veteran status and recognized accommodation needs. These issues are intertwined with ongoing debates within the entertainment industry about fairness, authenticity, and cultural representation. They further support the critical relevance of the discovery materials sought.

Similar patterns of conduct are already at issue before this Court in *Lively v. Wayfarer Studios LLC*, where allegations have been raised regarding the exploitation of creative contributions for personal and financial gain by more powerful insiders. In this context, the conduct described

herein — including issues of appropriation, retaliatory exclusion, and the repurposing of real-life trauma for commercial benefit — reflects broader systemic concerns of unjust enrichment, harassment, and manipulation of professional structures within the entertainment industry. These parallels further reinforce the material relevance of the discovery materials sought.

In addition, our project *Valiant Mirror* — publicly understood within the Montreal independent game community as a socially impactful JRPG addressing themes of trauma, resilience, and healing — further reflects the systemic concerns at issue. Like the themes raised in *It Ends With Us*, *Valiant Mirror* centered vulnerable communities and aimed to provide emotional support through storytelling. Observing a broader pattern in which trauma-centered projects were appropriated, commercialized, or excluded without appropriate recognition reinforces the material relevance of the discovery materials sought. These parallels are consistent with the allegations already before this Court regarding the exploitation of social-impact storytelling for personal or commercial benefit.

These concerns were previously raised internally with Disney-affiliated counsel in 2021 and are now the subject of pending and contemplated proceedings, including human rights claims addressing issues of appropriation, retaliatory conduct, systemic exclusion, and racialized harassment.

> These patterns of appropriation, targeting, and trivialization appear to predate the more recent public disputes now before this Court. The consistent exclusion or repurposing of socially impactful creative projects — including those centering Indigenous, vulnerable, or trauma-affected communities — reflects a broader trend that existed independently of any alleged smear campaign. This historical context reinforces the need for the full preservation and review of internal materials concerning the development, marketing, and handling of projects such as Free Guy, Mythic Quest, Deadpool & Wolverine, and related works.

Additionally, aspects of the targeting and trivialization described herein appear to have extended to representations bearing resemblance to my service animal, further implicating concerns related to disability accommodation and protected human rights. Given the serious and sensitive nature of such matters, the preservation and review of internal materials reflecting these portrayals is critically important to a full and fair assessment of the patterns of conduct at issue.

If the Court is inclined to grant Marvel's motion to quash or restrict discovery, I respectfully request that:

1. The Court ensure that all materials concerning Nicepool, Dogpool, including but not limited to creative drafts, concept art, internal communications, marketing materials, promotional content, and any references to real individuals, as well as any internal discussions, communications, or analyses concerning complaints or concerns relating to racial harassment, retaliation, Indigenous identity, or the handling of concerns raised by Indigenous persons, are preserved;

2. That such materials not be destroyed, redacted, or sealed without a clear record;

3. That the undersigned be permitted to submit additional information should any overlap with this matter become more direct or actionable.

In light of the concerns outlined above, I respectfully request that, to the extent discovery materials relevant to these matters are produced under any Attorneys' Eyes Only ("AEO") designation, provisions be made to ensure that I and my anticipated U.S. counsel will have the opportunity to seek access under appropriate protections. I am in the process of pursuing U.S. legal representation to address related matters that may arise from the same or overlapping factual circumstances described herein. I make this request solely to preserve my ability to fairly review and protect my interests in connection with discovery materials that may bear directly on potential future claims.

Should it be necessary, I am prepared to provide sworn statements and evidentiary material to support these concerns. I make this request not to interfere, but to ensure that relevant materials are not lost or destroyed prior to the resolution of related legal matters involving significant public interest.

I have separately served preservation notices directly upon The Walt Disney Company, Marvel Entertainment, LLC, and Wayfarer Studios LLC, outlining these and related concerns. Should the Court find it helpful, I am prepared to provide copies of that correspondence upon request.

Respectfully submitted,

*[signature]*

**Brett Douglas McDowell, (Pro Se)**
c/o Red River Rebellion Ltée
1460 Chevrier Blvd #200,
Winnipeg, MB R3T 1Y6

legal@redriver-rebellion.ca
+12042025904

cc: Counsel of Record (via ECF)

April 28, 2025

**UNITED STATES DISTRICT COURT  SOUTHERN DISTRICT OF NEW YORK**

*Lively v. Wayfarer Studios LLC et al.,*  Case No. 24-CV-10049 (LJL)

## NOTICE OF SERVICE

I, Brett Douglas McDowell, hereby certify that on April 27, 2025, I served a copy of the document titled **"Request for Preservation and Disclosure Concerning *Dogpool*, *Nicepool*, and Related Matters"** upon the following counsel of record:

- **Jacob D. Albertson** (Mitchell Silberberg & Knupp LLP) – by Canada Post Xpresspost (Signature Priority) and by email at j1a@msk.com

- **Bryan J. Freedman** (Freedman + Taitelman, LLP) – by Canada Post Xpresspost (Signature Priority) and by email at bfreedman@ftllp.com

Service was made via Canada Post Xpresspost (Signature Priority) and electronic mail to the addresses listed above.

I certify under penalty of perjury that the foregoing is true and correct.

Dated: April 28, 2025
 Winnipeg, Manitoba, Canada

Respectfully submitted,

*[signature]*

**Brett Douglas McDowell, (Pro Se)**
c/o Red River Rebellion Ltée
1460 Chevrier Blvd #200,
Winnipeg, MB R3T 1Y6

legal@redriver-rebellion.ca
+12042025904

cc: Counsel of Record (via ECF)