

Mitchell Schuster
*Partner*
Direct (212) 655-3549
Fax (212) 655-3535
ms@msf-law.com

<u>Via ECF</u>                                                                 May 9, 2025

Hon. Lewis J. Liman
United States District Court
500 Pearl Street, Room 1620
New York, NY 10007

Re: *Lively v. Wayfarer Studios LLC et al.*, No. 1:24-cv-10049-LJL;
rel. *Wayfarer Studios LLC et al. v. Lively et al.*, No. 1:25-cv-00449-LJL

Dear Judge Liman:

As counsel for Wayfarer Studios LLC, Justin Baldoni, Jamey Heath, Steve Sarowitz, It Ends With Us Movie LLC, Melissa Nathan, The Agency Group PR LLC, and Jennifer Abel (collectively, the "Wayfarer Parties"), we oppose Jonesworks LLC and Stephanie Jones's (collectively, "Jonesworks") motion for a protective order. (Dkt. 198).

"The crime-fraud exception strips the privilege from attorney-client communications that relate to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct." *In re John Doe, Inc.*, 13 F.3d 633, 636 (2d Cir. 1994) (internal quotation omitted). The exception also applies to the work product doctrine. *In re Richard Roe, Inc.*, 68 F.3d 38, 40 (2d Cir. 1995). For the crime-fraud exception to apply, there must be probable cause that a crime or fraud has been attempted or committed and that the communications were in furtherance thereof. *Id.* Courts "have long construed the exception as reaching some conduct beyond crime and fraud" such as intentional torts. *Madanes v. Madanes*, 199 F.R.D. 135, 149 (S.D.N.Y. 2001). The exception encompasses "misconduct fundamentally inconsistent with the basic premises of the adversary system." *Id.* (internal quotation omitted). "[C]ourts have applied the crime-fraud exception where a party's actions in discovery are found to be calculated and purposeful litigation misconduct." *Abbott Labs. v. H&H Wholesale Serv., Inc.*, No. 17-cv-3095, 2018 WL 2459271, at *5 (S.D.N.Y. Mar. 9, 2018) (internal quotation omitted).

On August 21, 2024, Jennifer Abel arrived at Jonesworks' office, where she was ushered by Edgeworth's security personnel into a conference room, falsely imprisoned by Edgeworth's security personnel via its intimidation and implied pressure/coercion, and then coerced by Jonesworks' Chief of Staff and lawyer present in the room to hand over her Jonesworks-issued cellular phone to Edgeworth's technology personnel, which she was told was solely to facilitate the release of her personal phone number. (Dkt. 50, ¶¶ 216 – 220). In truth, and *without Ms. Abel's knowledge or consent*, Edgeworth's technology personnel forensically accessed everything from her personal iCloud and email accounts available on the phone – her text messages, emails,

personal photos, etc. – and delivered the materials to its client, Jonesworks, which then had unrestricted access thereto. (*Id.* ¶¶ 221 – 222).

Jonesworks acknowledges that it possesses Ms. Abel's private communications, includes such communications in its pleadings and admits that they were "forensically extracted" from the phone by Jonesworks' "IT specialist" (Edgeworth). (*Jones et al. v. Abel et al.*, 25-cv-00779, Dkt. 1-1, ¶ 105) (the "Jonesworks Case").[1] As detailed in Ms. Abel's responsive pleadings, Jonesworks' misconduct (including through its agent Edgeworth) constitutes: (1) a violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*, because Jonesworks intentionally accessed Ms. Abel's cloud-based accounts hosted on remote servers by non-parties (such as Apple and Google) and obtained her private data without her consent; (2) a violation of the Stored Communications Act, 18 U.S.C. § 2701 *et seq.*, because Jonesworks accessed, intercepted, collected, financially benefitted from, and/or disclosed Ms. Abel's emails and text messages; (3) a violation of the Federal Wiretap Act, 18 U.S.C. § 2510 *et seq.*, because Jonesworks intentionally intercepted, used and/or disclosed electronic communications within, to, and from Ms. Abel's mobile device, email accounts, and iCloud, and because Jonesworks diverted those communications to Blake Lively (as specified below); (4) a violation of California Penal Code § 502(c) for similar reasons; (5) an invasion of Ms. Abel's privacy; and (6) conversion. (*Id.*, Dkt. 50, ¶¶ 59 – 70, 105 – 180).

The same day (August 21, 2024) that Jonesworks improperly obtained Ms. Abel's private communications and data, and in the days that followed, Jonesworks disclosed the information to Blake Lively and/or her agents. (*Id.*, ¶¶ 90 – 93). At the time, Lively was reeling from a storm of self-induced negative publicity surrounding *It Ends With Us* (the "Film"), and she saw an opportunity to use the ill-gotten communications to spin a false tale of a "smear campaign" to *The New York Times* (the "Times") by cherry-picking and splicing communications which, when viewed in full context, demonstrate an effort to prevent Lively's vicious behavior and malignant persona from overshadowing the Film. However, because Jonesworks had illegally obtained Ms. Abel's communications and then improperly disclosed them to Lively, Lively needed a veneer of legitimacy to explain her possession of the stolen materials prior to giving them to the Times.

On September 27, 2024, Lively and her counsel herein, Manatt, Phelps & Phillips, LLP ("Manatt"), initiated a proceeding in New York state court, *Vanzan, Inc. v. Does 1-10* (Sup Ct., N.Y. Cty. Index No. 655130/2024) (the "Sham Action"). A true copy of the Complaint from the Sham Action is attached as **Exhibit A**. The Sham Action was a transparent ploy to manufacture a procedural vehicle by which Lively could "subpoena" Jonesworks for Ms. Abel's communications, *without notifying any of the Wayfarer Parties (including Ms. Abel)*, all of whom lacked notice thereof and were deprived of any opportunity to object. The plaintiff, Vanzan, Inc., is an inactive corporation affiliated with Lively and her husband Ryan Reynolds and unrelated to the Film. The Vanzan Complaint is devoid of specific allegations against anyone, much less Ms. Abel; relies exclusively on recitations of boilerplate legal jargon; and implausibly alleges that Vanzan is unable to identify its own contractual counterparties. After the Sham Action was filed, Vanzan (Lively) issued a subpoena (signed by Manatt) to Jonesworks pursuant to CPLR 3120 (the "Sham Subpoena"), which permits the service of a subpoena merely upon commencement of an action, unlike the Federal Rules of Civil Procedure. Vanzan (Lively) did not name any of the

---

[1] The Jonesworks Case adopted the Case Management Plan and Scheduling Order entered herein, with minor exceptions. (*Id.*, Dkt. 21).

Wayfarer Parties as defendants in the Sham Action because doing so would have required service of a copy of the Sham Subpoena upon them (CPLR 3120(3)) and enabled them to move to quash it.  As planned by Lively and Jonesworks, Jonesworks did not object to the Sham Subpoena (as any reasonable recipient thereof would have done given the lack of any specificity or coherence in the Complaint, and the contractual obligations they would be violating), but instead blithely surrendered the entire contents of Ms. Abel's stored communications a second time to Lively, without Ms. Abel's knowledge, and to fabricate a protection of legal process.  Tellingly, on December 19, 2024, the Sham Action was discontinued (*see* **Exhibit B**).  The next day, Lively filed a Complaint with the California Civil Rights Department and included Ms. Abel's communications therein. On December 21, 2024, the Times published an article containing Lively's allegations and Ms. Abel's private communications.  Despite repeated demands, *Lively's counsel has failed to provide the Wayfarer Parties with the Sham Subpoena*.

In her Amended Complaint, Lively represents to this Court that she obtained Ms. Abel's communications "through legal process, including a civil subpoena served on Jonesworks LLC." (Dkt. 84, ¶ 29 n. 10).  Jonesworks similarly represents that it "receiv[ed] a subpoena for the phone's contents." (25-cv-00779, Dkt. 1-1, ¶ 14).  Neither Lively nor Jonesworks told this Court that the Sham Subpoena was issued in a case where Lively intentionally omitted herself as the plaintiff (to avoid publicity), intentionally failed to name the Wayfarer Parties as defendants or any actual defendants (to avoid the obligation to notify them of the Sham Subpoena) and where Lively had no intention of actually litigating the "claims" in the Sham Action.  Equally as bad, Jonesworks' counsel publicly claimed that Jonesworks disclosed Ms. Abel's communications to Lively in response "to a court-ordered subpoena."[2]  It is unclear how the Sham Subpoena could be "court-ordered" given that no judge was assigned to the Sham Action (which would have required the filing of a Request for Judicial Intervention).

The Subpoena to Edgeworth seeks documents concerning Jonesworks' receipt, use and disclosure to Lively of Ms. Abel's communications, the facts of which are undisputed.  The misconduct by Jonesworks constitutes tortious conduct and a violation of multiple federal and state statutes.  The Sham Action and the Sham Subpoena, which were unquestionably designed to provide a false "cover" for Jonesworks' disclosure of Ms. Abel's communications to Lively, without notice to Ms. Abel or any of the Wayfarer Parties, constitutes "serious litigation malfeasance." *Abbott Labs.*, 2018 WL 2459271, at *5.  The Court should find that the crime-fraud exception applies to Jonesworks' claim of privilege. *See Michael Grecco Prods. Inc. v. Alamy, Inc.*, No. 18-cv-3260, 2020 WL 5848613, at *2 (E.D.N.Y. Oct. 1, 2020) (crime-fraud exception applied where defendant attempted to "defraud the court" by relying upon an "inapposite agreement" that was altered to support a motion to dismiss); *Chevron Corp. v. Salazar*, 275 F.R.D. 437, 455 (S.D.N.Y. 2011) (crime-fraud exception applied where expert reports were forged and ghost-written).

As the Wayfarer Parties prepare to seek further relief with respect to the Sham Action and Sham Subpoena, we respectfully request that the Court deny Jonesworks' motion and compel Edgeworth to comply with the Subpoena or, in the alternative, conduct an *in camera* inspection of the disputed documents.

---

[2] *See* Tatiana Siegel et al., "How Did Blake Lively Obtain Texts From Justin Baldoni's PR Team?," *Variety* (Dec. 23, 2024), https://variety.com/2024/film/news/blake-lively-justin-baldoni-bombshell-text-messages-subpoena-1236258665/ (last accessed May 6, 2025).

Respectfully submitted,

*/s/ Mitchell Schuster*

MEISTER SEELIG & FEIN PLLC
Mitchell Schuster
Kevin Fritz
125 Park Avenue, 7th Floor
New York, NY 10017
Tel: (212) 655-3500
Email: ms@msf-law.com
          kaf@msf-law.com


LINER FREEDMAN TAITELMAN + COOLEY, LLP
Bryan J. Freedman (*pro hac vice*)
Miles M. Cooley (*pro hac vice*)
Theresa M Troupson (*pro hac vice*)
Summer Benson (*pro hac vice*)
Jason Sunshine
1801 Century Park West, 5th Floor
Los Angeles, CA 90067
Tel: (310) 201-0005
Email: bfreedman@lftcllp.com
          mcooley@lftcllp.com
          ttroupson@lftcllp.com
          sbenson@lftcllp.com
          jsunshine@lftcllp.com

cc: all counsel of record (via ECF)