# EXHIBIT 2

Raines Feldman Littrell LLP Letter,

dated February 17, 2025



1900 Avenue of the Stars, 19th Floor
Los Angeles, California 90067
Main: 310.440.4100



www.raineslaw.com

February 17, 2025

**VIA E-MAIL**
ehudson@manatt.com

Esra A. Hudson
Manatt, Phelps & Phillips, LLP

Re:     **Blake Lively adv. Wayfarer Studios, LLC**

Dear Ms. Hudson:

We received your letter of February 14, 2025, declining Ms. Lively's participation in the investigation of her claims against Justin Baldoni, Jamey Heath, Steven Sarowitz, and Wayfarer Studios. While we acknowledge and respect your concerns, certain aspects of your letter mischaracterize our role, statements, and the fundamental nature of workplace investigations.

**Timeliness of the Investigation**

Wayfarer retained our firm to investigate the claims made in Ms. Lively's recent legal filings before the California Civil Rights Division and the United States District Court, Southern District of New York. Your client contends that the allegations surfaced years ago and should have been investigated. The scope of our investigation includes whether Ms. Lively filed complaints and whether Wayfarer failed to investigate them. We will determine through this investigation whether a preponderance of the evidence supports her claim.

Even if Wayfarer failed to investigate Ms. Lively's prior complaints as she alleged, Wayfarer still must investigate subsequently filed complaints. Regardless of timing, once serious allegations come to light, a neutral investigation remains a necessary and appropriate step, and we intend to carry out that obligation in accordance with best practices.

**Scope and Independence of the Investigation**

You expressed concerns regarding the scope of the investigation, Wayfarer's payment of our fees, and the absence of subpoena power. While Wayfarer retained us, the core function of an independent workplace investigation is neutrality. Wayfarer does not dictate our investigation nor determine whom we interview. We pursue all relevant facts, including information from witnesses identified by any involved party. Your assertion that Wayfarer will determine who we interview mischaracterizes our process.

As neutral third-party investigators, we rely on voluntary witness participation. This limitation is not unique to this situation nor reflects a deficiency in the investigative process—it is simply how

Page 2
Esra A. Hudson
Manatt, Phelps & Phillips, LLP

investigations function in the employment context. Unlike litigation, workplace investigations do not afford subpoena power or other coercive measures to compel testimony. Instead, the process is designed to obtain information from those willing to come forward.

Current company employees are typically required to cooperate per company policy, but external witnesses—such as former employees or third parties—may choose whether to participate. We make diligent efforts to identify and interview relevant witnesses, follow up with those who may initially be reluctant, and document any individuals who decline to participate. If a witness refuses to engage, that does not mean the investigation is ineffective; rather, it is a reality inherent in this fact-finding process. To suggest otherwise would be to hold us to an impossible standard that is not aligned with how neutral workplace investigations operate.

Your letter appears to frame these procedural realities as flaws, but in doing so, it creates a paradox: you acknowledge our role as independent investigators yet simultaneously critique us for not having powers that no independent workplace investigator possesses. It is important to recognize that our role is not to compel participation but to pursue the facts as thoroughly as possible within the framework of an impartial workplace investigation. We welcome information from all sources, including your client, and encourage the identification of any relevant documents or witnesses who may contribute to a complete and accurate assessment of the facts.

Despite your client's decision not to participate, we remain open to receiving any information, documents, or witness names that your client believes would be relevant. Our objective remains to determine the facts as comprehensively as possible, regardless of whether Ms. Lively actively participates in the investigation with a witness interview.

**Neutrality of Interviews with Counsel Present**

You have also raised concerns that an interview conducted in the presence of company counsel can never be truly neutral. As we discussed during our call, while counsel is always permitted to be present—particularly when legally required in the case of represented parties— their role is strictly observational, not participatory.

If counsel, whether for Wayfarer, Ms. Lively, or any other third-party witness, oversteps that boundary and attempts to interfere with the neutrality of the interview process, we document that in our report and take appropriate corrective measures to ensure that such conduct does not interfere with the integrity of the investigation. Our role as investigators remains independent, and we do not permit counsel's presence to compromise the fairness of our findings.

**Methodology and Investigative Approach**

Your letter also raises concerns about our ability to investigate alleged practices that may have been designed to be untraceable. As we explained, we understand the nature of the allegations and will take appropriate measures, including working with third-party professionals where necessary. The expectation that we should, at the outset, outline all specific investigative methods we will



Page 3
Esra A. Hudson
Manatt, Phelps & Phillips, LLP

employ is unrealistic. The nature of workplace investigations requires adaptability, as methods evolve based on facts uncovered during the process.

**Effectiveness of the Investigation**

You state that our investigation cannot be effective because we do not issue recommendations. This reflects a misunderstanding of our role. We aim to determine facts and identify concerns, not implement workplace changes or dictate corrective actions. What the company ultimately does with our findings is beyond our scope, but identifying and documenting issues is the first step in addressing workplace concerns. Holding us responsible for implementing changes would fundamentally alter the role of a neutral fact-finder.

To state the obvious, if our investigation results in documented findings of harassment or other improper workplace conduct, and the employer fails to take appropriate remedial measures, they will undoubtedly face the consequences—both legally and reputationally. This is particularly true in this case, where any actions taken will be subject to heightened scrutiny. The employer ignores substantiated findings at its own risk, as failing to act on investigative conclusions could lead to liability, regulatory scrutiny, and significant reputational harm.

That reality underscores why independent investigations are critical to responsible workplace management. Wayfarer's decision on whether and how to act on our findings is separate from our function as investigators. However, the notion that our work is ineffective simply because we do not dictate the next steps mischaracterizes the purpose of an independent investigation. Our findings serve as a foundation for informed decision-making, and any suggestion that they can be disregarded without consequence is unrealistic.

**Privileged Nature of the Investigation**

We acknowledge your concerns regarding the privileged nature of our investigation and Wayfarer's ability to assert or waive privilege. However, as I trust you are aware, it is standard practice in workplace investigations that the privilege remains with the employer. This does not mean we are beholden to the company. As we discussed, our communications with the company and its representatives during the investigation are limited to logistical matters and status updates, not the specific substance of witness interviews. As we assured you on our call, it is not our practice to share investigation notes or findings with our clients before the completion of the report.

We understand the skepticism surrounding our role, particularly given the public nature of these matters and the adversarial nature of litigation. However, our obligation remains to conduct a thorough, impartial investigation consistent with professional best practices. Ms. Adam and I have conducted hundreds of workplace investigations within these standards, and we take our role and responsibility very seriously.



Page 4
Esra A. Hudson
Manatt, Phelps & Phillips, LLP

**Continued Opportunity for Participation**

While we respect your client's decision, we urge reconsideration. Participation in this process allows for a full and fair assessment of the claims. As noted, regardless of whether Ms. Lively chooses to be interviewed, we remain open to receiving any information, witness names, or documents your client believes should be considered in determining the truth of these allegations.

Please let us know if your client is willing to provide such information or if she is open to further discussions regarding participation. We remain committed to conducting a professional and neutral investigation.

                        Sincerely,

                      *Lauren Katunich*

                      [REDACTED]
                of Raines Feldman Littrell LLP

cc: [REDACTED], Adam Investigations Counsel

