# EXHIBIT 3

Blake Lively Letter, dated March 28, 2025

# manatt

Esra A. Hudson
Manatt, Phelps & Phillips, LLP
Direct Dial: (310) 312-4381
ehudson@manatt.com

March 28, 2025

**VIA EMAIL**

▮▮▮▮▮
Raines Feldman Littrell LLP
▮▮▮▮▮
▮▮▮▮▮
▮▮▮▮▮

▮▮▮▮▮
Adam Investigations Counsel
▮▮▮▮▮
▮▮▮▮▮
▮▮▮▮▮

**RE: Cease and Desist Demand**

Dear Ms. ▮▮▮ and Ms. ▮▮▮:

As you know, we represent Blake Lively in connection with the active litigation matters styled *Lively v. Wayfarer Studios LLC, et al.*, United States District Court for the Southern District of New York, Case No. 1:24-cv-10049, and *Wayfarer Studios LLC v. Lively, et al.*, United States District Court for the Southern District of New York, Case No. 1:25-cv-00449 (collectively, the "Actions"). Based on our prior correspondences and teleconferences, we understand that you have been retained by Wayfarer Studios LLC ("Wayfarer") and have been instructed to conduct an investigation into Ms. Lively's claims regarding a hostile and harassing work environment on the set of *It Ends With Us* (the "Film") and the subsequent retaliation against Ms. Lively for taking steps to protect her and others on the set—issues that are subject to active litigation and ongoing discovery in the Actions.

We have recently learned that, notwithstanding our February 14, 2025 correspondence, outlining the numerous ways that your so-called "investigation" is improper,[1] you have been contacting witnesses identified on the parties' confidential initial disclosures representing yourselves as "third party neutral investigators." **_As described below, these efforts are misleading, they threaten to taint witness evidence in the case, and they must stop immediately._**

*First*, in your introductory correspondence to these individuals – all of whom are witnesses in an active litigation matter (some of whom are represented by counsel) – you fail to disclose that

---

[1] Enclosed as Exhibit A for your reference.

Manatt, Phelps & Phillips, LLP   2049 Century Park East, Suite 1700, Los Angeles, California  90067   Tel: 310.312.4000  Fax: 310.312.4224

# manatt

March 28, 2025
Page 2

your supposedly "neutral" investigation is bought and paid for by Wayfarer. Even worse, you fail to disclose in that correspondence that you are acting as *Wayfarer's lawyers* and as such, Wayfarer will be the sole party that has access to the information that witnesses may be providing. You have informed us that you are taking the position that this investigation is confidential and privileged, which means that, although Wayfarer will have access to your investigation notes, documents, records – and *audio recordings of witness interviews* – neither Ms. Lively nor third party witnesses with whom you meet will have such access (unless *Wayfarer* choses to waive the privilege). Your introductory correspondence fails to disclose this, and instead goes to great lengths to misleadingly portray your investigation as "independent" and "neutral." Based on your correspondence, potential witnesses will surely not understand that they are being interviewed by Wayfarer's lawyers, who are investigating at Wayfarer's instruction, and providing work product directly to Wayfarer to use in whatever way Wayfarer sees fit, including potentially using that information *against* such witnesses in the ongoing litigation where, *unlike in your investigation*, they will be testifying under oath.

It is plain to see how witnesses may be confused about who you are, what will happen to the information you collect from them, and how it may be used against them. They may wrongly believe that your "investigation" is part of the litigation discovery process in connection with the Actions, in which they are legally required to participate, or that you have been tasked to investigate by the court or mutually by the parties on both sides of the litigation.

Your introductory correspondence fails to anticipate or prevent any of these misunderstandings. Further, failing to clearly and unambiguously disclose that you have been retained and are working for Wayfarer may violate your ethical obligations under both California and New York law. To be sure, "[a] lawyer is required to be truthful when dealing with others on a client's behalf." Cal. Rules of Prof. Conduct, Rule 4.1; N.Y. Rules of Prof. Conduct, Rule 4.1 (accord). These laws make clear, "[a] nondisclosure can be the equivalent of a false statement of material fact or law under paragraph (a) where a lawyer makes a partially true but misleading material statement or material omission." *Id*. Critically, "[i]n communicating on behalf of a client with a person who is not represented by counsel, **a lawyer shall not state or imply that the lawyer is disinterested**." Cal. Rules of Prof. Conduct, Rule 4.3 (emphasis added); N.Y. Rules of Prof. Conduct, Rule 4.3 (accord). Where, as here, a "lawyer knows or reasonably should know that the unrepresented person incorrectly believes the lawyer is disinterested in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding." Cal. Rules of Prof. Conduct, Rule 4.3; N.Y. Rules of Prof. Conduct, Rule 4.3 (accord). Your statements to these unrepresented third party witnesses are, at best, highly misleading—particularly given your effort to distance yourself as attorneys that have been retained by Wayfarer—and may violate your ethical obligations as attorneys. The bottom line is that no investigators who are retained, paid and instructed to investigate by Wayfarer under the current circumstances of this matter can reasonably assert that they are "neutral."

manatt

March 28, 2025
Page 3

*Second*, your primary source of information for the scope and basis for this investigation, other than publicly filed documents, is Wayfarer itself. Thus, the lines of questioning that you may direct to witnesses, sourced from information *Wayfarer provides to you*, may be designed to improperly influence their recollections, plant ideas or themes in their minds, or otherwise impact their future testimony under oath in the litigation process. No matter how much you may believe that you are acting professionally and in good faith in this investigation, you must recognize how fraught and dubious this process is, given the timing of this investigation nearly *two years after* the events at issue when the Film production has long since ended, the ongoing litigation and the extraordinary and aggressive actions your client Wayfarer has taken to date. By instituting this private investigation under the guise of "neutrality," Wayfarer appears to be attempting to ascertain *how* witnesses will testify in a closed environment and without affording Ms. Lively or anyone else the opportunity to examine those witnesses. Such abuse of process not only interferes with ongoing discovery in the Actions, but also threatens to intimidate and confuse witnesses.

*Third*, it is particularly egregious that the investigation is portrayed as "neutral" and "independent" given the public statements of the client on whose behalf you are working. Specifically, Wayfarer has already committed itself to the legal position (subject to Rule 11 of the Federal Rules of Civil Procedure) that Ms. Lively's allegations of harassment and retaliation are entirely false, that Wayfarer was under no obligation to investigate anything, that Ms. Lively is a liar, and that she has defamed them to the tune of hundreds of millions of dollars by even making such allegations. What, then, is the possible purpose of your investigation, other than to unduly influence witnesses and end-run the discovery process? For example, no one could possibly believe that Wayfarer would voluntarily disclose a finding that Ms. Lively's allegations are substantiated, given that doing so would require Wayfarer not only to dismiss its nearly *billion dollars* of litigations against Ms. Lively, but also be subject to fee shifting, treble, and punitive damages for bringing meritless claims against her. *See, e.g.,* Cal. Civil Code § 47.1. Instead, the apparent purpose of this exercise is for Wayfarer to bury any unhelpful findings under the "attorney-client privilege," publicly release any findings Wayfarer deems useful, and perhaps most importantly, use any and all information you obtained from witnesses to its advantage as much as possible in the litigation.

As a reminder to you, the client for which you are purporting to conduct this "neutral investigation," has, in the last week and through its counsel, told the entire world in a statement to the media that Wayfarer and its leadership are "innocent," and that Ms. Lively's claims of harassment and retaliation are an "abuse of the legal system," "pure malice," "false" and "fantastical." This statement is part of a long list of defamatory statements made against Ms. Lively that have resulted in your client being sued for defamation. Moreover, keep in mind that your client is suing Ms. Lively "into oblivion" and maligning her reputation at every opportunity, despite the following facts:

- Wayfarer *has already admitted* that Ms. Lively raised concerns during the production to Justin Baldoni, Jamey Heath, and others which were

# manatt

March 28, 2025
Page 4

- contemporaneously documented. Mr. Baldoni even issued a written apology to Ms. Lively and another female cast member.

- Mr. Baldoni, who was the director and executive producer of the movie, as well as the co-founder and co-chairman of the studio that owned the movie, was Ms. Lively's boss at every turn. Notwithstanding that role of authority, Ms. Lively's lawsuit alleges that Mr. Baldoni spoke about his pornography addiction, divulged information about his sex life, made derogatory, degrading, and sexual comments, described his own genitalia, improvised intimacy that had not been rehearsed, choreographed, or discussed with Ms. Lively in advance, added graphic content to the script, including a birthing scene for which he cast his friend as her OBGYN. This is not even the full list of his misconduct alleged in Ms. Lively's complaints. Ms. Lively was not the only one who was uncomfortable with Mr. Baldoni, as she set forth in her lawsuit, supported by documentary evidence.

- Mr. Baldoni and the Wayfarer parties have already admitted that they created a media and social media plan in case Ms. Lively "made her grievances public," in which they planned to plant stories suggesting Ms. Lively was a "bully" and "weaponizing feminism." They have admitted that they were able to "bury" anyone. They have admitted that they bragged and laughed at how negatively the narrative had shifted against Ms. Lively at the same time this plan was hatched, and how successful they were at "confusing" people. They have admitted that they said they "started to see a shift on social, due largely to Jed and his team's efforts to shift the narrative." Their texts and email communications are in Ms. Lively's lawsuit, and even their own to a large extent.

There is zero basis to believe that your client has any sincere interest in a "neutral" investigation into its conduct given it has gone on a brutal offensive against her despite these facts and allegations—if it had any such interest, perhaps you can explain why Wayfarer did not initiate such an investigation until *after it had been sued for sexual harassment and retaliation, more than a year after it confirmed in writing that it had been notified of the underlying sexual harassment allegations*.

This investigation appears to be an attempt to circumvent the discovery rules prescribed by the Federal Rules of Civil Procedure, and you should not allow your firms to be a tool in doing so.

**We hereby demand that you immediately cease and desist from further pursuing this sham investigation and from contacting any additional witnesses as part thereof. We further demand that you immediately (1) identify each and every person that you have contacted to date; (2) disclose all written communications with each such person; and (3) produce all (a) documents, including interview notes and audio recordings, related to the investigation, and**

# manatt

March 28, 2025
Page 5

**(b) communications with any person regarding the investigation, including any introductory emails or letters inviting the individual to participate therein.** The documents and information are required to be produced because Wayfarer has put your investigation and its legitimacy directly at issue by maintaining that it has "appropriately, completely, and fully performed and discharged any alleged obligations and any alleged legal duties arising out of" Ms. Lively's allegations. *See* Lively v. Wayfarer, ECF No. 148, ¶ 495; *see also*, *McGrath v. Nassau Cnty. Health Care Corp.*, 204 F.R.D. 240, 246 (E.D.N.Y. 2001) (ordering production of attorney's notes and reports because defendant "put those materials at issue by claiming that its remedial response was sufficient in light of its investigation [into claims of sexual harassment].").

      We hereby demand that you respond to this letter confirming in writing that you will cease any further activity related to the investigation by no later than **9:00 a.m. PST Monday, March 31, 2025**. Even if you disagree with the assertions in this letter, at minimum, you must confirm at that time that you will immediately cease contacting any further witnesses in connection with the "investigation" until we have an opportunity to raise this issue with the Court. If you fail to do so, we will promptly raise the foregoing with the Court and seek all available sanctions against the Wayfarer Parties, and reserve all rights and remedies against you and your respective firms.

      Respectfully,

/s/ Esra. A Hudson
Esra A. Hudson


cc:    Litigation counsel for Ms. Lively at Willkie, Farr & Gallagher, LLP
       Litigation counsel for Wayfarer Studios LLC and It Ends With Us LLC

# EXHIBIT A

Case 1:25-cv-00449-LJL    Document 108-3    Filed 05/19/25    Page 7 of 10

# manatt

Esra A. Hudson
Manatt, Phelps & Phillips, LLP
Direct Dial: 310-312-4381
ehudson@manatt.com

February 14, 2025

**VIA ELECTRONIC MAIL**



Raines Feldman Littrell LLP

Adam Investigations Counsel

Re:   Blake Lively adv. Wayfarer Studios, LLC

Dear Ms. ▮ and Ms. ▮:

On behalf of our client Blake Lively, I write to respond to your letter of January 31, 2025 and to follow up on our conversation of February 12, 2025. In your letter, you state that Wayfarer Studios, LLC ("Wayfarer") has retained your firm "to conduct a neutral, third-party investigation of Blake Lively's complaint for sexual harassment, retaliation, failure to investigate, prevent and/or remedy harassment, and aiding and abetting harassment." You ask to interview Ms. Lively to fulfill Wayfarer's legal "mandate" to investigate.

With respect, we find this years-too-late request baffling and must decline it. As you note in your letter and confirmed on our call, employers have a legal mandate to investigate complaints of harassment. *See Tritchler v. Cnty. of Lake*, 358 F.3d 1150, 1155 (9th Cir. 2004) ("the duty to investigate is an affirmative obligation"). A failure to investigate is itself unlawful. *See* Cal. Gov. Code § 12940(k); *Alaniz v. Robert M. Peppercorn, M.D.*, Inc., No. 205CV2576MCE-DAD, 2007 WL 1299804, at *8 (E.D. Cal. May 3, 2007) ("California courts have recognized a separate cause of action against an employer for failure to investigate . . . under section 12940(k)").

However, the law mandates not just any investigation, but one that is prompt, thorough, and effective. Wayfarer's proposed investigation is clearly none of these.

February 14, 2025
Page 2

*First*, the fact that your firm has only been retained now—nearly ***two years*** after Ms. Lively first raised her harassment complaints in May 2023—makes a mockery of the law's requirement of a "prompt" investigation. *See Swenson v. Potter*, 271 F.3d 1184, 1193 (9th Cir. 2001) ("The most significant immediate measure an employer can take in response to a sexual harassment complaint is to launch a prompt investigation to determine whether the complaint is justified," finding promptness where investigation initiated within three days of the complaint).

As the EEOC has noted, even a two-month delay in investigating fails to meet the statutory requirement of a "prompt" investigation. *See EEOC Enforcement Guidance on Harassment in the Workplace*, § IV(C)(3)(ii)(b)(a)(2004) ("an employer that waits two months to open an investigation, absent any mitigating facts, very likely has not acted promptly"). When we spoke, you had no explanation for Wayfarer's nearly two-year delay, and indeed you stated that this delay was one of the issues you were going to investigate. The fact that Wayfarer has only now decided to investigate Ms. Lively's claims irrefutably proves it has violated its obligations under California, federal, and other applicable law to take prompt action when presented with a harassment complaint.

*Second*, an investigation must be thorough. *See id.* (an investigation must be "sufficiently thorough to arrive at a reasonably fair estimate of truth" and "seek information about the conduct from all parties involved"). As you know, the misconduct Wayfarer now claims it wants to "investigate" is the subject of multiple federal lawsuits involving multiple parties and dozens of witnesses nationwide, very few of whom are current Wayfarer employees. Any thorough investigation must entail speaking to all of these witnesses and reviewing any relevant documents and information they possess. However, when we spoke, you acknowledged you have no authority to compel anyone to speak to you and that you would be relying on Wayfarer, led by the very people who are the accused parties, to provide you documents and to set the "scope" and budget of the investigation.

Further, Ms. Lively alleged that the retaliation campaign perpetrated by Wayfarer and others against her was designed to be "untraceable." But you could not explain how you would be able to investigate these allegations given the limits placed on your authority, including a lack of subpoena or other discovery power. Needless to say, an investigation that relies on the accused to set its scope and budget, and provide self-serving documents and witnesses is not one designed to get to the truth.

*Third*, an investigation must be effective, *i.e.*, designed to lead to remedial action to stop the harassment. *See Bradley v. Dep't of Corr. & Rehab.*, 158 Cal. App. 4th 1612, 1631 (Cal. Ct. App. 2008). You told me your role would be one of "fact gathering" and that you are not charged by Wayfarer to make any recommendations or suggest corrective action. As a matter of law, this is not an "effective" investigation. *See id.* (employer's investigation was inadequate where it was merely "a fact-finding undertaking" with "[n]o component . . . designed to protect [the complainant] from harassment").

On our call, you acknowledged that "if these incidents occurred as alleged there are significant problems within the organization that they will have to contend with." We of course agree. But rather than recommend remedial action, you told me that any report you might issue at the conclusion of your

# manatt

February 14, 2025
Page 3

investigation (which could be oral or written, at Wayfarer's discretion) would leave it up to Wayfarer (or its lawyers) to decide what to do. Further, you told me that it would be up to Wayfarer whether to release any report or to bury it under a claim of attorney-client privilege.

Wayfarer and its counsel[1] have spent the past few months in the press calling Ms. Lively a liar; stating there was never any retaliation; and claiming that she has invented her claims of sexual harassment out of a malicious intent to harm them. Indeed, just a few weeks before you sent your letter, Wayfarer and its principals filed a nine-figure lawsuit against Ms. Lively and her husband asserting that the very claims Wayfarer now would have you investigate are false, defamatory, even extortionate. Moreover, from the moment they understood that Ms. Lively complained, Ms. Lively has alleged that Wayfarer and its principals have been on a stated mission to "bury" and "destroy" her and those who defended her.

Against this backdrop, it is clear that Wayfarer's belated investigation is a sham designed not to get at the truth, but to obscure it. Perhaps if Wayfarer had complied with the law and retained your firm to investigate Ms. Lively's claims when she first raised them in May 2023, she would have agreed to participate and the parties would not be in litigation today.

Unfortunately, Wayfarer ignored its obligation and has repeatedly doubled, tripled and quadrupled down on its conduct. Accordingly, Ms. Lively declines your firm's request for an interview, and she will instead continue to rely on the legal process to resolve her claims.

Very truly yours,

Esra A. Hudson

cc: Stephanie Roeser, Manatt, Phelps & Phillips, LLP
Michael Gottlieb, Willkie, Farr & Gallagher, LLP
Kristin Bender, Willkie, Farr & Gallagher, LLP

---

[1] On the issue of Wayfarer's counsel, you stated that any represented party would be permitted to have counsel present during their interviews with you. We note that all of the material Wayfarer party witnesses are represented by Bryan Freedman, who has repeatedly publicly attacked Ms. Lively as a liar, including but not limited to calling her "heinously selfish," and has scoffed at her sexual harassment claims, saying they "exploit actual victims of real harassment" and are "completely false, outrageous and intentionally salacious." No interview in which Mr. Freedman is present could be "neutral."