p6onlivo

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   BLAKE LIVELY,

4              Plaintiff,

5          v.                          24-cv-10049 (LJL)
                                       25-cv-00449 (LJL)
6   WAYFARER STUDIOS LLC, *et al.*,    25-cv-00779 (LJL)

7              Defendants.            Conference

8   ------------------------------x

9                                      New York, N.Y.
                                       June 24, 2025
10                                     2:00 p.m.

11  Before:

12                  HON. LEWIS J. LIMAN,

13                                     District Judge

14          APPEARANCES (Via Microsoft Teams)

15  WILLKIE FARR & GALLAGHER LLP
         Attorneys for Plaintiff/Counter-Defendant
16  BY:  KRISTIN BENDER
         MICHAEL GOTTLIEB
17

18  PRYOR CASHMAN LLP
         Attorneys for Interested Parties Case and Koslow
19  BY:  MAXWELL K. BREED

20

21

22

23

24

25

p6onlivo

```
1              THE COURT:  Good afternoon.  This is Judge Liman.
2              Do I have counsel on the phone for the Lively parties
3    who will be addressing the Court?
4              MS. BENDER:  Yes, your Honor.  Good afternoon, Kristin
5    Bender Willkie Farr & Gallagher, joined by my partner Michael
6    Gottlieb, appearing as counsel for plaintiff Blake Lively.
7              THE COURT:  Good afternoon, Ms. Bender.
8              Do I have counsel who will be addressing the Court for
9    Case and Koslow.
10             MR. BREED:  Yes, you do, your Honor.  Maxwell Breed of
11   Pryor Cashman LLP for Katherine Case and Breanna Butler Koslow.
12             THE COURT:  Good afternoon, Mr. Breed.
13             I recognize that I have a number of other -- would the
14   parties please mute.
15             I recognize that I have a number of other counsel on
16   the Teams.  I am not going to call on other counsel to identify
17   themselves, and as I indicated in my order, this hearing is
18   limited to the motion to compel the production of documents
19   from Case and Koslow.  So I will hear from the Lively parties
20   and then from counsel for Case and Koslow.
21             Ms. Bender, I will hear first from you or your
22   colleague with respect to your motion to compel, and then I
23   will hear from Mr. Breed.  You are free to address any issues
24   that you would like to address with respect to the motion to
25   compel.
```

p6onlivo

1      I will tell you that I am particularly interested in

2  the following:

3      First of all, it is not clear to me from the

4  correspondence what, if any, adjustments to the requests the

5  Lively parties have made in order to address the burdensomeness

6  and other arguments made by Case and Koslow.

7      Second, it was not clear to me from the motion whether

8  there is an agreement on the part of the Lively parties to pay

9  a portion of the costs of production or whether there is

10  agreement with respect to the means for searching for

11  responsive documents.

12      Third, I think there is an issue with respect to the

13  time period covered by the requests.

14      And, fourth, there is issue, at least in my mind, with

15  respect to the time period within which Case and Koslow are to

16  produce responsive documents.

17      So please make sure you are addressing at least those

18  issue, but feel free to address any other issues.

19      I will now hear from you.

20      MS. BENDER:  Thank you, your Honor.  Kristin Bender

21  again, for plaintiff Blake Lively.

22      Ms. Lively moves to compel compliance with document

23  subpoenas issued in March to Ms. Case and Ms. Koslow, two

24  individuals who worked or work at The Agency Group a named

25  defendant in Ms. Lively's Case.  These individuals are

p6onlivo

1    unequivocally known to have documents and communications

2    relevant to Ms. Lively's core retaliation claims.

3         Not only that, but the information that they possess

4    is so crucial that their own words and participation are

5    repeated verbatim in Ms. Lively's complaint in discussing HR

6    complaints made against Mr. Baldoni and in demonstrating close

7    collaboration with Mr. Wallace, the Wayfarer parties' digital

8    fixer.

9         while we engaged in extensive good-faith conferrals to

10   obtain this information quickly and collaboratively those

11   efforts failed and as a result the initial 13 requests as to

12   each of Case and Koslow stand.  Those requests are narrowly

13   targeted to obtain necessary that either cannot or has not been

14   obtained from the Wayfarer parties even a week away from the

15   parties' deadline for substantial completion of document

16   production.

17        Now, as this Court has recognized, stonewalling

18   opposing counsel does not provide a loophole to discovery, and

19   for reasons that we will be prepared to discuss, the Court

20   should reject any attempt at further delay or artificially

21   narrowing the subpoenas.

22        So with respect to relevance, which is a really short

23   part of my argument, because it is so obvious, I just want to

24   touch on the fact that we anticipate in response to these

25   subpoenas receiving discovery that demonstrates Ms. Case and

p6onlivo

 1    Ms. Koslow's participation in and facilitation of the digital

 2    campaign that lies at heart of Ms. Lively's claims.  We

 3    indicated those materials in footnote 2 of our opening brief at

 4    docket 321, as well as in more detail at our reply at docket

 5    263 in the attached exhibit.

 6            With respect to the time frame which your Honor has

 7    expressly referenced, it is our position that the requests are

 8    narrowly tailored and proportional to the needed discovery in

 9    the case.

10            THE COURT:  Well, Ms. Bender in footnote 4 you state

11    that your client is amenable to a time period of July 1, 2024,

12    to March 3, 2025.

13            Is there any reason why your client would not today be

14    amenable to the same thing that she said on June 12?

15            MS. BENDER:  No, your Honor.

16            On the basis of counsel for Case and Koslow's

17    good-faith representations that their client would have no

18    responsive documents prior to that time period, we are willing

19    to have the time period start as indicated.

20            THE COURT:  Okay.  Now, with respect to the substance

21    of the requests, it does seem to me that there is at least a

22    dispute between the parties whether, first of all, whether the

23    requests should be narrowed to exclude some of the individuals

24    that have been identified and whether they should include

25    documents that were copied on the Wayfarer parties.

p6onlivo

```
1        I have one of the subpoenas in front of me.  Why don't
2    you tell me whether you are willing to narrow your request in
3    any respect.  I have it in front of me.  I've got requests No.
4    1 through 13 in front of me.
5        MS. BENDER:  Sure, your Honor.
6        So the core of what we want are materials from
7    Ms. Case and Koslow related to the digital campaign content
8    creators and analogous efforts, regardless as to who else was
9    involved in those documents and communications.
10       Now what we have done in our requests has largely
11   topically limited them to exactly that with respect to asking
12   for documents as to the actions, the film, and the digital
13   campaign.
14       We have also identified individuals in those requests
15   that Case and Koslow would have no reason to be communicating
16   with but for the engagement through The Agency Group to provide
17   the alleged services in connection with the digital campaign.
18   So for this reason, we do maintain that the requests as they're
19   stated initially are appropriate.
20       Now, with respect to the requests as modified, I would
21   like to touch on two points to that.
22       First is that there really was no agreement --
23       THE COURT:  Maybe you can answer my question.  It
24   sounds like you are defending the requests as they're drafted.
25   My question was whether you are today asking for anything less
```

p6onlivo

```
1    than the requests as drafted, because sometimes it is the case

2    that parties, when they move to compel, recognize that what

3    they asked for initially is not their strongest argument for

4    what they should get at the end of the day.

5              So tell me whether you are willing to agree to push

6    for something narrower than what you have asked for.

7              MS. BENDER:  Your Honor, while we do maintain that

8    they are appropriate, we are willing to live with respect to

9    requests No. 1, 5, 6, and 7.

10             THE COURT:  Meaning that those are the only requests

11   that you are going to push right now?

12             Is that correct?

13             MS. BENDER:  That's right, your Honor.  I think our

14   position would be that the communications with any of the

15   individuals in the other requests would be encompassed in

16   those.

17             THE COURT:  Okay.

18             MS. BENDER:  So with respect to the assertions by

19   counsel for Case and Koslow that there was an agreement, there

20   really wasn't, and our position is that this is evident in

21   Exhibit C to our opening letter motion.  Our proposal at the

22   outset was that we could narrow the scope in return for

23   assurances --

24             THE COURT:  Let me interrupt you for a moment.  I am

25   not particularly interested right now in whether there was a
```

p6onlivo

```
1     prior agreement.  Maybe Mr. Breed can convince me that that is
2     relevant, but I don't see that as being particularly relevant
3     except insofar as it may reflect what it is that you really
4     need or reflect an understanding with respect to burden.
5              What you are going to need to do is convince me under
6     Rule 26 that what you are asking for is what you should get and
7     what Mr. Breed is suggesting I should not accept.
8              So let's put aside the prior communications and just
9     argue it to me as if there were not those prior communications.
10             MS. BENDER:  Sure, your Honor.
11             So with respect to the issue of burden, while the
12    Court may consider alternate sources of discovery in assessing
13    the burden on third parties there is no requirement that
14    parties losses be exhausted before turning to third parties.
15    Multiple other third parties in this case have acknowledged
16    this fundamental principle, having made productions that
17    include communications with parties in the case.
18             Regardless, it's not as though we are short-circuiting
19    the party discovery in favor of seeking it exclusively from
20    Ms. Case and Koslow.  Here we have propounded requests for
21    production to the Wayfarer parties on these subpoena topics,
22    including the film, the marketing, the digital campaign, and
23    the actions.  That's evidenced in the requests for production
24    that are on this Court's docket at docket 202.
25             This is important because the case law is clear that
```

p6onlivo

Ms. Lively can permissibly seek even overlapping and sometimes

potentially duplicative discovery on these subjects from the

Wayfarer parties while also seeking it from Ms. Case and

Ms. Koslow, and we provided authority for that on page 3 of our

letter motion at docket 363.

Even if Ms. Lively were required in the ordinary case

to exhaust party discovery before turning to third parties, we

really are long past the point of that for it to be workable

here in this expedited case.

The Wayfarer parties have produced nothing with Case

and Koslow and virtually no communications as compared to

documented at all.  That, again, is despite the fact that

substantial completion of document production for the parties

concluded in exactly a week.

I would also submit that exhaustion as to party

discovery is really not well suited to this context, where the

third parties are known to have relevant communications.  And

the production of even information exclusively within the

control of Case and Koslow has been substantially delayed given

their position that they should not be required to make more

than a single production even for those materials.

Ms. Case and Ms. Koslow do indicate in their

opposition in their first footnote, they take the position that

Ms. Lively could circle back to the vast majority of the

requests once party discovery is closed.  But this really

p6onlivo

```
 1    misses the point from our perspective as to the value of this
 2    third-party discovery, and would deprive Ms. Lively of really
 3    any ability to use materials received from Ms. Case and
 4    Ms. Koslow to further her own discovery or use the information
 5    in advance of dispositive briefing or trial.
 6              We did --
 7              THE COURT:  Counsel, have you noticed the deposition
 8    of Ms. Case and Ms. Koslow?
 9              MS. BENDER:  We have not, your Honor.  The parties
10    have a plan to meet and confer tomorrow to set a deposition
11    schedule for individuals who may be deposed.
12              THE COURT:  And refresh me what your time period is
13    for the completion of depositions.
14              When does that close?
15              MS. BENDER:  That closes at the end of fact discovery,
16    currently set for August 14.
17              THE COURT:  Okay.
18              MS. BENDER:  And there have been several other noticed
19    depositions, including on July 9, July 17 and others.
20              THE COURT:  Okay.  You may proceed.
21              MS. BENDER:  With respect to other calculations as to
22    burden, again, as outlined in Exhibit C, we really have made
23    multiple attempts to lessen the burden, in April proposing to
24    narrow the requests, although again the caveat there was no
25    agreement; in May offering to foot the cost.  And really in the
```

p6onlivo

1  course of negotiations we even offered to relieve Ms. Case and

2  Ms. Koslow of individual obligations to produce information

3  from their personal devices, so long as The Agency Group agreed

4  to produce the materials on their behalves.  That was an offer

5  that counsel for the Wayfarer parties, despite having attended

6  the conferral process to that point, declined to accept.

7       So we really have no other resort except to receive

8  these materials from Ms. Case and Ms. Koslow, and it's really

9  an important point because I think the vast majority, given

10  what we know, the vast majority of communications conducted by

11  crisis and PR individuals is on personal devices, typically

12  through group communications.

13       I would like to just briefly address the point as to

14  why requests that would be modified in any way to exclude the

15  communications would be problematic.

16       So the modifications that were kind of addressed and

17  proposed back in April would be problematic to exclude group

18  messages.  That was never the intent of the proposals.

19       The fact that there is a dispute only underscores the

20  lack of agreement.  The proposals were driven by unspecific

21  concerns raised by counsel for Case and Koslow as to the

22  overbreadth of the case.

23       Ms. Lively had offered to change her request for

24  communications from with and concerning certain individuals

25  just to concerning them.  So, in other words, the requests were

p6onlivo

1    proposed to be modified to exclude certain one-on-one

2    communications with specified individuals.

3            It was never our intent to suggest that the presence

4    of any of these specific individuals would somehow serve as

5    immunity from production.  That construction would be extremely

6    problematic in the context of this case, where it would really

7    inoculate from production what we think will be the vast

8    majority of the communications, given that crisis and PR

9    individuals in this case, including Case, Koslow, and the

10   Wayfarer parties have operated predominantly through group

11   communications from what we have seen so far.

12           THE COURT:  So let me interrupt you again for a

13   moment.

14           Requests 1, 5, 6, and 7, do not contain the language

15   "with or concerning."  They just contain the language

16   "concerning."

17           I take it it is your view that those requests as

18   drafted would encompass, for example, looking at request No. 1,

19   all documents and communications concerning the subjects

20   mentioned there, including documents and communications that

21   were shared with any of the Wayfarer parties, including the

22   group communications.

23           Am I understanding you correctly?

24           MS. BENDER:  That's exactly right.

25           THE COURT:  Okay.

p6onlivo

|    |                                                                         |
|----|-------------------------------------------------------------------------|
| 1  | MS. BENDER:  I am happy to answer further questions.                     |
| 2  | Otherwise, I think our main points have been made.                       |
| 3  | THE COURT:  I don't think you have answered all of the                   |
| 4  | questions.                                                               |
| 5  | One of the questions had to do with the cost-sharing                     |
| 6  | offer and with the means by which the documents were to be               |
| 7  | searched and produced.  I understood from the letters that               |
| 8  | there was some back and forth with respect to the Lively                 |
| 9  | parties perhaps assuming some of the costs.  Perhaps there was           |
| 10 | an issue with respect to whether the Lively parties would have           |
| 11 | their vendor do the search.                                             |
| 12 | There was I think a request by Case and Koslow that                      |
| 13 | the individuals would do a search themselves.  I don't know if           |
| 14 | there is an issue with respect to that, and I don't know                 |
| 15 | whether there is still an outstanding offer from the Lively             |
| 16 | parties to pay the costs, or if there's not an offer, why I             |
| 17 | shouldn't impose on the Lively parties an obligation to pay the          |
| 18 | cost.                                                                    |
| 19 | MS. BENDER:  Understood, your Honor.                                     |
| 20 | So that pending offer if Court feels that it is                          |
| 21 | appropriate to include some kind of cost sharing in order to             |
| 22 | further reduce the burden on the third parties, we are amenable          |
| 23 | to that.                                                                 |
| 24 | THE COURT:  Is there any issue I need to address with                    |
| 25 | respect to the means of searching?                                       |

p6onlivo

1          MS. BENDER:  No, your Honor.  I think the parties had

2     a mutual understanding as to what that would look like,

3     including search terms.

4          THE COURT:  Okay.

5          You originally asked for an order that I compel the

6     production of documents I think by June 27.  That date is

7     rapidly approaching.  I am not going to order production by

8     June 27.

9          What is your request now?

10         MS. BENDER:  Well, your Honor, understanding that's

11    three days away, we appreciate that.  We would ask that the

12    documents be produced essentially in the next ten days.  We

13    would need time to review those documents in response of a

14    deposition scheduled currently for July 9.  With the

15    intervening holiday, we would prefer for it to be early I would

16    say next week, but no later than the 7th of July.

17         THE COURT:  Okay.

18         I will give you time at the conclusion to respond, if

19    necessary, to argument made by counsel for Case and Koslow.

20         Let me now hear from you, Mr. Breed.

21         MR. BREED:  Thank you, your Honor.  Maxwell Breed of

22    Pryor Cashman LLP, again, for Ms. Case and Ms. Butler Koslow.

23         I am going to modulate my approach a little bit based

24    on what was just said for a few different reasons.  I find it

25    interesting that at the close of counsel's argument she

p6onlivo

 1    acknowledged that there were mutual understandings reached,

 2    which kind of cuts against the whole point that there were not

 3    understandings or there were not agreements.  But laying that

 4    aside, I do think that there are some misconceptions floating

 5    around about the role that Ms. Case and Ms. Butler Koslow

 6    played here.

 7        Counsel mentioned at the start of her presentation

 8    that our clients' communications are in the complaint, featured

 9    in the complaint.  That is actually not so.  They are passive

10    participants on some group texts and e-mails.  There's no word

11    by Ms. Case or Ms. Butler Koslow at all.  That's contrary to

12    what counsel just said.

13        There is another misconception here, which is about

14    the nature of what The Agency Group PR even does.  They are an

15    earned media PR company.  Their role in any sort of digital

16    manipulation conspiracy that's being alleged really wouldn't be

17    what is claimed.

18        So this idea that our clients would, you know, might

19    even have communications, you know, concerning these things,

20    you know, is fraught at best, and it certainly doesn't rise to

21    the level of burden proving, you know, that needs to be

22    established in order to impose these onerous production burdens

23    on nonparty witnesses.

24        And that's what Ms. Butler Koslow and Ms. Case are

25    here.  They are nonparties who are employees of a party.  That

p6onlivo

```
1
```
party has of course been subject to the Court's jurisdiction

```
2
```
since the onset of this case and of course must produce

```
3
```
discovery here.  That's why for the past several months over

```
4
```
the course of several meet-and-confers there have been

```
5
```
understandings reached with respect to necessary limitations of

```
6
```
the requests in these subpoenas.

```
7
```
      And that counsel today would give up most of what's

```
8
```
sought in favor of just five categories is also telling that

```
9
```
the subpoenas as propounded were overbroad and unduly

```
10
```
burdensome.  That counsel would concede that cost-shifting

```
11
```
would be appropriate again concedes the overbreadth and unduly

```
12
```
burdensome nature of the subpoenas as propounded.

```
13
```
      Your Honor had asked that we address where in the

```
14
```
record agreements are reflected.

```
15
```
      THE COURT:  No, Mr. Breed.  What I would like you to

```
16
```
do -- there is an echo.  Mr. Breed, it is undoubtedly caused by

```
17
```
your mechanism of communicating with the Court.  Maybe, as you

```
18
```
have, put yourself on mute.

```
19
```
      What I would like you to do is confine yourself to the

```
20
```
points that you made in your letter to the Court.  There you

```
21
```
made an argument with respect to time period, you made an

```
22
```
argument with respect to the issue of group texts, and you made

```
23
```
an argument with time period.

```
24
```
      Those are the issues that, as I understand it, are

```
25
```
before the Court.  So that's what I would like to hear from you

p6onlivo

1    on.

2         MR. BREED:  Thank you, your Honor.  I apologize for

3    any echo that my device is creating here.  I will have to talk

4    to my IT group about that.

5         One, to address time period, first, The Agency Group

6    PR was only retained August 2, 2024.  So before that date there

7    ought not be any communications in my client's possession that

8    would be discoverable or even in existence.

9         So we had offered July 1 forward.  That counsel would

10   now be seeking through the present is somewhat confusing,

11   because my understanding, our understanding is that discovery

12   has been limited, party discovery has been limited by the date

13   on which Ms. Lively filed her California complaint, which is

14   December 21.

15        So we would agree, and we would have agreed before

16   this was brought to the Court's attention, to July 1 through

17   December 21 of 2024 as far as a collection period and review

18   period goes.

19        THE COURT:  What do you have to say, Mr. Breed, about

20   the fact that the complaint alleges continuing violations?

21        MR. BREED:  First I would say with respect to

22   Ms. Case, that's simply not even conceivable because Ms. Case

23   has not been employed by The Agency Group PR since I believe

24   December 31.  Sometime in December she had left that employ.

25        With respect to Ms. Butler Koslow, I would say that

p6onlivo

1    that is also inconceivable, because, as I understand it, any

2    work on behalf of this client had ceased early in the fall if

3    not late summer of 2024.  So there ought not be anything

4    discoverable for the purposes that discovery is sought outside

5    of the period that I mentioned.

6            THE COURT:  Okay.  Let me hear from you --

7            MR. BREED:  I'm sorry, your Honor.  You wanted to hear

8    about the group texts as well, correct?

9            THE COURT:  Yes.  All of the points that you made in

10    your argument.

11            MR. BREED:  With respect to the group texts, it is an

12    interesting thing that counsel would maintain that there is a

13    need for dual even or even multiple production of those

14    materials, because, number one, they have a great many of these

15    materials.  They feature in the complaint.  And this goes to

16    the fact that they have since the fall of 2024 been in the

17    possession of Jenna Bell's mobile device or at least the data

18    from that mobile device.  So a lot of what they're saying that

19    they don't have or they desperately need has been in their

20    possession for almost a year.

21            You know, that said, this notion that nonparty

22    witnesses ought to double or triple or quadruple produce what

23    is already going to be produced by party participants is

24    unreasoned.  I don't see how that is proper discovery from

25    individuals who are, you know, who are not implicated in the

p6onlivo

```
 1    dispute, you know, when their employer or former employer is.
 2            Those materials ought to be produced.  Even in a
 3    rather striking footnote in the reply to our letter motion, it
 4    was the final footnote, there is an admission at footnote 2
 5    that the Wayfarer parties have made a voluminous production and
 6    that Lively counsel has not yet had an opportunity to search
 7    that production to confirm whether these group texts or other
 8    texts, you know, that would have been multiply produced have
 9    been produced.
10            So, you know, on the one hand they are saying that
11    they --
12            THE COURT:  Mr. Breed, as I understand it, the
13    Wayfarer parties refused to indicate the particular custodians
14    whose devices have been searched.
15            Do you have information that's different from that?
16            MR. BREED:  I don't, your Honor.  I only know the
17    information from the custodial interviews that we've conducted
18    with our clients.  And we stand ready, willing, and able to
19    collect and produce from their devices that were actually used
20    on behalf of TAG or themselves, you know, with respect to these
21    matters during the relevant time period.
22            THE COURT:  Okay.
23            MR. BREED:  So, your Honor, without going on too much
24    longer, I would, you know, just to sort of wrap things up, you
25    know, I would like to note that we -- as noted in my letter to
```

p6onlivo

1    your Honor, you know, we are prepared to collect and produce,

2    you know, within a reasonable time period, subject to the

3    limitations, you know, that were already understood and, you

4    know, perhaps not consummated in a final writing, but, you

5    know, certainly negotiated through an extensive meet-and-confer

6    process.

7         Those are summarized at paragraphs 10 and 11 of my

8    declaration, which is document 359, and that correspondingly

9    references e-mails that are attached to that declaration, you

10   know, that show the scoping agreements that we had reached.

11        So we would suggest that those be imposed upon the

12   narrowed requests that counsel has now presented for the five

13   or so individual requests within the subpoenas, and we would

14   also suggest that the cost-shifting that had been proposed and

15   agreed be imposed upon any agreement or order here.

16        And we would suggest also that the time period be

17   July 1 through December 21 of 2024.  And in the first instance

18   that there not be a need to collect or review group texts

19   involving excluded parties, which means parties and party

20   principals.  The reason for that being that simply the review

21   time is time that is allocable to our client, so there is a

22   cost.  You know, the more that we had to look at before we

23   produce, the greater the cost is.

24        But we are still somewhat confused why we are before

25   the Court today, because we had come to the last couple of

p6onlivo

| | |
|---|---|
| 1 | issues, and, you know, we could have resolved those issues in |
| 2 | the nine days it took the Lively parties to move the Court. |
| 3 | THE COURT:  Okay.  Can you refresh me with what you |
| 4 | said about when Ms. Case left TAG and your argument with |
| 5 | respect to the end of the time period for Butler Koslow? |
| 6 | MR. BREED:  Ms. Case has not been an employee of TAG |
| 7 | since December of 2024.  I am not sure of the exact date, but |
| 8 | I'm happy to submit a letter to your Honor confirming that and |
| 9 | making a specific representation. |
| 10 | THE COURT:  Okay.  What was it with respect to |
| 11 | Ms. Butler Koslow. |
| 12 | MR. BREED:  With respect to Ms. Butler Koslow what I |
| 13 | had mentioned is that the time on which TAG was working on this |
| 14 | account was far narrower than what has been mentioned |
| 15 | previously. |
| 16 | My understanding is that that time period runs, you |
| 17 | know, from August 2, the moment of their retention until |
| 18 | sometime in September.  You know, hence our offer to extend |
| 19 | matters to December 21, which represents the initiation of |
| 20 | litigation by Lively, which is, I think more importantly, my |
| 21 | understanding, our understanding is that that date has been an |
| 22 | agreed bounding date for other party productions.  So certainly |
| 23 | the nonparties ought not be subject to a broader period than |
| 24 | parties would have been subject. |
| 25 | And also, of course, you know, after that date I think |

p6onlivo

1    that the probability of there being, you know, probative or

2    discoverable evidence relating to matters that took place well

3    before then is limited decidedly.

4            THE COURT:  Thank you.  All right.

5            Ms. Bender, any responses?

6            MS. BENDER:  Yes, your Honor.  Very briefly.

7            So the end of the relevant time period in this case

8    has functionally been resolved by this Court's order last

9    Wednesday acknowledging that the smear campaign is alleged to

10   be ongoing, and therefore documents are relevant postdating the

11   December filing of the CRD complaint.

12           There is no agreement --

13           THE COURT:  But, Ms. Bender, do you have any

14   information that TAG was working for the Wayfarer parties

15   beyond the end of December of 2024?

16           MS. BENDER:  The one piece of information that I can

17   think of at present is Ms. Koslow at least appears on a

18   privileged log in connection with Skyline.  Skyline is an

19   entity that apparently was retained to post documents about the

20   Exhibit A by the Wayfarer parties.

21           Other than that, we don't either way, but I would

22   argue that, given that the allegations are that TAG was further

23   involved, there is no reason to arbitrarily limit it as to

24   these individuals if the defendants themselves are required to

25   postdate productions past December, especially since we have no

p6onlivo

1    guarantees that the documents that are going to be provided by

2    TAG are going to include any documents and communications from

3    Ms. Case and Ms. Koslow.

4          I do think that that is important, because it's not as

5    though the Wayfarer parties have provided voluminous

6    productions, and the lack of communications of Ms. Case and

7    Koslow are some kind of smoking gun that they are actually not

8    relevant to this dispute.  Rather, it is an indicator that

9    Ms. Case and Koslow really are the best source to be producing

10   these documents themselves in time for Ms. Lively to make

11   available any of the information in discovery.

12         I know counsel for Ms. Case and Koslow has said

13   multiple times that there not ought to be certain documents

14   that are going to be produced and may not exist.  But I think

15   we are entitled to test that assumption in the course of

16   third-party discovery, especially for the limited time period

17   and on the topics that we have requested.

18         I am happy to answer any other particular questions,

19   but those are the main points that I really wanted to hit on.

20         THE COURT:  All right.  I am going to take a brief

21   recess.  What that means is that I am putting you all on mute

22   and turning off the view function.  It also means that if you

23   speak and you are not muted, I will be able to hear you.  So my

24   recommendations to each of you is that you mute yourselves.

25   Please stay available because I expect to be back on shortly

p6onlivo

1    and to give you a ruling.

2              (Recess)

3              THE COURT:  Okay.  This is Judge Liman.  Do I have

4    counsel for the Wayfarer parties on?

5              MR. BREED:  Yes, your Honor.  I'm back.

6              THE COURT:  I'm prepared to rule.

7              The Court is granting the motion to compel as

8    modified.  I am compelling the production of documents

9    responsive to requests 1, 5, 6, and 7 of the subpoenas directed

10   to Case and Koslow.

11             For the avoidance of doubt, the production will

12   include responsive documents that involve communications with

13   Baldoni, Heath, Sarowitz, and Abel, but it will not be limited

14   to responsive documents including those individuals.  In other

15   words, I am rejecting the argument by Case and Koslow that the

16   requests should be modified so as to exclude the quote-unquote

17   Wayfarer parties.

18             With respect to time period, I'm finding that the time

19   period suggested by the Willkie Farr firm in their letter at

20   docket 321 of July 1, 2024, to March 3, 2025, is reasonable,

21   and the production shall be limited to documents within that

22   time period.  That time period is intended to encompass the

23   weeks before the engagement of TAG.

24             With respect to the argument that TAG's involvement

25   ended at the end of December, I've previously ruled that

p6onlivo

documents are responsive going beyond December, given the

allegation in the complaint that there's a continuing

violation.

         With respect to Mr. Breed's argument that the work

stopped in December, that should mean that there would be very

few documents after December, but plaintiffs certainly are

entitled to probe that representation.  The period until

March 3 is not so lengthy that it would be considered to be

burdensome.

         Production shall be made by 5:00 p.m. on July 7.

         To address the issues with respect to burden and given

particularly that the requests here are made to individuals and

not to a corporation, and given in particular the prior

comments made by the Lively parties, in order to address the

issue of burden, I am going to order that there be cost sharing

to the following extent:

         Ms. Lively will cover the costs identified in the

second bullet point of the document at Docket No. 359-9 at page

8 of 26.

         That document is an e-mail from Ms. Bender dated

May 20, 2025, but I am incorporating into my order the second

bullet point on page 8 of 26 of docket 359-9.

         I've considered all of the parties' arguments under

the relevant standards under Rule 26, assessing the likely

relevance of the documents to the case and the questions of

p6onlivo

1   burden.  What you have now are my conclusions.

2          Is there anything else I need to do today, Ms. Bender,

3   with respect to this request?

4          MS. BENDER:  No, your Honor.  Thank you.

5          THE COURT:  Mr. Breed?

6          MR. BREED:  No, your Honor.

7          Will there be a written record or will there be the

8   transcript standing as the order in this case?

9          THE COURT:  Does anybody require there to be a written

10  order from me?

11         MS. BENDER:  On behalf of Blake Lively, no.  Thank

12  you.

13         MR. BREED:  No, your Honor.

14         You were clear on the record here, but we will request

15  a transcript, and we will use that as the basis for it, and

16  we'll confer with Ms. Bender about getting the vendor on board

17  and making the production.

18         I will note just to clarify one thing for what it's

19  worth, neither of my clients have received deposition notices.

20  So there is, you know, how they could be implicated in the

21  conference call about party depositions is somewhat beyond me,

22  but, you know, it does speak to the vitality of their roles in

23  this.

24         THE COURT:  Okay.  We are concluded.

25         I want to thank the counsel for the presentations and

p6onlivo

1    for making themselves available on short order.

2            Have a good afternoon everybody.

3            MR. BREED:  Likewise, your Honor.  Thank you.

4            (Adjourned)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25