Case 1:24-cv-10049-LJL   Document 188   Filed 04/28/25   Page 1 of 4



Mitchell Schuster
*Partner*
Direct (212) 655-3549
Fax (212) 655-3535
ms@msf-law.com

<u>Via ECF</u>     April 28, 2025

Hon. Lewis J. Liman
United States District Court
500 Pearl Street, Room 1620
New York, NY 10007

Re:   *Lively v. Wayfarer Studios LLC et al.*, No. 1:24-cv-10049-LJL;
      rel. *Wayfarer Studios LLC et al. v. Lively et al.*, No. 1:25-cv-00449-LJL

Dear Judge Liman:

As counsel for Wayfarer Studios LLC, Justin Baldoni, Jamey Heath, Steve Sarowitz, It Ends With Us Movie LLC, Melissa Nathan, The Agency Group PR LLC, and Jennifer Abel (collectively, the "Wayfarer Parties"), we oppose Marvel Entertainment, LLC's ("Marvel") motion to quash the Wayfarer Parties' Subpoena and for a protective order. (Dkt. 186).

Contrary to its representation, Marvel did not meet and confer with us "in a good faith effort to resolve this dispute…." On April 2, 2025, Marvel sent the Wayfarer Parties a letter containing its objections to the Subpoena, which are the same objections set forth in its recent letter-motion. On April 7, 2025, my office met and conferred with Marvel's counsel via telephone about the objections, and although we attempted in good faith to address Marvel's purported concerns about confidentiality and relevancy, Marvel's counsel interrupted us, refusing to engage in that discussion. Instead, Marvel's counsel interjected and stated he merely wanted to know what documents the Wayfarer Parties "really" needed, regardless of the Subpoena's demand for all documents concerning: (a) the creation, development, modification or portrayal of Ryan Reynolds' "Nicepool" character from *Deadpool & Wolverine*; and (b) Justin Baldoni. For the sake of clarity, "Nicepool" is a defamatory and mocking portrayal of Baldoni, as alleged in the Wayfarer Parties' pleading, and is used in the film *Deadpool & Wolverine* to mock events that allegedly took place between Baldoni and Lively on the set of the film *In Ends With Us*; those same events that are the subject of this lawsuit. We responded that we wanted Marvel to search for and produce documents concerning Reynolds' (a writer and the star of the film) participation in the development of "Nicepool" and the communications related to Baldoni, including the character's portrayal of Baldoni. Marvel's counsel agreed to discuss that limited subset of requested documents with Marvel, and the telephone call ended. However, the next communication that the Wayfarer Parties received from Marvel's counsel was an email stating that Marvel would be moving to quash the Subpoena and then its subsequent letter-motion. As far as the Wayfarer Parties know, Marvel never searched for the narrowed scope of documents or even ascertained whether there are a handful of documents easily accessible to Marvel that can satisfy the Subpoena. Marvel's motion should be

denied for its failure to meaningfully meet and confer prior to seeking judicial intervention. Even worse, Marvel's motion neglects to advise the Court of the Wayfarer Parties' proposal to narrow the scope of the Subpoena (as set forth above). Instead, Marvel inaccurately represents to the Court that the Wayfarer Parties are seeking "all documents about a character in a major film, and all documents concerning an actor…." (Dkt. 186, p. 3).

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering . . . whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "The scope of relevance is broad." *Aryton Cap. LLC v. Bitdeer Tech. Group*, No. 24-cv-5160, 2025 WL 743761 (S.D.N.Y. Mar. 7, 2025) (Liman, J.) (granting motion to compel production of documents). *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350–51 (1978) (defining relevance under Rule 26 to "encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case"). Marvel contends that the documents concerning "Nicepool" are irrelevant because, *according to Marvel*, the character is purportedly an expression of an opinion and not one of fact.

To begin with, whether "Nicepool" is an expression of opinion or not, while perhaps relevant on a motion for summary judgment, is entirely irrelevant to determining the propriety of the Wayfarer Parties' subpoena. Indeed, even if the "Nicepool" character were found to be an expression of pure opinion and, therefore, inactionable in its own right, information concerning "Nicepool" and communications exchanged in relation thereto would still clearly be relevant to, among other things, the question of Reynolds' alleged malice. That is especially true given that, on a big-budget superhero movie, Reynolds insisted on the ill-fitting and belated addition of "Nicepool" (i.e., *Baldoni*) to the script during the period at issue during this litigation, and in fact, credited it in the film *It Ends With Us*. Importantly, the information sought could establish malice not only in connection with this portrayal but also in connection with other defamatory statements Reynolds made at or about the same time, over the same events, that caused the Wayfarer Parties substantial harm. And Marvel's argument does not apply to the request for information concerning Baldoni.

Even if it were appropriate to consider Marvel's position as to whether the character is an expression of opinion, under California law, a statement of opinion is actionable if implicitly based on undisclosed facts. *Weller v. American Broadcasting Companies, Inc.*, 232 Cal. App. 3d 991, 999 (1991). The court applies a "totality of the circumstances" test in which the court reviews the "language of the statement" and "the context in which the statement was made[.]" *Baker v. L.A. Herald Examiner*, 42 Cal. 3d 254, 260 - 61 (1986). Under New York law, courts generally consider "(1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true …; and (3) whether . . . the full context of the communication in which the statement appears [is] such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact." *Brian v. Richardson*, 87 N.Y.2d 46, 51 (1995) (quotations and citations omitted). The pertinent facts "are most appropriately developed by discovery and presented either by way of a summary judgment motion or at trial." *Penn Group, LLC v. Slater*, No. 07-cv-729, 2007 WL 2020099, at *6 (S.D.N.Y. June 13, 2007). Indeed, the case that Marvel cites for the unsupported proposition that "Nicepool" is "clearly a joke" and not

"grounded in any factual basis" was decided after "limited *discovery* on the issues raised in the … motion for *summary judgment*." *See Moore v. Cohen*, 548 F. Supp. 3d 330, 345 (S.D.N.Y. 2021).

Marvel further argues that the Wayfarer Parties "have other, less burdensome means through which they can obtain relevant documents (if any exists) from the parties in the action, such as a request for admission or a party deposition." First, Marvel does not explain how the Subpoena is unduly burdensome, especially given the Wayfarer Parties' agreement to narrow the scope thereof, and Marvel does not claim it will incur significant expense to locate and produce the documents. Second, compliance with the Subpoena may moot the need for further discovery concerning "Nicepool." Third, the suggestion by Marvel that the Wayfarer Parties should obtain documents and information concerning "Nicepool" from the parties hereto (including from Ryan Reynolds himself) is insincere because Marvel also seeks a protective order "prohibiting the disclosure of Marvel's confidential documents by any party or other nonparty in this action." Marvel does *not* merely seek that relief in the alternative to quashing the Subpoena. Thus, Marvel simultaneously contends that (1) the Wayfarer Parties should seek "Nicepool" documents from the parties hereto and (2) the Court should not permit any party (or nonparty) to disclose Marvel's documents.

Marvel further argues that the "Nicepool" documents "are particularly sensitive because they relate to the development of a character in an ongoing movie franchise." Yet, as Marvel itself recognizes, this Court has entered a Protective Order that provides for ample protection of any proprietary information. Marvel notes that whether and how unspecified "storylines, plots and characters" will appear in upcoming, unreleased projects "is the subject of much public interest, and this information is closely guarded by Marvel." However, the Subpoena only seeks documents concerning "Nicepool" from one movie that has already been released – *Deadpool and Wolverine*. In fact, the character does not appear in any other film in Marvel's franchise, and will not appear in any future films, since it was killed in its first appearance. Importantly, the case cited by Marvel—purported to establish that movie scripts constitute confidential information—involved scripts for *unreleased* films, which, in that case, were subject to a preliminary injunction (along with other proprietary materials such as budgets and medical forms) solely to prevent their improper use by a former employee who had stolen company documents for personal gain.

Lastly, Marvel requests, in the alternative to the primary relief sought, that the Court stay discovery from Marvel pending a determination of Ryan Reynolds' motion to dismiss. However, Reynolds himself has neither sought nor obtained a stay of discovery in connection with his dismissal motion. Additionally, and as detailed in the Wayfarer Parties' opposition to Reynolds' motion (Dkt. 160), there are not substantial grounds for dismissal of the claims against him. And in the unlikely event claims against Reynolds are dismissed with prejudice, the information sought in the Subpoenas remains relevant as to the suit against Lively, as the Wayfarer Parties contend Reynolds was acting as an agent of Lively.

The Wayfarer Parties have proposed, in good faith and to avoid any undue burden upon Marvel, to narrow the Subpoena to documents concerning Reynolds' participation in the development of "Nicepool" and communications concerning Baldoni. Marvel will not be prejudiced if the Court declines to stay compliance with the Subpoena because the film has already been released, and any non-public documents can be marked "confidential" pursuant to the Protective Order.

<div align="right">
Hon. Lewis J. Liman<br>
Page 4<br>
April 28, 2025
</div>

We respectfully request that the Court deny Marvel's motion and compel Marvel to comply with the Subpoena.

                          Respectfully submitted,

                          */s/ Mitchell Schuster*

                          MEISTER SEELIG & FEIN PLLC
                          Mitchell Schuster
                          Kevin Fritz
                          125 Park Avenue, 7th Floor
                          New York, NY 10017
                          Tel: (212) 655-3500
                          Email: ms@msf-law.com
                                        kaf@msf-law.com

                          LINER FREEDMAN TAITELMAN + COOLEY, LLP
                          Bryan J. Freedman (*pro hac vice*)
                          Miles M. Cooley (*pro hac vice*)
                          Theresa M Troupson (*pro hac vice*)
                          Summer Benson (*pro hac vice*)
                          Jason Sunshine
                          1801 Century Park West, 5th Floor
                          Los Angeles, CA 90067
                          Tel: (310) 201-0005
                          Email: bfreedman@lftcllp.com
                                        mcooley@lftcllp.com
                                        ttroupson@lftcllp.com
                                        sbenson@lftcllp.com
                                        jsunshine@lftcllp.com

cc: all counsel of record (via ECF)