PA3ELIVC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    BLAKE LIVELY,

4                    Plaintiff,

5              v.                          24 Civ. 10049 (LJL)

6    WAYFARER STUDIOS LLC, ET AL.,
                                           Conference
7
                    Defendants.
8
     ------------------------------x
9                                          New York, N.Y.
                                           October 3, 2025
10                                         2:00 p.m.

11   Before:

12                      HON. LEWIS J. LIMAN,

13                                         District Judge

14                        APPEARANCES

15   WILLKIE FARR & GALLAGHER
          Attorney for Plaintiff Blake Lively
16   BY:  AARON E. NATHAN

17   MEISTER SEELIG & FEIN LLP
          Attorney for Defendants Wayfarer Studios LLC, Justin
18        Baldoni, Jamey Heath, Steve Sarowitz, It Ends With Us
          Movie LLC, Melissa Nathan, Agency Group LLC, and Jennifer
19        Abel
     BY:  KEVIN A. FRITZ

20
     JACKSON WALKER LLP
21        Attorney for Defendant Jed Wallace
     BY:  CHARLES L. BABCOCK, IV

22
     QUINN EMANUEL URQUHART & SULLIVAN, LLP
23        Attorney for Third-Party Defendant Jonesworks, LLC, and
          Stephanie Jones
24   BY:  MORGAN L. ANASTASIO

25

PA3ELIVC

1          (Case called)

2          THE COURT:  Matt, there's some echo from you.  We'll

3    see whether it's true with respect to the others.

4          Do counsel hear an echo from me?

5          MR. NATHAN:  No, your Honor.

6          THE COURT:  Okay.  Let me hear who's appearing for

7    Lively.

8          MR. NATHAN:  Good afternoon, your Honor.

9          Aaron Nathan, Willkie Farr & Gallagher, for plaintiff,

10   Blake Lively.

11         THE COURT:  Good afternoon, Mr. Nathan.

12         And for the Wayfarer parties?

13         MR. FRITZ:  Good afternoon, your Honor.

14         Kevin Fritz from Meister Seelig & Fein.

15         THE COURT:  Good afternoon, Mr. Fritz.

16         For Mr. Wallace I see Mr. Babcock.

17         Are you appearing for Mr. Wallace?

18         MR. BABCOCK:  I am, your Honor.

19         THE COURT:  Okay.  Good afternoon.

20         MR. BABCOCK:  Good afternoon.

21         THE COURT:  Are there any other counsel who wish to

22   make their appearance noted for the record?

23         MS. ANASTASIO:  Yes, your Honor.  Thank you.

24         Morgan Anastasio, with Quinn Emanuel, for Jonesworks

25   and Stephanie Jones.

PA3ELIVC

1          THE COURT:  Good afternoon.

2          Okay.  So, I have several letter motions in front of

3    me.  I have the Willkie Farr letter motion for an order denying

4    the motion for judgment on the pleadings or, in the

5    alternative, for an extension of time.  I also have the Lively

6    motion --

7          Will the parties please put their phones on mute?

8          Let's see if this is better for the echo.

9          Matt, I think you're the one causing the echo.

10         Let's see if this is better now.  Is this better?

11         Let me start again.  I have the Lively motion for an

12   order denying the motion for judgment on the pleadings as

13   untimely or, in the alternative, for an extension of time, I

14   also have a Lively motion with respect to the request for

15   admission, I have the Wayfarer papers opposing Ms. Lively's

16   request and also asking for a change in the schedule with

17   respect to summary judgment briefing, and I have Mr. Wallace's

18   motion for an extension of time to file rebuttal expert

19   reports.  I don't have an opposition to that, but the

20   opposition has been noted in Mr. Babcock' papers.  I'm prepared

21   to hear argument from the parties on all of those questions,

22   all of those issues.

23         I'll hear first from Lively and the Wayfarer parties

24   with respect to their respective motions, and then I'll hear

25   from Mr. Babcock and counsel for Lively with respect to the

PA3ELIVC

| | |
|---|---|
| 1 | issues that are distinctive to Mr. Wallace. |
| 2 | Mr. Nathan, why don't I hear from you first and then |
| 3 | I'll hear from Mr. Fritz. |
| 4 | MR. NATHAN:  Thank you, your Honor. |
| 5 | As we laid out in our papers, at this stage in the |
| 6 | case, Ms. Lively's claims should be and ultimately will be, one |
| 7 | way or another, resolved based on the evidence and not based on |
| 8 | what she was able to allege in February of 2025 before she had |
| 9 | taken any discovery.  The Wayfarer defendants' letters suggest |
| 10 | that they think by timing their motion for judgment on the |
| 11 | pleadings the way they have, they can avoid having to deal with |
| 12 | the actual evidence obtained in discovery.  It just doesn't |
| 13 | work that way. |
| 14 | Consider what would happen if the briefing on this |
| 15 | motion proceeded the way that the Wayfarer defendants would |
| 16 | like.  And we've laid this out.  Ms. Lively would respond to |
| 17 | the legal arguments in the motion.  In the alternative, she |
| 18 | would also propose an amendment to the complaint that would |
| 19 | cure any defects that the Court identified in the complaint at |
| 20 | this stage.  The Rule 15 standard would plainly be satisfied |
| 21 | when a plaintiff seeks leave to amend the complaint to |
| 22 | incorporate evidence obtained through discovery that she didn't |
| 23 | have access to before.  That's the normal course when that |
| 24 | situation arises.  It rarely does at this stage of the case |
| 25 | because, for the most part, I don't think courts or parties |

PA3ELIVC

1    find a motion directed at the sufficiency of the allegations in

2    the pleading useful in the circumstances that we're dealing

3    with here.

4           Ms. Lively has been engaged in discovery for months,

5    she's obtained documentary and testimonial evidence relevant to

6    all of her claims.  And even if any of the legal arguments in

7    the motion had any merit with respect to the complaint, the

8    question at the end of the day would be whether a plaintiff's

9    claim in the amendment incorporating that evidence would be

10   futile.  And the Court is going to conduct almost exactly the

11   same inquiry at the summary judgment stage, that is assuming

12   that the Wayfarer departments renew these arguments then, which

13   we can all expect that they would.

14          Nobody is arguing that the Wayfarer defendants

15   shouldn't have a chance to raise these arguments.  Our point is

16   only that the Court should deal with them once, not twice, and

17   then at this point the appropriate time is summary judgment.

18          With respect to the delay standard under Rule 12(c),

19   the parties have enough to do just to be ready for a March 9

20   trial date at this point.  As we speak, all of the individual

21   defendants have been or will be deposed between September 25

22   and October 10.  This motion for judgment on the pleadings was

23   filed on September 26.  One of the defendants was being deposed

24   that day, another was deposed Monday and Tuesday of this week,

25   one is being deposed as we speak, and then literally every

PA3ELIVC

1    business day next week will be occupied with a deposition of

2    one of the individual defendants.

3        The Wayfarer parties obviously knew that when they

4    filed this motion.  We can address that further if and when we

5    need to turn to Ms. Lively's alternative extension request.

6        Fundamentally, our point is that the motion raises

7    fact-bound challenges to the sufficiency of the pleadings, but

8    those are already overtaken by evidence obtained in discovery.

9    I don't understand the Wayfarer defendants to be arguing that

10    their motion presents pure questions of law that could not be

11    affected by an amendment to the pleadings.  They seem to argue,

12    instead, that the amendment standard is irrelevant because

13    Ms. Lively wouldn't be entitled to one, but that isn't true for

14    the reasons that I've just alluded to earlier.

15        As for the suggestion that they made in their

16    opposition, that Ms. Lively somehow should have amended her

17    complaint earlier if what she says now is true, there's no rule

18    that says a plaintiff has to continually update their complaint

19    as they learn new facts from discovery.  I'm not aware of

20    authority that says so.  I'm sure we'll hear about it from the

21    other side if it exists.  But I would note that even if the

22    motion did assert pure questions of law, there would still be

23    no reason not to defer those questions a few weeks to the

24    summary judgment process where they can be raised and

25    adjudicated just the same.

PA3ELIVC

1          There's no motion for a stay of discovery pending.

2     None of the scheduling options that the Wayfarer defendants

3     have proposed are superior to having these issues resolved once

4     and only once with the full relevant record before the Court.

5          So, what we're asking for is just for this Court to

6     exercise its discretion to manage its docket to get this case

7     ready for trial in March by not adding unnecessary work to the

8     parties or to the Court's docket.  We think the right way to do

9     that is deny this motion without prejudice to renewal of any of

10    the arguments therein at summary judgment or later as

11    appropriate, and let the Wayfarer defendants make whatever

12    arguments they want to make, but based on the record as it

13    stands after discovery.

14          THE COURT:  Do you want to --

15          MR. NATHAN:  I'm happy to address the --

16          Excuse me.  Yes.

17          THE COURT:  Do you want to address the request from

18    the Wayfarer parties with respect to summary judgment and also

19    your request with respect to the request for admission?

20          MR. NATHAN:  Certainly, your Honor.

21          With respect to summary judgment, our principal

22    concern here is making sure that we do not sacrifice the trial

23    date for the sake of fitting in motions that the Wayfarer

24    parties could have filed months ago but waited until now.  We

25    think the requested extension on the summary judgment schedule

PA3ELIVC

1  appears to be designed to accommodate the consideration and

2  decision of this motion, which, as we've explained, we think is

3  just duplicative of arguments that could be raised at the

4  summary judgment stage.

5          As we said in our letter, we're not opposed to a

6  reasonable extension to ensure that the Wayfarer parties have

7  an adequate opportunity to depose our experts once the expert

8  opinions have been disclosed, and incorporate the result of

9  those depositions into whatever summary judgment motion they

10  want to file, but the schedule that the Wayfarer parties have

11  proposed would lead to summary judgment briefs being fully

12  submitted in early January, only a couple weeks from the

13  deadline to file a proposed joint pretrial order.  The Court

14  initially asked the parties to propose a schedule, and the

15  Court ultimately entered a schedule with an eye towards

16  managing this case to a March 9 trial date.  As things stands,

17  that goal is still in sight, but we can't really afford

18  unnecessary delay.  And we think that the extensions that the

19  Wayfarer defendants have proposed sort of are reverse

20  engineered to accommodate a Rule 12(c) motion that simply

21  doesn't need to be adjudicated on the schedule that they're

22  asking for.

23          And we think instead, the most efficient course here

24  is, yes, to perhaps make some small modifications to the

25  conclusion of the fact and echo of the expert discovery

PA3ELIVC

1    schedule and adjust the summary judgment deadline accordingly.

2    But beyond that, any extensions to the summary judgment

3    deadline are going to start to threaten the trial date.  And

4    from our perspective, that's not an acceptable result.

5            With respect to the --

6            THE COURT:  Can you refresh me, Mr. Nathan?  What is

7    the current schedule for summary judgment and what is the

8    current schedule with respect to expert discovery?

9            MR. NATHAN:  As things stand, summary judgment briefs

10   are due November 5, 2025, but I would note that is the original

11   date entered in the original case management plan and

12   scheduling order back in February 2025.

13           As the parties sought extensions and modifications to

14   the other deadlines in the case management schedule, no one,

15   including the Wayfarer defendants, ever addressed that

16   particular deadline, so no extension has been sought.  And as I

17   say, Ms. Lively is not opposed to a reasonable extension that

18   would still permit the case to be tried on schedule, but that,

19   again, is the overriding goal here.

20           The expert --

21           THE COURT:  What is the date for opposition briefs?

22           MR. NATHAN:  The date for opposition briefs, as things

23   stand, is the default 14-day period under the local rules.

24           So as things stand, the summary judgment briefs would

25   be fully submitted on Wednesday, November 26, which happens to

PA3ELIVC

1    be the Wednesday before Thanksgiving.  I think we proposed an

2    extension that would shift that back one week, and also

3    committed in our letter to make our experts available to be

4    deposed such that those deposition would be concluded, if the

5    Wayfarer parties chose, a full week before summary judgment

6    briefs are due.  We think that solves the problem that the

7    parties apparently overlooked the last time they were

8    addressing the expert schedule.

9         Your Honor asked about the expert schedule.  The

10   current deadline for opening expert disclosures is October 10,

11   the current deadline for rebuttal reports is October 24, and as

12   things stand, the last day for expert discovery is November 14.

13   I believe it's the 14th.  Could be the 15th.  I may be

14   misremembering, but I'll confirm that.

15        THE COURT:  Do you anticipate making a motion for

16   summary judgment?  And if so, would expert discovery have

17   anything to do with it?

18        MR. NATHAN:  I can say we do anticipate making such a

19   motion, of course subject to rethinking or whatever decision we

20   ultimately make at the conclusion of discovery.  We do

21   currently anticipate making that motion, and we are prepared to

22   adopt the -- all I can say about whether experts would be

23   relevant to the motion we intend to make, is that we are

24   prepared to adopt the schedule we proposed in our opposition --

25   in our reply letter.  Summary judgment --

PA3ELIVC

1          THE COURT:  Hold on for a second.  Hold on for a

2    second.  There's some problem.  We need to put this conference

3    on hold for a moment because the public line apparently is not

4    working.  We're going to take brief recess and then I'll have

5    more questions for Mr. Nathan in terms of the others.

6          (Recess)

7          (On the record)

8          THE COURT:  Good afternoon.  This is Judge Liman

9    again.

10          I am assuming that the parties can hear me.  If

11    anybody cannot hear me, put your thumb up or wave your hands.

12          Okay.  It appears that everybody can hear me.

13          I was in dialogue with Mr. Nathan on behalf of the

14    Lively parties.  Mr. Nathan had made his argument with respect

15    to how I should handle the motion for judgment on the pleadings

16    and I was inquiring on the subject of the schedule for the

17    motion for summary judgment.

18          Mr. Nathan, I had asked and you answered but maybe you

19    can repeat your answer, whether Lively intends to make a motion

20    for summary judgment and the relationship between summary

21    judgment and expert discovery in this case.

22          MR. NATHAN:  Yes, your Honor.

23          So as things stand, Ms. Lively does intend to make a

24    motion for summary judgment.  Your Honor had also asked whether

25    Ms. Lively's motion for summary judgment would be affected by

PA3ELIVC

1    whatever happens in expert discovery.  I can only say the

2    expert is very possibly, but given the situation we're in and

3    the need to keep the discovery schedule moving, what Ms. Lively

4    is prepared to do is hold to the schedule that she proposed in

5    her letter reply brief, which would make summary judgment

6    motions due November 12, and Ms. Lively would take whatever

7    expert depositions she felt were necessary by that date in

8    order to incorporate them into her motion.

9         We understand from the Wayfarer defendants'

10   perspective, it's important to have the opportunity to take

11   depositions before making their motion, and that's why we

12   proposed a schedule that would allow and committed to making

13   our own experts available for depositions on a timeframe that

14   would work for that purpose as well.

15        THE COURT:  Let me hear from you with respect to

16   request for admission.  And maybe --

17        MR. NATHAN:  Yes, your Honor.

18        THE COURT:  -- you can tell me what it is that you

19   would include in your request for admission.  As you know, they

20   sometimes have value in litigation, oftentimes they don't have

21   very much value.

22        MR. NATHAN:  Fair enough, your Honor.

23        And one of the oddities here is that I think at least

24   it appears to us that all parties, and maybe even the Court,

25   overlooked the fact that the RFA deadline hadn't been extended

PA3ELIVC

1    the last time that the fact discovery -- actually, both of the

2    last two times that relevant fact discovery deadlines were

3    moved.  Our idea is that it is quite possible that using RFAs

4    in this case would shorten what promises to be an already

5    somewhat lengthy trial.  That's their purpose, as we understand

6    it.  We think we could use them to save trial time by, for

7    example, authenticating documents, resolving disputes that

8    might be complicated to resolve through stipulations, but that

9    might be more amenable to the adversarial process of the

10    requests for admissions.

11        Obviously, we have no way of guaranteeing that those

12    benefits would accrue to using RFAs in this situation, but the

13    possibility of shortening trial and saving time in what already

14    -- I believe, in our initial case management plan scheduling

15    orders, the Wayfarer defendants suggested that they would need

16    six weeks of trial time, I think we had said two.  I'm sure

17    everyone would want to update that now.  I don't know in which

18    direction the other side's estimate would change, but I think

19    it's fair to say that actual time in court in front of the jury

20    will be at a premium, and we're just looking for ways to

21    conserve it.

22        We also think that in this situation, what may have

23    occurred here is only that while other discovery deadlines were

24    being moved, possibly for the reason your Honor just alluded

25    to, RFAs were overlooked, and that doesn't seem to us like a

PA3ELIVC

1      good reason to give up the opportunity to use them if they

2      appear to be useful.  That's our position on the RFA issue.  I

3      think we'd like an opportunity to serve them, and that's why we

4      made that request.

5                  THE COURT:  And what is the request?

6                  MR. NATHAN:  Our request is to realign the deadline to

7      serve RFAs with the last day of fact discovery, which now

8      effectively is October 10, which is the last day for

9      depositions under the Court's order at docket 770.

10                 THE COURT:  Have the Wayfarer parties served RFAs on

11     you?

12                 MR. NATHAN:  No.  Mr. Fritz will correct me if I'm

13     wrong, but not to my knowledge.

14                 THE COURT:  All right.  Anything else from you,

15     Mr. Nathan, before I turn to Mr. Fritz?

16                 MR. NATHAN:  No, your Honor, other than just to flag

17     again that in the alternative to the relief we requested on the

18     motion for judgment on the pleadings, we'd also request an

19     extension to respond, but I can address that at greater length

20     if your Honor would like to hear from me about it after you've

21     heard from Mr. Fritz or otherwise.

22                 THE COURT:  All right.

23                 Mr. Fritz, let me hear from you.

24                 MR. FRITZ:  Thank you, your Honor.

25                 As we say in our letter, the motion for judgment on

PA3ELIVC

1    the pleadings attacks Ms. Lively's own allegations and is based

2    on her version of the facts and the documents that she

3    incorporates therein.  So, you have several letters from

4    Ms. Lively and you heard from her counsel stating that there's

5    evidence that they would want to use in opposition to the

6    motion or in connection with summary judgment motion.  They

7    haven't specified what evidence they could possibly use in

8    opposition to a 12(c) motion, and they can't, and let me

9    explain why.

10           One of the arguments we make is that the FEHA statute,

11   which is the subject of at least five claims, does not have

12   extraterritorial application.  Ms. Lively admits in her own

13   pleadings she's a New York resident.  She admits that all the

14   conduct at issue took place in New York or New Jersey.  In

15   fact, she goes to great lengths in her second amended complaint

16   to tie her damage and the allegations to New York.  There's no

17   evidence that Ms. Lively could procure that would change her

18   allegations.  She is bound by her allegations.  There's no

19   amendment that would be granted in order for her to do a 180

20   and now say, well, wait a second, I live in California and the

21   conduct at issue occurred in California and I was damaged in

22   California.  So, none of the evidence that we have been

23   exchanging over the last eight months will change whether FEHA

24   applies in this case.

25           Furthermore, with respect to the retaliation claim, we

PA3ELIVC

1    allege that there is no temporal proximity between the alleged

2    harassment or the protected activity, which she admits in her

3    pleadings occurred in May or June of 2023, and the alleged

4    retaliation, which she claims occurred 15 months later in

5    August of 2024.  There's no evidence that she can submit that

6    would change those allegations.  Those are her allegations and

7    she's bound by them.

8         In your Honor's decision in --

9         THE COURT:  Let me interrupt you for a second.  The

10   bit about she's bound by them.

11        MR. FRITZ:  Right.

12        THE COURT:  I don't believe that that is actually

13   particularly sound proposition of the law.  My recollection is

14   that pleadings constitute evidentiary admissions but they don't

15   go beyond that.  And in particular, there is law, including

16   from me in some prior opinions and some very recent opinions,

17   about amending pleadings to conform with the evidence.

18        MR. FRITZ:  Your Honor --

19        THE COURT:  So, I don't know.  I mean, you cite in

20   your proposition, and I'm not sure whether you were speaking

21   loosely or not.

22        MR. FRITZ:  Well, let me be clear.  Certainly, a party

23   has an opportunity to bolster or amplify their pleadings, but I

24   think your Honor would agree with me that you can't do a 180.

25   You can't say that the traffic light was green in your initial

PA3ELIVC

1    complaint and then later say it was red.  In other words, you

2    can't flatly contradict your prior allegations.  And I know

3    your Honor cited some of those estoppel cases in your *D3*

4    *International Inc. v. AGGF Cosmetic* decision.

5         So, I'm not saying she can't amplify her allegations,

6    all I'm saying is you can't do a 180 and change it.

7    Ms. Lively's been very clear when the protected activity

8    occurred and when the retaliation occurred, and there is a

9    15-month, at a maximum, difference.  And if you even want to

10   say when she met with the Wayfarer parties in January of 2024,

11   that's still nine months, and there's been decisions from your

12   Honor and other judges in your court and the Second Circuit

13   saying that's too far.  That's not close enough.  So there's no

14   evidence that they have gathered or that they could put in an

15   amended pleading that would change that.

16        With respect to some of the other claims for which we

17   seek dismissal, they're based on privileges:  Litigation

18   privilege, fair reporting privilege.  The statements that they

19   attack made in the press are what they are.  The words aren't

20   going to change.  Either the privilege applies from the legal

21   point of view or it doesn't.  So, any amendment that she would

22   try to do would, respectfully, be futile.

23        With respect to having to make these arguments once

24   and not twice, allowing this 12(c) motion to be heard and

25   decided will narrow the case.  Whether your Honor dismisses 12

PA3ELIVC

1    of her claims, as we request, or eight of them or six of them

2    or even four, it will certainly be narrower than where we are

3    now, and that will make the Court's job easier on any motion

4    for summary judgment, it will make the parties' job easier on

5    any motion for summary judgment.  It will significantly narrow

6    the case.

7            With respect to Mr. Nathan's statement that we have

8    enough to do, I'm not familiar with that type of opposition to

9    a dispositive motion.  As your Honor can appreciate, we had

10   enough to do when Ms. Lively moved to dismiss our claims.  The

11   motion was still heard and decided.  We're asking for the same

12   treatment here.

13           THE COURT:  Yeah.  Actually, Mr. Fritz, as to that,

14   you didn't ask for an extension.  I checked on all of those.

15           MR. FRITZ:  All I'm saying is that the defense that

16   the parties have enough to do I don't think is a valid or legal

17   basis for opposing a motion or not allowing parties to even

18   have a motion be heard.

19           With respect to Mr. Nathan's statements that the

20   discovery or the depositions of my clients are ongoing,

21   discovery has been ongoing for a long time.  So, we put

22   together the motion after getting Ms. Lively's second amended

23   complaint, in which she doubled down on her New York-based

24   allegations, which gave us even more reason to seek a motion

25   for judgment on the pleadings on the extraterritorial argument,

PA3ELIVC

1    your Honor.

2              These are pure questions of law.  There's no evidence

3    they procured that's going to change any of the arguments that

4    would be made in opposition to our motion.

5              THE COURT:  So, let me ask you a question or two with

6    respect to that request.

7              Is there any prejudice to third parties if I don't

8    decide your motion for judgment on the pleadings until I decide

9    summary judgment?  I mean, why would I accelerate a decision on

10   the motion for judgment of the pleadings before summary

11   judgment?

12             MR. FRITZ:  Your Honor, I can only -- the prejudice to

13   not third parties, I suppose, could be to the extent --

14             THE COURT:  I didn't ask about prejudice to third

15   parties.  You know, with all due respect, I know you and

16   Mr. Nathan are working very, very hard, but my question at the

17   moment is really focused on third parties and if there's any

18   prejudice to them.

19             MR. FRITZ:  When you say "third parties," you mean

20   like nonparties, your Honor?  Purely people not associated with

21   the case?

22             THE COURT:  Yes.  I mean, if I just wait until I

23   decide summary judgment to decide the motion for judgment on

24   the pleadings --

25             MR. FRITZ:  Well, yes.  Your Honor, of course.

PA3ELIVC

1    Because when you put together motions for summary judgment, not

2    only are you submitting declarations from parties but you also

3    have to gather declarations potentially from nonparty

4    witnesses, and there are have been probably at least a dozen

5    nonparty witnesses who have been deposed, and, in fact, there

6    are probably even more people that we didn't depose -- because

7    there was, I think, a 20 deposition limit per party -- that we

8    would go and get declarations from potentially.  So, all those

9    people are going to be inconvenience when, if you decide the

10   motion under 12(c), a lot of these claims will likely be

11   knocked out and we won't need to bother those people, and

12   neither side will have to bother those people.

13        THE COURT:  So, you're saying, if that's right, that I

14   should decide this motion for judgment on the pleadings before

15   November 5?

16        MR. FRITZ:  Well, your Honor, that's why I suggested

17   moving back by a few weeks the summary judgment deadline.

18        THE COURT:  Did you think before you came up with this

19   idea that maybe you should file your motion for judgment on the

20   pleadings a little bit earlier so that you would give the Court

21   time to consider your arguments?  I mean, you make

22   sophisticated arguments, I'm sure I'll hear them from

23   Mr. Nathan, and you all are owed consideration by the Court of

24   the questions that you've presented.  Did you think, well,

25   maybe I should make this a little bit earlier if I wanted this

PA3ELIVC

1    to be heard before I have to file summary judgment papers?

2            MR. FRITZ:  We did put it together as promptly as

3    possible, your Honor.  Again, Ms. Lively's second amended

4    complaint wasn't filed until July 30 in which she included

5    additional New York-based allegations, which even strengthened

6    our motion.  So, obviously --

7            THE COURT:  Are you saying, Mr. Fritz, you would not

8    have had the same motion based upon the original complaint

9    filed by Ms. Lively?

10            MR. FRITZ:  I don't believe it would have been as

11    strong, because when she amended her complaint at the end of

12    July, she included even more New York-based allegations.  And

13    also, another consideration, Judge, is --

14            THE COURT:  So what allegations should I look at that

15    were in her amended complaint that were not in her original

16    complaint that make a material difference with respect to the

17    strength of your motion?

18            MR. FRITZ:  Thank you.

19            She includes a whole new section entitled "the Wallace

20    defendants execute a social attack plan in collaboration with

21    New York-based coconspirators and knowingly injure Ms. Lively

22    in New York," and then there's a number of new paragraphs

23    attempting to tie the alleged improper conduct or misconduct to

24    New York.  So, those are certainly new, your Honor.

25            And as we said in our papers, this is not late given

PA3ELIVC

1    other rulings by other judges in this court and by the Second

2    Circuit.

3        THE COURT:  No, I agree with you that -- I would not

4    deny this motion under 12(c) as untimely.  You don't have to

5    argue that point.

6        MR. FRITZ:  Okay.  And, your Honor, to the extent that

7    we have pressed the Court and not given the Court sufficient

8    time, I do apologize.  I think we've provided a remedy for

9    that, which is slightly moving some stuff back.  And I'm sure

10   your Honor has already taken a look at our motion maybe, and

11   I'm sure that Ms. Lively has already decided, hey, this is how

12   we respond.

13       So, we're confident that a ruling can be made before

14   summary judgment motions have to be filed and that, upon a

15   determination of our motion, there will be certainly fewer

16   claims.  How many is up to your Honor, but certainly everyone's

17   job going forward, including the jury in March, will be easier.

18       THE COURT:  Let me hear from you with respect to

19   summary judgment.  Assume that I'm not going to decide the

20   motion for judgment on the pleadings.  Whenever it's fully

21   submitted, I'm not going to decide it before any date that

22   you've got for summary judgment papers --

23       MR. FRITZ:  Okay.

24       THE COURT:  -- even your extended date.  Why should I

25   extend the date for summary judgment?

PA3ELIVC

         MR. FRITZ:  Well, I think I would extend that date,

your Honor, because once you have made a determination on our

motions, it would reduce the claims that issue in summary

judgment.

         If your Honor's question is why would your Honor move

the summary judgment deadline back, assuming that we won't have

a determination, I think everyone on this call would agree that

the current deadline of November 5 is not tenable given that

expert discovery is not scheduled to close until about nine

days thereafter.

         THE COURT:  So, walk me through your argument with

respect to that, because frequently motions for summary

judgment can be decided without considering expert testimony.

Expert testimony may go to things like damages, they obviously

can be important proof, but they don't tell you frequently

whether there's a genuine issue of material fact as to an

element of the violation.

         MR. FRITZ:  Well, your Honor, as was contemplated in

the initial case management plan, any motion for summary

judgment would be filed no later than November 15, and then in

the bracket, it says "absent exceptional circumstances, a date

14 days from the completion of all discovery."  So the default

practice is at least 14 days after the completion of all

discovery, and given that the expert discovery was supposed to

be completed by October 15, it looks like the parties and the

PA3ELIVC

1    Court had agreed that it would be at least several weeks, three

2    weeks, between October 15, which is the end of the initial

3    discovery date, and November 5.  So it was always contemplated

4    to be at least three weeks, your Honor.

5         THE COURT:  Well, I'm going to ask Mr. Nathan the same

6    question so you both are going to have to give me the

7    information.

8         What kinds of experts do you intend to proffer?

9         Mr. Fritz, you go first.  Your expert.

10        MR. FRITZ:  We would envision an expert on

11   Ms. Lively's alleged damages.  I think I referred to that in my

12   letter.  There may be an expert on public relations and crisis

13   management.  We may have an expert on the digital space, bots,

14   stuff like that.

15        THE COURT:  Do you envision needing any of them for

16   your motion for summary judgment?

17        MR. FRITZ:  Well, certainly on the damages, your

18   Honor, I could certainly see that because to the extent that

19   certain damages are --

20        THE COURT:  You going to get it clean thrown out on

21   damages?  I can understand --

22        MR. FRITZ:  Well --

23        THE COURT:  I can understand an *in limine* motion, but

24   a motion for summary judgment on damages?

25        MR. FRITZ:  Your Honor, there may be an element of the

PA3ELIVC

1    damages that we would seek that relief on.  You know, whether

2    the expert weighs in on that I haven't put a lot of thought

3    into at th is point, but it was always contemplated in the

4    order that the expert discovery would be finished, so --

5            And a lot may depend on what experts Ms. Lively puts

6    forward.

7            THE COURT:  All right.  Let's ask Mr. Nathan.

8            What experts do you intend to put forward?

9            MR. NATHAN:  Yes.  Of course, your Honor.

10           And not to doubt that you would give it to me, but I

11   would like an opportunity to respond to Mr. Fritz's points

12   about the substance of some of the arguments in their motion --

13           THE COURT:  If I need you --

14           MR. NATHAN:  -- at the appropriate time.

15           THE COURT:  If I need you to.

16           MR. NATHAN:  Okay.  We contemplate proffering a

17   handful of experts going through damages as well, experts in

18   the digital space, the human resources space, experts who can

19   opine on reputational harm, causation --

20           THE COURT:  Causation, did you say?

21           MR. NATHAN:  -- things of that nature.  One thing --

22           Huh?

23           THE COURT:  Causation, did you say?

24           MR. NATHAN:  Well, one thing I can say maybe to

25   simplify the inquiry as far as Ms. Lively is concerned, is that

PA3ELIVC

1    although I can't promise anything as I sit here, I don't

2    anticipate that Ms. Lively will move for summary judgment on

3    her affirmative claim.  Of course, there are only affirmative

4    claims of Ms. Lively's in this case on the basis of expert

5    testimony.  Unless, by some chance, that expert testimony was

6    uncontroverted.

7          So, from our perspective, that's one of the reasons

8    why we are fully prepared to abide by a summary judgment

9    deadline that precedes the last date for expert discovery if

10    indeed it does.  And also why, in recognition of the Wayfarer

11    defendants' interest in having expert discovery complete, we

12    will make our own experts available prior to the deadline for

13    summary judgment motion so that they can be deposed and the

14    Wayfarer defendants can incorporate that information should

15    they like to make challenges based on perceived deficiencies in

16    our expert opinions.

17          THE COURT:  All right.

18          Mr. Fritz, let me hear from you with respect to the

19    request for admission.

20          MR. FRITZ:  Your Honor, there was a deadline for

21    requests for admission, it has come and gone, and they haven't

22    shown good cause as to why they need an extension, why they

23    didn't ask for one earlier, why they didn't serve their request

24    for admission.

25          When your Honor asked Mr. Nathan, well, what would you

PA3ELIVC

 1   ask for in a request for admission, the only substantive

 2   response he gave was to authenticate documents.  I'm confident

 3   that when we are preparing for trial and we have to perhaps do

 4   a joint exhibit list or meet and confer about admissibility,

 5   that we can then resolve any issue about the genuineness or

 6   authenticity of documents.

 7           THE COURT:  As Mr. Fritz said, that is my concern.

 8   And one of the virtues of a request for admission before

 9   summary judgment is that with respect to documents that are

10   going to be used on summary judgment, it makes life easier for

11   the Court.

12           And with respect to trial, with respect to the

13   authentication of documents, as you know, requests for

14   admission carry with them a consequence if they are denied,

15   that the refusal to stipulate does not always carry with them.

16           So, I hear the argument that there may not be good

17   cause for the failure to ask for an extension a bit earlier.

18   But thinking about this case practically, isn't there a virtue

19   in permitting the parties to serve requests for admission at

20   some point before they get answers for summary judgment, at

21   least with respect to authentication of documents?

22           MR. FRITZ:  Your Honor, if they're limited to

23   authentication of documents, we don't have a major issue with

24   that.  And I take your Honor's point that you want to make sure

25   there's no dispute about the authenticity or genuineness of

PA3ELIVC

1    documents.  So if Ms. Lively or her counsel wants to stipulate

2    that requests for admission would be limited to that, that's

3    fine.

4              THE COURT:  All right.  Before I turn back to

5    Mr. Nathan, is there any other counsel who wishes to be heard

6    on these issues?

7              MR. BABCOCK:  Not from me, your Honor.

8              THE COURT:  Okay.  Maybe I'll ask Mr. Fritz one more

9    question.  It's a question that I'll also ask Mr. Nathan.  It's

10   sort of implicit in the questions I've asked you, Mr. Fritz,

11   but I'll give you last chance.

12             Is there any reason why I shouldn't set the schedule

13   for an opposition to your motion for judgment on the pleadings

14   to be the date for the opposition to a motion for summary

15   judgment on the assumption that you're not going to get an

16   answer on the motion for summary judgment on the pleadings

17   before summary judgment motions would have to be filed?

18             MR. FRITZ:  If there's not going to be any

19   determination of the motion, off the top of my head I would

20   argue that it's going to duplicate the briefing or it could

21   potentially duplicate the briefing, your Honor.  For example,

22   if we've already address that extraterritorial argument in the

23   12(c) papers, then there's no reason for us to do that again in

24   the summary judgment motion.  And in fact, for another example,

25   if we've addressed the lack of temporal proximity in the papers

PA3ELIVC

1    for the 12(c) motion, there's no need to do it again.  We're

2    just duplicating efforts and we're wasting judicial resources,

3    your Honor.

4              THE COURT:  Mr. Nathan, on that question.

5              MR. NATHAN:  Your Honor, I think that setting the

6    deadline for the motion for judgment on the pleadings

7    opposition to coincide with the opposition for the motion for

8    summary judgment makes good sense as an alternative to just

9    denying the motion for judgment on the pleadings and

10   effectively just rolling them into the same set of briefing on

11   the summary judgment schedule.

12             I understand Mr. Fritz's point that there may be some

13   duplication, but that was kind of our point.  That the risk of

14   duplication here, given the timing of the motion for judgment

15   on the pleadings militates against having that motion

16   adjudicated as an alternative to just waiting a few weeks and

17   doing it at the summary judgment stage when they're free to

18   raise all of their arguments.  And if they really think that

19   their arguments are pure questions of law, which I have to

20   emphasize we really disagree with, there's still no obstacle to

21   raising that type of issue at summary judgment.

22             So, certainly on the assumption that the motion for

23   judgment on the pleadings won't be resolved by the time summary

24   judgment motions are filed, at a minimum I would say that the

25   deadline to respond to the motion for judgment on the pleadings

PA3ELIVC

```
1   should coincide with that opposition.  And, your Honor, you can
2   expect that our two opposition briefs, if I'm imagining
3   correctly what the Wayfarer defendants have in mind, we'll have
4   to talk to each other because, you know, as we see it, facts
5   actually do affect the application of law to the questions that
6   are going to be before the Court.
7           THE COURT:  All right.
8           MR. FRITZ:  Just one more point, your Honor?
9           THE COURT:  Yes.
10          MR. FRITZ:  I'm sorry.
11          THE COURT:  Mr. Fritz, go ahead.
12          MR. FRITZ:  Inherent in your question and Mr. Nathan's
13  response is that anyone is going to file a motion for summary
14  judgment.  They may not.  Discovery is almost complete but not
15  yet.  How Ms. Lively can claim there's not, at minimum, a
16  genuine issue of material fact, I'm not sure, but I don't think
17  it's a foregone conclusion that anyone would have a viable
18  motion for summary judgment or file one.
19          THE COURT:  Oh.  You know, Mr. Fritz, I would give you
20  an opportunity to take back those words because I have no
21  doubt, from what I know of this case, that you will be filing a
22  motion for summary judgment.  I would be surprised, and that's
23  not a comment about whether it has merit or not, but just I
24  can't imagine that you're not going to move for summary
25  judgment on this or that claim.
```

PA3ELIVC

1          MR. FRITZ:  I'm simply stating it wasn't a foregone

2    conclusion.  That's my point, your Honor.

3          THE COURT:  Okay.

4          Let me ask you, Mr. Nathan.  On the request for

5    admission, I started off with the limited role that requests

6    for admission have.  Is there any reason why I shouldn't limit

7    requests for admission to be limited to authentication of

8    documents, and frankly, encourage Mr. Fritz to serve requests

9    for admission also with respect to the documents he wants to

10   have authenticated?

11         MR. NATHAN:  Your Honor, I think the same, admittedly,

12   marginal benefit would attach to request for admissions that

13   just -- you know, sought admissions that such-and-such person

14   was in such-and-such meeting or in such-and-such place on

15   such-and-such date.  Those are going to be a little less

16   cumbersome to elicit through testimony, so I can understand

17   your Honor's focus on the authentication issue.

18         If that's the limit of your Honor's appetite for

19   requests for admission in this case, that is certainly good

20   enough for us.  It's the main reason that we were interested in

21   getting this done, so I think we can live with that.

22         THE COURT:  Okay.  I can rule with respect to this

23   issue.

24         Mr. Babcock, you're going to have an opportunity on

25   the Wallace motion.

PA3ELIVC

1          But on the request for admission, I am going to grant

2   the request for an extension to October 10 for both sides, but

3   requests for admission will be limited to authentication of

4   documents unless the two of you reach an agreement that they

5   should extend to other issues, not foreclosing your ability to

6   reach an agreement.

7          With respect to the request for an extension on

8   summary judgment, I'm going to deny that request.  It is

9   apparent to me that there are complicated and difficult issues

10  that that the parties have raised.  And while I understand the

11  request for a one-week extension, I understand the request for

12  a longer extension in order to keep the trial date and in order

13  for me to be able to give you a decision on summary judgment

14  before you have to start preparing for trial, I need to keep

15  either the November 5 date or November 12 date.  So I'm going

16  to keep the November 15.

17          If the two of you agree on November 12, you can write

18  me a letter asking jointly for that extension and I will give

19  it due consideration, but don't expect that I would grant any

20  extension beyond November 12.  Frankly, I'm just trying to make

21  sure that by putting a lot of work on all of you for the month

22  of October, that I can resolve issues of summary judgment

23  before we have to spend a lot of time preparing for trial.

24          And with respect to the motion for judgment on the

25  pleadings, I am denying the request that I dismiss that motion

PA3ELIVC

```
1    without prejudice.  The Wayfarer parties, in my view, have a
2    right to make a motion directed to the pleadings, but I am
3    setting the date for a response to that motion as November 19,
4    with a reply date of the 26th.
5             So those are my rulings.  I'll try to put them in a
6    document.
7             Let me hear from you, Mr. Babcock, with respect to
8    your request with rebuttal expert testimony.
9             MS. ANASTASIO:  Your Honor, if I may just for one
10   moment.  Just a small point of clarification on the order you
11   just issued.
12            As noted in Ms. Lively's letter, the Jones parties
13   requested that any adjustment to the RFA deadline also apply in
14   the Jones action.  So I just wanted to clarify if the extension
15   to October 10 for RFA limited to authentication can apply in
16   that action as well.
17            THE COURT:  Do I have counsel for Abel on the line?
18            MR. FRITZ:  Yes, your Honor.
19            THE COURT:  That's you, Mr. Fritz?
20            Any objection to me applying this ruling to the
21   Jones v. Abel case?
22            MR. FRITZ:  None, your Honor.
23            THE COURT:  Okay.  Then that application is granted.
24            MS. ANASTASIO:  Thank you, your Honor.
25            THE COURT:  Okay.  Mr. Babcock.
```

PA3ELIVC

1          MR. BABCOCK:  Thank you, your Honor.

2          Charles Babcock for Jed Wallace and Street Relations.

3          As the Court will recall, these defendants were

4    brought in as defendants in the first amended pleading.  They

5    promptly moved for a dismissal under 12(b)(2) and also

6    challenged venue and, alternatively, had a 12(b)(6) motion.

7    The Court ruled on the jurisdictional issues in a 38-page

8    opinion which granted Ms. Lively leave to amend, which she did

9    by the deadlines.  Barely.  By ten minutes or so before the

10   deadline.  And so the Wallace defendants timely moved again to

11   dismiss and reasserted their venue and 12(b)(6) grounds.

12         The Lively defendants filed a response, we filed a

13   timely reply, and the matter was fully briefed by September 3,

14   of 2025.  We now come up to a deadline of October 24 where the

15   Wallace defendants will have to locate, vet, pay, and

16   ultimately disclose experts not knowing what, if any, claims

17   will be against them -- asserted against them to survive in

18   this case.

19         I would note that Mr. Wallace's deposition is

20   scheduled for October 9, and it will occur no matter what the

21   Court does on the motion, if anything before next Thursday,

22   because we have agreed that either he will be deposed as a

23   party defendant in the Lively case or we've already accepted a

24   nonparty subpoena in the event that the Court dismisses the

25   claims against him on jurisdictional or other grounds.

PA3ELIVC

1    Ms. Lively's counsel requested that and we said sure.

2          Not to leave Ms. Anastasio out of it, we've also

3    agreed that the next day, on the 10th, Mr. Wallace will sit for

4    a more limited deposition as a nonparty witness in the Jones

5    matter.

6          So, we are in a little bit of limbo.  It's certainly

7    not the Court's fault.  The Wallace defendants claimed that

8    it's not their fault because they didn't want to be invited to

9    this party anyway, but here they are.  There is a claim that

10   they have, which is pending in the Western District of Texas,

11   but nothing has happened in that case.  And not that this is

12   something for the Court to worry about right now, but the claim

13   in that case in Texas is that this is the first filed lawsuit,

14   even though, temporally speaking as to Wallace and Street, it

15   was the second filed, then having filed in Texas ahead of the

16   amendment bringing them into this case.  But should the Court

17   deny the motion to dismiss, then I imagine that the Wallace

18   defendants will file an answer, but they run the risk of not

19   filing a counterclaim under these circumstances.

20         So, we regret messing up the schedule.  We've already

21   done it once when your Honor granted the motion the first time,

22   if you recall, because we didn't know if we would be invited to

23   Ms. Lively's deposition.  It worked out we were invited and

24   everything was fine.

25         But anyway, those are the issues.  But the immediate

PA3ELIVC

1    one is the Wallace defendants would like to have a period of

2    time to locate experts, if necessary, in the event the Court

3    denies their motion to dismiss.

4            THE COURT:  So, Mr. Babcock, a couple questions for

5    you.

6            You have moved both to dismiss and also to transfer.

7            MR. BABCOCK:  Yes.

8            THE COURT:  So, on the assumption that I find that

9    your motion to transfer is well founded, there is law to the

10   effect that I look at that issue first and then leave it for

11   the transferee judge to determine whether the claim survives or

12   not.  So, wouldn't the expert -- or let's assume that I say

13   that it does stake a claim for transfer.  In all of those

14   events, wouldn't the expert testimony still be of value?

15   Aren't you still going to have to do the expert work in Texas?

16           MR. BABCOCK:  Let me take the first part.

17           If you were to transfer without having decided whether

18   the 12(b)(6) motion is valid, then I think yes, we would

19   probably assure the same experts but under a much different

20   schedule, because there's not even a scheduling order in Texas

21   yet.  So, that would be answer on one side of facts.

22           On the second set of facts, if you found that there

23   was going to be a transfer and the claims that Ms. Lively --

24   the two claims, one for false light and one for aiding and

25   abetting the retaliation, were valid, then yes, I think the

PA3ELIVC

1    experts would, in that event, be complicative, assuming that

2    she wished to continue asserting those claims in the

3    transferred case in Texas.

4         THE COURT:  And as you sit here today, what experts do

5    you anticipate needing?

6         MR. BABCOCK:  Well, it's going to be dependent a

7    little bit on what claims my clients face.  But under the

8    current pleadings, assuming the Court does not dismiss one or

9    both of the claims against them, one expert has already been

10   mentioned by Mr. Fritz, and that would be some sort of expert

11   on digital media, but I haven't explored that very far, and

12   possibly a damages/causation expert.  Those are the only two

13   that I've contemplating, but we've not been able to -- well, we

14   just haven't undertaken identifying anybody on the digital

15   side, although we'll comply with the deadline if that's the

16   Court's ruling, obviously.

17        THE COURT:  Do you anticipate relying upon expert

18   testimony in connection with a summary judgment motion?

19   Obviously, I have in mind the summary judgment schedule I've

20   got in this case.  And I'm going to try to get you a decision

21   on your motion quickly.

22        MR. BABCOCK:  Thank you, your Honor.

23        As I sit here today, no.  I don't anticipate relying

24   on expert testimony on any summary judgment that we might file.

25        THE COURT:  All right.  Anything else from you,

PA3ELIVC

1    Mr. Babcock?

2          MR. BABCOCK:  No, your Honor.  Thank you for your time

3    and for squeezing this one in.

4          THE COURT:  Of course.

5          Mr. Nathan, do you want to respond?

6          MR. NATHAN:  Yes, your Honor.

7          We oppose this because it effectively -- and I think

8    more than effectively, almost in turn -- seeks a stay of

9    discovery as against the Wallace defendants ending their motion

10   to dismiss.  As I think the colloquy between --

11         THE COURT:  You'll have to explain that to me.  All it

12   would do is say that he doesn't have to survey rebuttal expert

13   -- any expert report.

14         MR. NATHAN:  That's true.  Maybe it's more fairly

15   characterized as a partial stay, but it's keyed to a deadline

16   30 days after the Court resolves a dispositive motion.  And the

17   traditional practice, obviously, is that discovery proceeds

18   while dispositive motions are pending.

19         But Mr. Babcock has addressed the standard, as best I

20   can tell, for a motion to stay discovery in his motion.  And my

21   more fundamental point is just that, as I think that colloquy

22   confirmed, this litigation between Mr. Wallace, Street

23   Relations, and Ms. Lively is going to go forward one way or the

24   other.  I would just emphasize that in Texas, it is the Wallace

25   defendants who have sued Ms. Lively, not the other way around.

PA3ELIVC

The Wallace defendants apparently would like litigation to
proceed on the claims and, certainly, on the facts and much of
the law that is the substance of the claims at issue here.

I think most of what happens here, granted that there
may be a little bit of detail around the edges that might have
to change, but most of what happens here would be useful in the
event that these claims or their claims proceeded in Texas.

Ms. Lively, by the way, just to add to the headache,
has challenged the complaint against her in Texas on personal
jurisdiction grounds. Now, what's going to happen in the event
that that motion is granted, I don't know. That may be a
problem for another day. But in the interest of getting this
dispute resolved as quickly and efficiently as possible, I
don't think it makes sense to delay Mr. Wallace's production of
expert rebuttal reports in this action. For one thing, he may
well remain a defendant in this action and have to come to
trial on the same schedule as everybody else.

For another, at least his current position is he and
his company are plaintiffs in the Texas action, and I have no
doubt that if this action were to terminate and the other
action were to proceed, he'd be excited to introduce whatever
expert testimony he felt was necessary in aid of his own
claims. And again, that may be a problem for another day, but
it does highlight that something of this nature is happening
one way or the other.

PA3ELIVC

1          THE COURT:  I'm going to take this under advisement.

2     I'm going to reserve decision.

3          But, Mr. Babcock, I'll give you an opportunity for the

4     last word, just like I gave Mr. Nathan and Mr. Fritz an

5     opportunity for further words.

6          MR. BABCOCK:  Thank you, your Honor.

7          Not to debate Mr. Nathan's eloquence in the least.

8     The only thing I would say is the claim against Ms. Lively in

9     Texas is one of defamation.  It may not require the same type

10    of expert that would be necessary for this case, your case.

11         I would tend to agree with Mr. Nathan that her claim

12    and Mr. Wallace's and Street's claim arise out of the same

13    transaction or occurrence, such that we might be compelled to

14    file a counterclaim in this case if it goes forward before the

15    Texas case if we're still in it.

16         Conversely, she would certainly be required to file a

17    compulsory counterclaim against Mr. Wallace and Street

18    Relations should she want her claims to go forward in Texas.

19         THE COURT:  Okay.

20         MR. NATHAN:  And I would only add to that, truth is a

21    defense to defamation so, of course, these cases are mirror

22    images of each other in more ways than one.

23         THE COURT:  Mr. Babcock, I take it you don't have a

24    disagreement that truth is a defense to defamation.

25         MR. BABCOCK:  There is a lively debate about what is

PA3ELIVC

1    truth, but as a --

2            MR. NATHAN:  I should have said "substantial truth,"

3    Mr. Babcock.

4            MR. BABCOCK:  Yeah.  That would be helpful.

5            And this is an aside but it's somewhat of an

6    interesting one.  I just concluded a case, one of the dominion

7    voting systems cases in the DC in front of Judge Nichols, and

8    there was a healthy debate about whether or not the truth was

9    the President Trump made allegations and we merely reported

10   them, and so we truthfully reported his allegations without

11   having the burden of demonstrating the truth of the facts

12   underlying the allegations.  That's something that the other

13   side challenged quite strenuously, so it depends on what truth

14   you're talking about.

15           THE COURT:  All right.  I'm going to take this under

16   advisement.  I will try to get you a decision quickly on the

17   various matters in front of me.

18           I thank you all for your time.  I would like to make a

19   gentle request that you order a copy of the transcript and that

20   you do it on an expedited basis, particularly in light of the

21   fact that there was a portion of this hearing where the public

22   line apparently was not working.

23           But thank you all.  Have a good afternoon and a good

24   weekend.

25           (Adjourned)