USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 08/26/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BLAKE LIVELY, et al., Plaintiffs, -v- WAYFARER STUDIOS, et al., Defendants. | 24-cv-10049 (LJL); 25-cv-449 (LJL) OPINION AND ORDER |

LEWIS J. LIMAN, United States District Judge:

These two cases, No. 24-cv-10049 (the "Lively Action"), and the related action, No. 25-cv-449 (the "Wayfarer Action"), involve the film *It Ends with Us* (the "Film") and the contentious fallout between the Film's two co-stars, Blake Lively ("Lively") and Justin Baldoni ("Baldoni"). Blake Lively, Defendant in Case No. 25-cv-449, now moves for an award of attorneys' fees and costs pursuant to California Civil Code § 47.1.

For the following reasons, the motion is granted in part and denied in part.

**BACKGROUND AND PROCEDURAL HISTORY**

The Court has previously outlined the background of this dispute at length. *See Lively v. Wayfarer Studios LLC*, 786 F. Supp. 3d 695, 714–31 (S.D.N.Y. 2025). Familiarity with the prior proceedings is presumed.

Lively and Baldoni have waged fierce battle against each other in court. Lively initiated the legal dispute by filing an administrative complaint before the California Civil Rights Department on December 20, 2024, accusing Baldoni and his co-defendants (collectively the "Wayfarer Parties") of sexual harassment and retaliation in connection with conduct on the set of

the Film and related to the marketing of the Film.[1] Lively followed that administrative complaint with a lawsuit filed in this Court on December 31, 2024, leveling charges of sexual harassment, retaliation, breach of contract, intentional infliction of emotional distress, negligent infliction of emotional distress, and false light invasion of privacy against Baldoni and the other Wayfarer Parties. Dkt. No. 1.[2] The Wayfarer Parties responded several weeks later with a lawsuit against Lively and her husband, Ryan Reynolds ("Reynolds"), as well as against her publicist Leslie Sloane ("Sloane") and Vision PR, Inc. ("Vision PR"). Wayfarer Action, Dkt. No. 1. The complaint in the Wayfarer Action contained causes of action for civil extortion, defamation, false light invasion of privacy, breach of the implied covenant of good faith and fair dealing, intentional interference with contractual relations, intentional interference with prospective economic advantage, and negligent interference with prospective economic advantage. *Id.* On January 31, 2025, the Wayfarer Parties filed their First Amended Complaint ("FAC"). Dkt. No. 50. It added claims against the New York Times Company (the "New York Times") for defamation, false light invasion of privacy, promissory fraud, and breach of an implied in fact contract. *Id.* Otherwise, it contained the same causes of action against Lively, Reynolds, Sloane, and Vision PR.

On June 9, 2025, the Court granted the motion of Lively and the other defendants to dismiss the FAC in the Wayfarer Action, giving the Wayfarer Parties leave only to amend their tortious interference with contract and breach of implied covenant claims by June 23, 2025. Wayfarer Action, Dkt. No. 296; *Lively v. Wayfarer Studios LLC*, 786 F. Supp. 3d 695 (S.D.N.Y. 2025). The Wayfarer Parties did not file a further amended complaint. On September 8, 2025,

[1] The Wayfarer Parties are Wayfarer Studios LLC, Justin Baldoni, Jamey Heath, Steve Sarowitz, It Ends With Us Movie LLC, Melissa Nathan, The Agency Group PR LLC, and Jennifer Abel.
[2] Unless otherwise noted, citations to docket entries reference the Lively Action.

Lively moved for attorneys' fees, treble damages, and punitive damages under California Civil Code § 47.1. Dkt. No. 742.

By Opinion and Order of June 12, 2026, the Court determined that Lively was entitled to her attorneys' fees and costs pursuant to California Civil Code § 47.1 in connection with the lawsuit alleging, *inter alia*, claims of defamation against her. Dkt. No. 1440; *Wayfarer Studios v. Lively*, 2026 WL 1707052 (S.D.N.Y. June 12, 2026). In that same Opinion and Order, the Court determined that she was not entitled to compensatory or punitive damages. *Id.* The Court ordered Lively and the Wayfarer Parties to submit papers regarding the appropriate measure of fees. Dkt. No. 1441.

Lively now seeks $8,035,040.88 in fees and costs, including $7,495,526.87 in attorneys' fees and costs in the amount of $539,514.01. Dkt. No. 1445 ¶ 2; Dkt. No. 1446 at 4, 6, 10; Dkt. No. 1447 ¶¶ 2, 46; Dkt. No. 1448 ¶¶ 13, 18. The Wayfarer Parties argue that Lively's request is so inflated that the Court should deny it "altogether" and that, "[a]t a minimum, the Court should substantially reduce [Lively's] request, using as a benchmark the $181,622.70" the New York Times sought in related litigation as fees and costs for defending against a related claim brought against it for defamation. Dkt. No. 1449 at 6, 15.

## DISCUSSION

### I. The Scope of Lively's Entitlement to Fees

The parties spar at the outset on the reasonable fees and costs for which Lively is entitled to reimbursement. Lively claims that she is entitled to reimbursement for all of the attorneys' fees and costs she incurred in the litigation in which the defamation claim was asserted, including the "fees and costs incurred in furtherance of that recovery." Dkt. No. 1446 at 5–6. To that end, Lively seeks reimbursement both for all of the fees incurred on the motion to dismiss the FAC in the Wayfarer Action but also all work "associated and intertwined" with the Lively

Action until June 23, 2025, the date by which the Wayfarer Parties could amend the FAC. Dkt. No. 1448 ¶ 17. The Wayfarer Parties claim that Lively is entitled only to the reasonable fees and costs necessary to defend against the defamation claim. Dkt. No. 1449 at 6. The Wayfarer Parties have the better of the argument.

California courts look in the first instance to the words of a statute in construing its meaning. *See S. B. Beach Props. v. Berti*, 138 P.3d 713, 716 (Cal. 2006). "If the language permits more than one reasonable interpretation, however, the court looks to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." *Club Members for an Honest Election v. Sierra Club*, 196 P.3d 1094, 1098 (Cal. 2008) (quoting *S.B. Beach Props.*, 138 P.3d at 716) (interpreting California's anti-SLAPP statute).

The language of California Civil Code § 47.1 is ambiguous. It provides that "[a] prevailing defendant in any defamation action brought against that defendant for making a communication [without malice] that is privileged under this section shall be entitled to their reasonable attorney's fees and costs for successfully defending themselves in *the* litigation . . ." Cal. Civ. Code § 47.1(b) (emphasis added). The statute does not speak directly to whether the litigation refers to that portion of the case that contains claims for defamation or whether it extends to the entire litigation, including unrelated claims against the defendant.

An examination of the evils to which the California legislature addressed itself in California Civil Code § 47.1 as well as considerations of public policy suggest that the defendant is entitled to reimbursement only for those fees and costs incurred in defending against the defamation claim. As the Court previously observed, in passing Section 47.1, the California

legislature intended to provide a measure of protection for the speech uttered by victims of sexual assault. *See Wayfarer Studios*, 2026 WL 1707052, at *3. The law begins with the declaration that "[a] communication made by an individual, without malice, regarding an incident of sexual assault, harassment, or discrimination is privileged under Section 47." Cal. Civ. Code § 47.1. The California legislature intended "to deter a form of SLAPP lawsuit, which the legislature found was 'increasingly being used as a weapon to threaten, silence, intimidate, and dissuade survivors of sexual assault, harassment, and discrimination from speaking out against their abusers and exposing predators.'" *Wayfarer Studios*, 2026 WL 1707052, at *13 (quoting Dkt. No. 146-1 at 54). It also intended "to 'help[] take the burden off of survivors by providing reasonable attorneys' fees and damages if they successfully defend themselves against meritless lawsuits.'" *Id.* (quoting Dkt. No. 146-1 at 54). There is nothing in the law or in the legislative history that indicates that the California legislature intended to award a defendant accused of a range of tortious conduct other than a SLAPP lawsuit all of her fees and costs in defending against that conduct simply because the person who is the target of that conduct has included in his or her lawsuit a claim for defamation.

The facts of this case illustrate the point. Defamation was one of many complaints made by the Wayfarer Parties against Lively, her husband, and her publicist. The Wayfarer Parties also alleged that Lively engaged in civil extortion in violation of California law when she (1) refused to return to production unless the Wayfarer Parties agreed to her return to production demands; (2) threatened to abandon her contractual obligation to promote the film or approve marketing materials unless the Wayfarer Parties agreed to co-fund a screening of her version of the Film, eventually release that version, and grant her a producer credit and support in seeking the p.g.a. designation licensed by the Producers Guild of America ("PGA"); (3) threatened to

boycott the premiere unless Baldoni was excluded; and (4) threatened to attack Wayfarer in the press if it did not take the blame for problems during filming. *Lively*, 786 F. Supp. 3d at 739. The Wayfarer Parties also alleged that "Lively breached the implied covenant of good faith and fair dealing in the contract 'by which Lively agreed to perform as an actor in the Film *It Ends With Us*,' by making threats, seizing creative control, and depriving the Wayfarer Parties of 'the opportunity to produce, edit, and market a film as contemplated by the contract.'" *Id.* at 782–83 (quoting Dkt. No. 50 ¶¶ 340–346). They further alleged that Lively, with Reynolds, intentionally interfered with Baldoni's relationship with his talent agency by making threats to it to drop Baldoni. *Id.* at 783. The Court dismissed the civil extortion claim only after an extended discussion, in which it took issue with a decision by a federal district court in California. *See Lively*, 786 F. Supp.3d at 745–46 (discussing *Monex Deposit Co. v. Gilliam*, 666 F. Supp. 2d 1135 (C.D. Cal. 2009)). It dismissed the claims for breach of the implied covenant and intentional interference with contract without prejudice; those claims were not pursued only because Baldoni decided not to pursue them. Lively has given no reason why she should be entitled to her fees and costs in defending against each of those claims simply because the Wayfarer Parties also chose to sue her on a claim that she was making false allegations of sexual harassment against them. Nor has she provided reason why she is entitled to any attorneys' fees or costs after June 9, 2025, the date when the Court dismissed the Wayfarer Parties' defamation claim with prejudice.

"The Federal Rules allow a plaintiff to 'state [in one complaint] as many separate claims . . . as it has.'" *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 409 (2015) (quoting Fed. R. Civ. P. 8(d)(3)). The rules thus "contemplate an expansive definition of 'case,' including all claims that the party has against a particular opponent falling within federal jurisdiction." *Diaz-Roa v.*

*Hermes L., P.C.*, 757 F. Supp. 3d 498, 532 (S.D.N.Y. 2024) (quoting 3 Moore's Federal Practice § 13.110[1]–[3] (3d. ed. 2024)). If Lively's interpretation of "the litigation" in Section 47.1 were adopted, it could not be limited to claims that related to the defamation claim. It would extend to all fees and costs incurred in the entire litigation, regardless whether the claims had any relation to the defamation claim. Such an interpretation would extend far beyond the goals that the California legislature was intending to accomplish in enacting Section 47.1

This conclusion is consistent with California law. The California courts have held that "[w]hen a cause of action for which attorney fees are provided by statute is joined with other causes of action for which attorney fees are not permitted, the prevailing party may recover only on the statutory cause of action." *Akins v. Enter. Rent-A-Car Co. of S.F.*, 94 Cal. Rptr. 2d 448, 452 (Cal. Ct. App. 2000) (interpreting California Fair Debt Collection Practices Act); *see also Caballero v. Bill Muncey Indus., Inc.*, 2021 WL 1011911, at *3 (Cal. Ct. App. Mar. 17, 2021). That principle has been applied to the California Automobile Sales Finance Act ("ASFA"), Cal. Civ. Code §§ 2981 *et seq.*, and Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*, both of which use language similar to that in Section 47.1. *See Graciano v. Robinson Ford Sales, Inc.*, 50 Cal. Rptr. 3d 273, 283 (Cal. Ct. App. 2006).[3] There is no reason to believe that the California courts would apply a different interpretation to California Civil Code § 47.1.[4]

---

[3] The attorney fee provision of the CLRA, section 1780, subdivision (e), provides: "The court shall award court costs and attorney's fees to a prevailing plaintiff in a litigation filed pursuant to this section." Cal. Civ. Code § 1780(e). The attorney fee provision of the ASFA, section 2983.4, provides: "Reasonable attorney's fees and costs shall be awarded to the prevailing party in an action on a contract or purchase order subject to the provisions of this chapter." Cal. Civ. Code § 2983.4.

[4] Lively notes that California's anti-SLAPP statute provides for an award of attorneys' fees and costs to the prevailing defendant only on a special motion to strike. Dkt. No. 1446 at 5; *see* Cal. Civ. Proc. Code § 425.16(c). But the Court need not interpret Section 47.1 to give the defendant

## II. Lively's Reasonable Attorneys' Fees

Lively seeks $8,035,040.88 in fees and costs, comprised of $7,495,526.87 in attorneys' fees and costs in the amount of $539,514.01. Dkt. No. 1445 ¶ 2; Dkt. No. 1446 at 4, 6, 10; Dkt. No. 1447 ¶¶ 2, 46; Dkt. No. 1448 ¶¶ 13, 18.

Under California law, a trial court assessing attorneys' fees begins with the lodestar figure, based on a compilation of the time spent and reasonable hourly compensation of each attorney involved in the case. *See Christian Rsch. Inst. v. Alnor*, 81 Cal. Rptr. 3d 866, 870 (Cal. Ct. App. 2008). The court calculates the lodestar "by multiplying the number of hours reasonably expended by the reasonable hourly rate prevailing in the community for similar work." *Id.*

Two law firms, Manatt, Phelps, & Phillips LLP ("Manatt") and Willkie Farr & Gallagher ("Willkie"), represented Lively in this action. Lively has submitted evidence that her attorneys from Willkie charged her at rates ranging from $1,551 to $2,795 for the partners assigned to the case and $1,275 to $1,573 for two of the associates. Dkt. No. 1447 ¶¶ 8–13. The median charge for all partners was $1,650 and for all associates was $1,225. *Id.* ¶ 47. Willkie provided Lively a discount of 15% off its standard hourly rates. *Id.* ¶ 15. The partners from Manatt charged Lively discounted fees ranging from a rate of $1,161 to $1,287 and $1,026 to $1,138.50 for the most senior partners to effective rates of $1,008 to $1,120.50 and $1,044 to $1,161 for the more junior partners. Dkt. No. 1445 ¶¶ 6–9.

---

who prevails on a defamation claim an entitlement to attorneys' fees on all claims against her to ascribe different meaning to the two statutes. Under California law, a party is not entitled to fees under the anti-SLAPP statute unless she has made a motion to strike and prevailed on it. *See S.B. Beach Props.*, 138 P.3d at 714; *Christian Rsch. Inst. v. Alnor*, 81 Cal. Rptr. 3d 866, 870 (Cal. Ct. App. 2008). By contrast, under Section 47.1, the defendant need only have prevailed on a defamation claim that was based on a statement that is privileged under Section 47.1. *See Wayfarer Studios*, 2026 WL 1707052, at *4 (discussing Section 47.1).

An hourly rate is "reasonable" when it is "within the range of reasonable rates charged by and judicially awarded comparable attorneys for comparable work." *Children's Hosp. & Med. Ctr. v. Bonta*, 118 Cal. Rptr. 2d 629, 662 (Cal. Ct. App. 2002). Courts consider: (1) "the experience and qualifications of each attorney and paralegal who billed on the case," *Pulliam v. HNL Auto. Inc.*, 274 Cal. Rptr. 3d 547, 555 (Cal. Ct. App. 2021); (2) "rate determinations in other cases," *Hiken v. Dep't of Def.*, 836 F.3d 1037, 1044 (9th Cir. 2016) (internal quotation marks and citation omitted); and (3) "survey[s] of prevailing rates among" similar attorneys, *Pulliam*, 274 Cal. Rptr. 3d at 555.

"A billing rate that is the usual rate an attorney charges for his or her services is evidence that the rate approximates the market rate." *Yuga Labs, Inc. v. Ripps*, 2024 WL 489248, at *2 (C.D. Cal. Jan. 11, 2024) (citing *Moore v. James H. Matthews & Co*, 682 F.2d 830, 840 (9th Cir. 1982)). "The actual billing arrangement certainly provides a strong indication of what private parties believe is the 'reasonable' fee to be awarded." *Eletson Holdings Inc. v. Levona Holdings Ltd.*, 2026 WL 1745709, at *9 (S.D.N.Y. June 17, 2026) (quoting *Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.*, 246 F.3d 142, 151 (2d Cir. 2001)). The fact that a paying client was willing to pay and in fact paid a certain amount to litigate a case is strong evidence that the fee was reasonable. *See Lilly v. City of New York*, 934 F.3d 222, 231–32 (2d Cir. 2019) (discussing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008)); *see Weiwei Gao v. Sidhu*, 2013 WL 2896995, at *5 (S.D.N.Y. June 13, 2013) (stating that the existence of an actual fee agreement "is an important factor in determining the reasonableness of the fees"); *see also Chavez v. Cal. Collision, LLC*, 328 Cal. Rptr. 3d 50, 61 (Cal. Ct. App. 2024) ("The reasonable market value of the attorney's services is the measure of a reasonable hourly rate." (internal quotation marks and citation

omitted)); *Akin v. KDF Cobblestone Vill.*, 2025 WL 612946, at *3 (Cal. Ct. App. Feb. 26, 2025) (unpublished) ("[T]he actual rate charged to the client is the best evidence of what is a reasonable rate for the particular work involved.").[5] At the same time, the prevailing defendant is entitled to reimbursement only for "reasonable" attorneys' fees. The prevailing defendant cannot burden the plaintiff "with an exorbitant fee arrangement." *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1263 (2d Cir. 1987) (quoting *Equitable Lumber Corp. v. IPA Land Dev. Corp.*, 344 N.E.2d 391, 397 (N.Y. 1976)).

Counsel's rates were not unreasonable. The case as a whole presented substantial financial and reputational risks for all parties involved. It also involved complex legal issues. It was extremely well-litigated. The rates are not outside the range of reasonableness in the community for the best lawyers handling highly complicated and high stakes litigation. *See* Dkt. No. 1445 ¶ 45 (comparing Manatt rates to rates for peer group); Dkt. No. 1447 ¶ 47 (comparing Wilkie rates to rates for peer group).

Lively seeks attorneys' fees for 82 timekeepers, including 53 from Willkie and 29 from Manatt. Dkt. No. 1450 ¶ 15. But she includes biographical information, title, and billing rate information for only 11 timekeepers. *Id.* The Court has no basis to evaluate the fee request for the remaining timekeepers and therefore denies it. *See Zero Carbon Holdings, LLC v. Aspiration Partners, Inc.*, 2024 WL 3409278, at *7 (S.D.N.Y. July 15, 2024).

The number of hours for which Lively seeks reimbursement is unreasonable. Lively has submitted the declaration of a purported attorney fee expert who has reviewed the billing

---

[5] "Even though unpublished California Courts of Appeal decisions have no precedential value under California law, [federal courts are] 'not precluded' from considering such decisions 'as a possible reflection of California law.'" *See Goodson v. County of Plumas*, 2023 WL 4678990, at *20 n.2 (E.D. Cal. July 21, 2023) (quoting *Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1167 n.6 (9th Cir. 2011)).

records. Dkt. No. 1448. Lively has not submitted the invoices themselves. The analyst claims that that the two firms billed $2,267,288.75 for motion practice in the Wayfarer Action, including the motion to dismiss, a Rule 11 sanctions motion, and the Section 47.1 motion. *Id.* ¶ 16. She also claims that the two firms billed her for work associated and intertwined with both actions, including discovery and fact-gathering exercises, in the amount of $5,228,238.12 through June 23, 2025. *Id.* ¶ 17.

As an initial matter, Lively is entitled to reimbursement for the reasonable attorneys' fees incurred in briefing a portion (but not all) of the motion to dismiss and all of the Section 47.1 motion. She is not entitled to reimbursement for any of the cost of the Rule 11 motion. Lively filed a 36-page memorandum of law in support of the motion to dismiss in which she argued that the complaint in the Wayfarer Action failed to identify the specific defamatory statements by Lively, certain statements were outside the statute of limitations, Lively's statements were protected by a number of privileges under California law, and the FAC failed to allege actual malice. Dkt. No. 145 at 10–24. She also filed a 16-page reply memorandum of law. Dkt. No. 172 at 3–11. The costs she incurred for those filings were incurred in defense of the defamation action. But the category of motion practice is overexpansive and includes work for which Lively is not entitled to an award of attorneys' fees. The two law firms also represented Reynolds who filed an entirely separate motion to dismiss supported by a 29-page memorandum of law. Dkt. No. 132-33. Lively is not entitled to reimbursement for the costs of preparing and filing that motion.

As to the Rule 11 sanctions motion, it was directed to claims asserted by persons other than Baldoni against Lively and Reynolds for civil extortion, defamation, and intentional interference with contract and breach of an implied contract. The motion was directed solely to

the defamation claim against Reynolds; it sought no sanctions for the Wayfarer Parties' defamation claim against Lively. *See* Dkt. No. 1270 at 3–4 (describing Lively and Reynolds's Rule 11 demands and arguments for sanctions). The Court granted in part and denied in part the Rule 11 sanctions motion. *Id.* Importantly, the Court denied Lively's request for attorneys' fees as a Rule 11 sanction. Lively thus is not entitled to reimbursement for the work on that motion.

Lively is entitled to reasonable attorneys' fees for her motion directed to whether she was entitled to fees under Section 47.1. *Cf. Sokolow v. Cnty. of San Mateo*, 261 Cal. Rptr. 520, 530 (Cal. Ct. App. 1989) ("[A]bsent circumstances rendering the award unjust, fees recoverable under section 1021.5 ordinarily include compensation for all hours reasonably spent, including those necessary to establish and defend the fee claim." (quoting *Serrano v. Unruh*, 652 P.2d 985, 997 (Cal. 1982))).

There is no doubt that Lively is entitled to reimbursement for some of the fact-gathering and discovery processes. "[F]ees need not be apportioned when incurred for representation of an issue common to both a cause of action for which fees are permitted and one for which they are not. All expenses incurred on the common issues qualify for an award." *Akins*, 94 Cal. Rptr. 2d at 452. Discovery against Baldoni in the Wayfarer Action, unlike discovery against the New York Times, was not stayed. Work devoted to discovery on Lively's sexual harassment claim would have been intertwined with the work necessary to defend against the defamation claim. But Lively's blunderbuss approach leaves the Court no way to determine precisely how many hours were reasonably incurred on common issues.

Moreover, the Wayfarer Parties have identified a series of flaws in the records that are illustrative of broader discrepancies and deficiencies in the fees schedule. Dkt. No. 1450. *See Meister v. Regents of Univ. of Cal.*, 78 Cal. Rptr. 2d 913, 921 (Cal. Ct. App. 1998) ("the lodestar

method vests the trial court with the discretion to decide which of the hours expended by the attorneys were 'reasonably spent' on the litigation" (quoting *Serrano*, 652 P.2d at 986)). First, the billing records contain entries for internal communications that are often vaguely described and do not identify the issues discussed, work performed, or whether the meeting pertained to defending the defamation claim or the broader litigation. *See, e.g.*, Dkt. No. 1448-2 at 33 (entry for "legal strategy calls"); *id.* at 16 ("Confer with team re workstreams; research related to types of relevant cases; correspond with team re filing").[6] Internal communications may represent reasonable collaboration, but, where extensive, courts "may reduce fee awards for hours billed for internal, interoffice, or intraoffice, communications or conferences." *P.H. v. Compton Unified Sch. Dist.*, 2025 WL 2377099, at *10 (C.D. Cal. July 16, 2025), *amended on reconsideration in part*, 2025 WL 2995129 (C.D. Cal. Aug. 28, 2025), *aff'd*, 2026 WL 2034039 (9th Cir. July 14, 2026) (unpublished mem.); *see Kries v. City of San* Diego, 2021 WL 120830, at *11 (S.D. Cal. Jan. 13, 2021) (finding it "unreasonable for Plaintiffs' attorneys to bill for multiple attorneys from the same firm attending the same internal meetings"); *see Eib v. Sizzler USA Restaurants, Inc.*, 2018 WL 1127896, at *2–3 (Cal. Ct. App. Mar. 2, 2018) (unpublished) (affirming fee reduction where lower court found "unnecessarily excessive" billing entries for "inter-office meetings and emails."). *See also Primero Garcia v. Barr*, 484 F. Supp. 3d 750, 757 (N.D. Cal. 2020) (reducing attorneys' fees where "counsel billed time for emailing or calling co-counsel" and some of those entries did not note whether the communication was related to the case).

Second, the records include entries that are partially redacted, which makes it difficult to determine the full scope of the work performed. For example, one entry bills time to "Revise

[6] Citations to this docket entry use ECF pagination.

legal memo into XX" and another bills time for "[a]nalyze and revise final draft of legal memo addressing XX." Dkt. No. 1448-2 at 106, 109; *see also id.* at 106 ("Participate in XX strategy telephone conference" and "XX in preparation for drafting legal memo on XX"); *id.* at 111 ("Analyze case law interpreting application and scope of XX and prepare list of best practices for XX").[7] In the federal context,"[a] district court has an obligation to deny a fee request where billing records are so heavily redacted that they do not provide sufficient information for the Court to judge the reasonableness of the fee request." *Nat'l Rifle Ass'n of Am. v. City of Los Angeles*, 2020 WL 13678741, at *8 (C.D. Cal. Oct. 30, 2020) (citing *Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1285–86 (9th Cir. 2004)); *see Shame On You Prods., Inc. v. Banks*, 893 F.3d 661, 670 (9th Cir. 2018) (affirming reduction of fees for redacted entries because such redactions "impair[ed] the ability of the court to judge whether the work was an appropriate basis for fees" (internal quotation marks and citation omitted)); *see also R. Consulting & Sales, Inc. v. Kim*, 2021 WL 1919655, at *1 (Cal. Ct. App. May 13, 2021) (unpublished) (finding that trial court abused its discretion "when it included in the fee award amounts from billing entries that were so heavily redacted it was difficult, if not impossible, to determine what work was performed"). Relatedly, many entries are vague and render it difficult to determine what work was performed, on what motion, and in which action. *See, e.g.,* Dkt. No. 1448-2 at 112 (entry labeled "[c]onfer regarding various litigation items"); *id.* at 114 ("various correspondence and strategy related to amended complaint"). *See Minser v. Collect Access, LLC*, 309 Cal. Rptr. 3d

---

[7] Not all redactions in Lively's billing submission are improper or warrant a fee reduction. Redactions of the name of individuals on strategy calls, *see, e.g.,* Dkt. No. 1448-2 at 22 ("Multiple telecons with legal team, clients, and XX . . .") and redactions that conceal potential legal strategies, *see id.* at 111 ("strategy call . . . regarding potential XX and XX") do not, in and of themselves, unreasonably obscure the fee request. The vagueness at issue here stems, in part, from the need for the Court to assess whether billing entries pertained to the defamation claim such that recovering the attorney's fee for that entry is warranted.

727, 797 (Cal. Ct. App. 2023) ("[T]he trial court may, in its discretion, reduce an award of attorney fees if the attorney's bills are too vague to allow the court to determine if the hours spent on a case were justifiable."); *see also Banas v. Volcano Corp.*, 47 F. Supp. 3d 957, 969 (N.D. Cal. 2014) (vague entries such as "attention to deposition preparation" and "attention to discovery issues; attention to draft expert reports" warrant fee reduction because they made it "difficult to determine what the timekeeper was actually doing").[8]

Third, Lively seeks fees for time billed towards media relations, including strategizing media communications and client media appearances. *See, e.g.,* Dkt. No. 1448-2 at 117 ("Strategize regarding client media appearances"); *id.* at 118 ("Review media coverage and strategize regarding same"); *id.* at 127 ("Advise regarding legal issues related to media statement"). "Hours spent for media contacts and press conferences are generally not compensable." *Lehr v. City of Sacramento*, 2013 WL 1326546, at *12 (E.D. Cal. Apr. 2, 2013) (citing *Gates v. Gomez,* 60 F.3d 525, 535 (9th Cir.1995)); *see Cal. Common Cause v. Duffy*, 246 Cal. Rptr. 285, 297–98 (Cal. Ct. App. 1987) (affirming reduction of fee award due to hours spent on calls from press). Federal courts have found the "giving of press conferences and performance of other lobbying and public relations work" is solely compensable where it "is directly and intimately related to the successful representation of a client." *Prison Legal News v.*

[8] Wayfarer additionally argues that the records reflect potentially duplicative time entries. Dkt. No. 1450 ¶ 23. "[I]n the normal course of litigation, 'necessary duplication' is an 'inherent part of the process' and 'there is no reason why [a] lawyer should perform this necessary work for free.'" *Berg v. Cnty. of Los Angeles*, 2026 WL 2120887, at *6 (C.D. Cal. July 16, 2026) (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)); *see id.* (finding it "reasonable that attorneys of varying tenure worked in tandem to complete most of the work on a reply brief in a single day."); *cf. Taylor v. Nabors Drilling USA, LP*, 166 Cal. Rptr. 3d 676, 695 (Cal. Ct. App. 2014) (assuming that in reducing lodestar figure, the trial court "took any unnecessary or duplicative billings into account"). Wayfarer has not identified unreasonable duplication of drafting or research time related to the motion to dismiss that warrants a reduction of attorneys' fees on that ground.

*Schwarzenegger*, 561 F. Supp. 2d 1095, 1101 (N.D. Cal. 2008) (quoting *Davis v. City of San Francisco,* 976 F.2d 1536, 1545 (9th Cir.1992), *reh'g denied and opinion vacated in non-relevant part,* 984 F.2d 345 (1993)). That litigation involves reputational interests is insufficient, on its own, to render media communications intimately related to client's representation. *Cf. id.* (time on communications and press releases compensable where necessary to inform class members of settlement); *Davis*, 976 F.2d at 1545 (lobbying time compensable where necessary for obtainment of consent decree); *Gilbrook v. City of Westminster*, 177 F.3d 839, 877 (9th Cir. 1999) (media communications aimed towards preventing disbanding of the fire department compensable as directly related to goals of representation where fire fighter plaintiffs sought reinstatement as relief, raised claim of First Amendment retaliation, and believed that efforts to disband the department were part of the retaliatory scheme; any time spent on media relations once litigation concluded not compensable). Media relations were not integral to defending the defamation claim brought against Lively. Accordingly, time spent on media relations and press coverage is not compensable.

Fifth, Lively seeks fees for clerical or administrative work that was billed at attorney rates. *See e.g.,* Dkt. No. 1448-2 at 20 ("Assisted with filing, updated team case tracker"); *id.* at 106 ("Analyze case dockets; provide updates to litigation team regarding pertinent deadlines"); *id.* at 109 ("Analyze, index, and collate key documents"). "[P]urely clerical work is not compensable at attorney or paralegal rates." *Soler v. Cnty. of San Diego*, 2021 WL 2515236, at *10 (S.D. Cal. June 18, 2021) (citing *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989); and *Davis*, 976 F.2d at 1536); *Pierce v. Cnty. of Orange*, 905 F. Supp. 2d 1017, 1031 (C.D. Cal. 2012) (same); *see Golba v. Dick's Sporting Goods, Inc.*, 190 Cal. Rptr. 3d 337, 351 (Cal. Ct. App. 2015) ("The trial court has 'wide discretion' in reducing the fees sought based on the

court's estimate of time spent on noncompensable activities." (internal quotation marks and citation omitted)); *Chavez v. Netflix, Inc.*, 75 Cal. Rptr. 3d 413, 432 (Cal. Ct. App. 2008) (affirming fee award where court reduced reasonable hours due to activities that could have been performed by paralegals or attorneys with less experience).

Sixth, Lively also seeks fees for travel time, but, in some entries, does not identify the proceeding or other event related to the defense of the defamation claim that required such travel. *See, e.g.,* Dkt. No. 1448-2 at 31 ("travel to/from client"); *id.* at 32 ("Travel and attention to USB transfer"); *id.* at 137 ("Travel from DC to LA").[9] Courts will award attorneys' fees for travel time "[s]o long as the amount of time spent traveling is reasonable, and the meeting or event to which the attorney is traveling is necessary to the case." *Uriarte-Limon v. Leyva*, 2017 WL 5665016, at *3 (C.D. Cal. June 30, 2017); *cf. Roe v. Halbig*, 240 Cal. Rptr. 3d 104, 124 (Cal. Ct. App. 2018) ("attorney's fees for travel hours may be awarded if the court determines they were reasonably incurred"). Absent identification of a necessary meeting or event, attorneys' fees for travel are not warranted. *See Harper v. City of Los Angeles*, 2006 WL 8446990, at *12 (C.D. Cal. May 16, 2006) (disallowing recovery of travel costs because "[p]laintiffs' counsel presents no explanation of who incurred the travel expenses, why they were necessary to the litigation, or why it was necessary to go to Phoenix"), *aff'd*, 533 F.3d 1010 (9th Cir. 2008).

In such circumstances as present here, where the prevailing party has not made any effort to allocate the fees to the claim on which she prevailed, the California courts will "assign[] a

[9] The Wayfarer parties highlight additional entries as failing to specify the proceeding for which counsel traveled or whether it was related to the defense of the defamation claim. *See* Dkt. No. 1450-11. However, these entries are identifiable as travel to/from the pretrial conference held on February 3, 2025, *see* Dkt. No. 1448-2 at 111 (noting travel to New York for pretrial conference on February 3, 2025, and travel from New York to Los Angeles on February 4, 2025), or travel for the hearing on the 47.1 motion, *id.* at 102 ("Travel to New York for hearing on 47.1 motion").

reasonable percentage to the entries, or simply cast them aside." *Bell v. Vista Unified Sch. Dist.*, 98 Cal. Rptr. 2d 263, 275 (Cal. Ct. App. 2000); *see Life Care Residences, Inc. v. Affordable Senior Housing Found.*, 2025 WL 1948540, at *10 (Cal. Ct. App. July 16, 2025). The Court is also permitted to apply a steep discount where a party has made an outrageously unreasonable demand. "If . . . the Court were required to award a reasonable fee when an outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked in the first place. To discourage such greed, a severer reaction is needful." *Christian Rsch. Inst.*, 81 Cal. Rptr. 3d at 877 (quoting *Serrano*, 32 Cal.3d at 635).

The New York Times has asked for reasonable attorneys' fees in the amount of $181,622.70 in connection with its defense of the defamation claim arising from the same statements. Dkt. No. 1450-1. Lively was reasonably required to incur greater fees, including with respect to discovery and the briefing of the Section 47.1 motion. Accordingly, the Court awards Lively double the amount sought by the New York Times, or $363,245.40 in attorneys' fees.

## III. Lively's Reasonable Costs

Lively's request for litigation costs is governed by Section 1033.5 of the California Code of Civil Procedure. Cal. Civ. Proc. § 1033.5. That section provides, *inter alia*, that filing and motion fees, deposition costs, service costs, ordinary witness fees, and cost of transcripts where ordered by the court are allowable as costs. *Id.* § 1033.5(a). It also excludes certain categories of litigation expenses from costs:

> (b) The following items are not allowable as costs, except when expressly authorized by law:

(1) Fees of experts not ordered by the court.

(2) Investigation expenses in preparing the case for trial.

(3) Postage, telephone, and photocopying charges, except for exhibits.

(4) Costs in investigation of jurors or in preparation for voir dire.

(5) Transcripts of court proceedings not ordered by the court.

Cal. Civ. Proc. § 1033.5(b). It further provides that "[a]llowable costs shall be reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation" and "shall be reasonable in amount" and that "[i]tems not mentioned in this section and items assessed upon application may be allowed or denied in the court's discretion." *Id.* § 1033.5(c)(2)–(4). Section 47.1 does not expressly authorize costs beyond those allowed under Section 1033.5. Cal. Civ. Code § 47.1.

Lively's expense analyst provided three spreadsheets representing costs incurred by Lively in this action. *See* Dkt. No. 1448-2 at 72–81, 153–62. The spreadsheets include costs for travel, research fees, experts and consultants, office supplies, and filing fees. *See id.* Among these costs, Lively identifies $173,276.50 in costs charged by GBX Holdings LLC as "incurred exclusively for the purpose of assessing the impact to Ms. Lively's reputation, if any from the Wayfarer Action" in support of the Section 47.1 motion. Dkt. No. 1447 ¶ 45; Dkt. No. 1448-2 at 80. Time billed to Willkie by GBX Holdings LLC included time to research and preserve social media posts, news articles, and TV news materials with mention of defamatory content related to the Section 47.1 claim and time assembling a Section 47.1 report with such information. Dkt. No. 1448-2 at 80–81. This report, while related to Lively's Section 47.1 motion, is fairly categorized as an expert report, the cost of which is not recoverable under California law. Cal. Civ. Proc. § 1033.5(b)(1); *Perez v. Torres*, 141 Cal. Rptr. 3d 758, 760 (Cal. Ct. App. 2012) ("[F]ees paid to experts retained by the parties are not recoverable costs."). Lively additionally

seeks $134,519.65 in research expenses for Westlaw, Lexis, Bloomberg, Pacer, and similar charges. Dkt. No. 1448-2 at 153–62; Dkt. No. 1450-12 at 9–20. The California Court of Appeals has found that legal research falls under the nonrecoverable category of "investigation expenses" pursuant to Section 1033.5(b)(2). *Ladas v. Cal. State Auto. Ass'n*, 23 Cal. Rptr. 2d 810, 818 (Cal. Ct. App. 1993) ("Fees for legal research . . . may not be recovered under section 1033.5"); *accord United States v. Int'l Fidelity Ins. Co.*, 2019 WL 9050959, at *10 (C.D. Cal. Dec. 19, 2019).

As to Lively's other expenses, those for travel, meals, office supplies and discovery services, Section 1033.5 does not expressly allow or prohibit recovery for such costs, and those costs accordingly may be awarded or denied in the Court's discretion. *See* Cal. Civ. Proc. § 1033.5(c)(4). These expenses are not explicitly tied to an identified motion, appearance, or aspect of litigation. Where it is not possible to allocate expenses to specific claims, it is appropriate for the Court to award a portion of the total expenses. *Cf. Gracie v. Gracie*, 217 F.3d 1060, 1070 (9th Cir. 2000) (applying federal expense-recovery statute and stating that "the impossibility of making an *exact* apportionment [between recoverable and nonrecoverable claims] does not relieve the district court of its duty to make *some* attempt to adjust the fee award in an effort to reflect an apportionment").

The Court will award costs for $11,721.86 in travel expenses identifiably tied to court appearances for the pretrial conference on February 3, 2025, and the oral argument on the Section 47.1 motion on June 1, 2026. *See* Dkt. No. 1448-2 at 72–79, 153–55. The Court will further award costs for the $154.80 in transcript filing fees and one-sixth of the expenses for discovery services incurred prior to June 9, 2025, in the amount of $32,329.69. *See* Dkt. No. 1448-2 at 76–79. In sum, the Court awards $44,206.35 in costs.

**CONCLUSION**

Lively's request for attorneys' fees and costs is GRANTED IN PART and DENIED IN PART.

The Clerk of Court is respectfully directed to enter judgment for Lively in the amount of $363,245.40 in attorneys' fees and $44,206.35 in costs.

SO ORDERED.

Dated: August 26, 2026
New York, New York

LEWIS J. LIMAN
United States District Judge