## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

BLAKE LIVELY,                 :

                                       :

         Plaintiff,        :   Case No.: 1:24-cv-10049-LJL

                                       :   (Consolidated for pretrial purposes with

    v.                      :   1:25-cv-00449-LJL) rel. 1:25-cv-00779-

                                       :   LJL

WAYFARER STUDIOS LLC, et al.,   :

                                       :

        Defendants.     :

-----------------------------------------------------------------X

WAYFARER STUDIOS LLC, et al.,   :

                                       :

         Plaintiffs,     :

    v.                      :

                                       :

BLAKE LIVELY, et al.,         :

                                       :

        Defendants.     :

-----------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF NON-PARTY
## SARA NATHAN'S MOTION TO QUASH THE SUBPOENA

Steven G. Mintz
Scott A. Klein
Timothy J. Quill, Jr.
MINTZ & GOLD LLP
600 Third Avenue, 25th Floor
New York, NY 10016
Tel: (212) 696-4848
mintz@mintzandgold.com
klein@mintzandgold.com
quill@mintzandgold.com

*Attorneys for Non-Party*
*Sara Nathan*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... ii

PRELIMINARY STATEMENT ............................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................. 3

    The Underlying Lawsuit ................................................................................. 3

    Sara Nathan ................................................................................................... 4

    The Subpoena................................................................................................. 5

ARGUMENT .......................................................................................................... 5

    I.     The Court Should Quash the Subpoena Because the Information Sought is
           Protected by the New York Shield Law and the Federally Recognized Reporter's
           Privilege ................................................................................................. 6

          A.     The New York Shield Law protects Sara Nathan's documents from
                  discovery ................................................................................... 6

                1.     The New York Shield Law governs Sara Nathan's documents and
                      information that the Sloane Parties seek through the Subpoena...... 6

                2.     The information sought in the Subpoena is confidential and
                      therefore absolutely privileged under the Shield Law .................... 8

                3.     The Sloane Parties cannot satisfy their heavy burden to
                      overcome the Shield Law's privilege governing non-confidential
                      information................................................................................... 9

                      a.     The requested information is not highly material and
                          relevant............................................................................ 11

                      b.     The requested information is not critical or necessary ...... 11

                      c.     The requested information can be obtained through
                          alternative sources........................................................... 13

          B.     The Federal Reporter's Privilege also precludes compelled disclosure of
                  Sara Nathan's documents and warrants quashing the Subpoena .............. 14

                  1.     The Sloane Parties cannot overcome the Federal Reporter's
                      Privilege protecting Ms. Nathan's confidential information ......... 16

2. The Sloane Parties cannot overcome the Federal Reporter's Privilege protecting Ms. Nathan's non-confidential information....................................................................16

a. The requested information is cumulative...........................17

b. The requested information can be obtained through alternative sources..............................................17

II. The Court Should Quash the Subpoena Because it Places an Undue Burden on Non-Party Sara Nathan ........................................................................18

CONCLUSION..................................................................................20

# TABLE OF AUTHORITIES

Cases

*Baker v. F & F Inv.*,
   470 F.2d 778 (2d Cir. 1972)................................................................................ 15

*Baker v. Goldman Sachs & Co.*,
   669 F.3d 105 (2d Cir. 2012)...................................................................... 8, 10, 12

*Breaking Media, Inc. v. Jowers*,
   Case No. 21 Misc. 194 (KPF), 2021 WL 1299108 (S.D.N.Y. Apr. 7, 2021)............. 6, 7, 17, 19

*Copantitla v. Fiskardo Estiatorio, Inc.*,
   No. 09 Civ. 1608 (RJH) (JCF), 2010 WL 1327921 (S.D.N.Y. Apr. 5, 2010) ......................... 19

*Dobrovolskaya v. Monarch Air Grp.*,
   Case No. 25-mc-00032 (JLR), 2025 WL 733258 (S.D.N.Y. Mar. 7, 2025)................ 7, 8, 9, 10

*Flynn v. NYP Holdings Inc.*,
   235 A.D.2d 907 (3d Dep't 1997) ............................................................................... 9

*Fowler v. Vary*,
   Case No. 22-mc-0063 (LAK), 20-CV-9586 (LAK), 2022 WL 3211638 (S.D.N.Y. Aug. 9,
   2022) .................................................................................................................. 12

*Giuffre v. Maxwell*,
   221 F. Supp. 3d 472 (S.D.N.Y. Nov. 21, 2016) ................................................... passim

*Gonzales v. Nat'l Broad. Co.*,
   194 F.3d 29 (2d Cir. 1999)................................................................... 1, 7, 15, 17

*Gropper v. David Ellis Real Estate L.P.*,
   Case No. 13 Civ. 2068 (ALC) (JCF), 2014 WL 518234 (S.D.N.Y. Feb. 10, 2014)................ 19

*Hedgeye Risk Mgmt., LLC v. Dale*,
   No. 21-cv-3687 (ALC) (RWL), 2023 WL 4353076 (S.D.N.Y. July 5, 2023).......................... 19

*Immuno AG. v. Moor-Jankowski*,
   77 N.Y.2d 235 (1991) ......................................................................................... 8

*In re Am. Broad. Companies, Inc.*,
   189 Misc.2d 805 (N.Y. Sup. Ct. N.Y. Cnty. Oct. 1, 2001)................................... 10, 13

*In re Application to Quash Subpoena to Nat. Broad. Co., Inc.*,
   79 F.3d 346  (2d Cir. 1996).............................................................................. 7, 10

*In re Eisinger*,
   Case Nos. 11-mc-00060 (BSJ), 09-10053-PBS, 2011 WL 1458230
   (S.D.N.Y. Apr. 12, 2011) .................................................................................. 10

*In re McCray, Richardson, Santana, Wise, and Salaam Litig.*,
   928 F. Supp. 2d 748 (S.D.N.Y. 2013) ............................................................... 15

*Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*,
   Case No. 03 Civ. 5560 (RMB) (HBP), 2008 WL 4452134 (S.D.N.Y. Oct. 2, 2008) ............. 18

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
   313 U.S. 487 (1941) .......................................................................................... 7

*Krase v. Graco Children Prods., Inc.*,
   79 F.3d 346 (2d Cir. 1996) .................................................................................. 7

*Lebowitz v. City of New York*,
   948 F. Supp. 2d 392 (S.D.N.Y. 2013) .......................................................... 17, 18

*Marshall Project, Inc. v. City of Cleveland*,
   Case No. 24-MC-309 (VC), 2024 WL 4589667 (S.D.N.Y. Oct. 28, 2024) ........... 15

*Matter of Grand Jury Subpoenas Nat'l Broad. Co.*,
   178 Misc.2d 1052 (Sup. Ct. N.Y. Cnty. 1998) ................................................. 13

*Matter of Home Box Off., Inc. (Laster)*,
   64 Misc.3d 566, 2013 N.Y.S.3d 794 (Sup.Ct. N.Y. Cnty. 2019) ................. 13, 14

*Oakley v. MSG Networks, Inc.*,
   Case No. 17-cv-6903 (RJS), 2025 WL 72111 (S.D.N.Y. Jan. 9, 2025) ................. 18

*O'Neill v. Oakgrove Constr.*,
   71 N.Y.2d 521 (1988) ............................................................................ 8, 10, 11

*Petroleum Prods. Antitrust Litig.*,
   680 F.2d(2d Cir. 1982) ............................................................................. 16, 17

*Pugh v. Avis Rent A Car Sys.*,
   Case No. M8-85, 1997 WL 669876 (S.D.N.Y. Oct. 28, 1997) .............................. 15

*Schoolcraft v. City of N.Y.*,
   Case No. 10 Civ. 6005 (RWS), 2014 WL 1621480 (S.D.N.Y. Apr. 22, 2014) ................. 16, 17

*Sikelianos v. City of N.Y.*,
   No. 05 Civ. 7673, 2008 WL 2465120 (S.D.N.Y. June 18, 2008) ........................... 16

*United States v. Burke*,
   700 F.2d 70 (2d Cir. 1983) .............................................................................. 17

*von Bulow by Auersperg v. von Bulow*,
    811 F.2d 136 (2d Cir. 1987)............................................................................................. 6, 15

Statutes

New York Civil Rights Law § 79-h ....................................................................... passim

New York State Constitution (Article I, § 8) ................................................................ 8

Rules

Federal Rule of Civil Procedure 26 ............................................................................. 18

Federal Rule of Civil Procedure 45 ............................................................... 1, 5, 6, 18

Federal Rule of Evidence 501 ....................................................................................... 6

Non-party Sara Nathan, by and through her undersigned counsel, Mintz & Gold LLP, respectfully submits this memorandum of law in support of her motion under Federal Rule of Civil Procedure 45 to quash the subpoena issued by Leslie Sloane and PR Vision, Inc. (together, the "Sloane Parties") commanding the production of certain documents (the "Subpoena").

## PRELIMINARY STATEMENT

The free press is a cornerstone of First Amendment rights and essential to a properly functioning democratic society. To that end, New York State and federal courts have long recognized the existence of a privilege to protect journalists and news media organizations from compelled disclosure of materials and information obtained during the newsgathering process. This privilege promotes the "paramount public interest in the maintenance of a vigorous, aggressive and independent press capable of participating in robust, unfettered debate over controversial matters." *Gonzales v. Nat'l Broad. Co.*, 194 F.3d 29, 33 (2d Cir. 1999).

New York Civil Rights Law § 79-h (the "Shield Law" or "§ 79-h") codifies this principle and provides professional journalists with absolute protection from subpoenas demanding disclosure of confidential information coming into the journalist's possession during newsgathering. The Shield Law also provides a qualified privilege for non-confidential information obtained in the same way, which can be overcome only if the subpoena issuer makes a clear and specific showing that the information "(i) is highly material and relevant; (ii) is critical or necessary to the maintenance of a party's claim, defense or proof of an issue material thereto; and (iii) is not obtainable from any alternative source." § 79-h(c).

Federal courts recognize a similar privilege protecting journalists' newsgathering work product. While the federal reporter's privilege is only qualified, not absolute, courts nonetheless routinely hold that parties issuing subpoenas to journalists have failed to overcome the privilege.

And when a subpoena-issuing party fails to overcome the privilege, the subpoena should be quashed.

Despite these long-recognized principles, on May 5, 2025, the Sloane Parties, two of the defendants in this action, served a broad and unfocused subpoena *duces tecum* on non-party Sara Nathan ("Ms. Nathan"), a professional journalist, seeking wide swaths of confidential information and documents that Ms. Nathan obtained in newsgathering.

Ms. Nathan is Editor At Large for the *New York Post* (the "*Post*") where she covers celebrity news. In August 2024, she obtained information from confidential sources and wrote two articles, published in the *Post*, concerning on-set disputes and animosity between Blake Lively and Justin Baldoni, co-stars and producers of the movie *It Ends With Us* (the "Film"). Several months later, the rift between Lively and Baldoni resulted in the filing of several lawsuits, which have been consolidated into this case. The Sloane Parties, seeking discovery to defend the claims asserted against them, issued the Subpoena to Ms. Nathan on May 5, 2025.

The Subpoena should be quashed in full because it seeks information and documents that Ms. Nathan learned from confidential sources through newsgathering within the scope of her work as a journalist—information that is absolutely privileged from compelled disclosure under New York's Shield Law. Nothing more is required to grant Ms. Nathan's motion. Further, even if the Court were to hold that the information is not confidential—and it is—the qualified privilege of the Shield Law also demands that the Subpoena be quashed because the Sloane Parties cannot satisfy the high burden required to overcome the privilege. Indeed, the materials sought in the Subpoena are not highly material, are not critical or necessary to the Sloane Parties' defense, and can be obtained from other sources including other parties to the underlying lawsuit. For many of the same reasons, the Sloane Parties cannot meet their burden to overcome the

reporter's privilege under federal law either. In short, whether analyzed under New York or federal law, the Sloane Parties cannot pierce the privilege and the Subpoena should be quashed in its entirety.

Moreover, this blunderbuss Subpoena is facially overbroad, seeking "<u>all documents and communications</u>" relating to, among other topics, the Film, and many of the parties to the underlying action. Such a Subpoena places an undue burden on Ms. Nathan, particularly given the First Amendment implications. This provides an independent reason to quash the Subpoena.

<u>**FACTUAL AND PROCEDURAL BACKGROUND**</u>

**The Underlying Lawsuit**[1]

As the Court is aware, this consolidated case concerns a complex factual dispute regarding alleged sexual harassment on the set of the Film and purported public relations smear campaigns spearheaded by the alleged harasser (Justin Baldoni, the Film's executive producer, director, and co-star) and the alleged victim (Blake Lively, the Film's star) to destroy each other's reputations. Specifically, Lively alleges that Baldoni sexually harassed her on the set of the Film, that his production company, Wayfarer Studios, did nothing to stop it, and that the Wayfarer Parties conspired to retaliate against Lively and destroy her reputation when she stood up to and reported the alleged harassment. *See* ECF Doc. No. 84. The Wayfarer Parties, in turn, allege that it was Lively and her team (the "Lively Parties," consisting of Blake Lively, her husband (Ryan Reynolds), Lively's PR crisis management team (the Sloane Parties), and The New York Times Company) who created and implemented an organized smear campaign to destroy the reputation of Justin Baldoni and the Wayfarer Parties. *See* ECF Doc. No. 50. Based

---

[1]    The alleged facts relating to the Underlying Lawsuit are taken from the First Amended Complaints filed, respectively, by Blake Lively (ECF Doc. No. 84) and the "Wayfarer Parties" (consisting of Wayfarer Studios, LLC, Justin Baldoni, Jamey Heath, It Ends With Us Movie LLC, Melissa Nathan, Jennifer Abel, and Steve Sarowitz) (ECF Doc. No. 50).

on that alleged smear campaign, the Wayfarer Parties assert three claims against the Sloane

Parties under California law: civil extortion, defamation, and false light invasion of privacy. *See*

ECF Doc. No. 50, ¶¶ 316-339.

**Sara Nathan**[2]

Ms. Nathan is a professional journalist and the award-winning Editor At Large for the

*Post*, where her reporting includes coverage of Hollywood celebrities. Nathan Decl. ¶¶ 1-3. Ms.

Nathan has more than 27 years of experience as a journalist. Nathan Decl. ¶ 1. She has worked

for the *Post* for more than seven years, first as the Page Six Features Editor and now as the

Editor At Large. Nathan Decl. ¶ 3.

Ms. Nathan's sister, Melissa Nathan ("Melissa") is a party to this lawsuit. *See* ECF Doc.

No. 84. Melissa has been named as a defendant by Lively and is alleged to be a PR crisis

consultant for the Wayfarer Parties. *Id.* ¶¶ 29, 240. In contrast, Ms. Nathan's connection to the

Film and the dispute among the parties to the lawsuit is solely through her role as a journalist.

Nathan Decl. ¶ 6. In that role, she gathered and collected information from various confidential

sources regarding the Film and the apparent rift between Lively and Baldoni. Nathan Decl. ¶ 7.

To that end, Ms. Nathan gathered information and authored two *Post* articles that are

expressly referenced in Lively's First Amended Complaint (ECF Doc. No. 84): *Truth behind "It*

*Ends With Us" feud rumors: Justin Baldoni made Blake Lively feel "uncomfortable," sources*

*say*, dated August 9, 2024 at 4:50 p.m. *See* Nathan Decl. Ex. 2 (the "August 9 Article"); and

*Blake Lively approved final cut of "It Ends With Us" amid feud with co-star director Justin*

*Baldoni*, dated August 13, 2024 at 4:20 p.m. *See* Nathan Decl. Ex. 3 (the "August 13 Article";

---

[2]    Unless otherwise indicated, facts relating to Ms. Nathan and the Subpoena are set forth in the
accompanying Declaration of Sara Nathan, dated May 30, 2025 (the "Nathan Decl.").

and, together with the August 9 Article, the "*Post* Articles"). Nathan Decl. ¶¶ 9-10. Critically, the *Post* Articles rely on information that confidential sources provided to Ms. Nathan on the condition that neither the sources' names nor what specific information they shared would be revealed. Nathan Decl. ¶ 12.

**The Subpoena**

On May 5, 2025, the Sloane Parties served the Subpoena on Sara Nathan in New York. *See* Nathan Decl. ¶¶ 4-5; Ex. 1. The Subpoena seeks multiple categories of documents in connection with the underlying case and the Wayfarer Parties' claims against the Sloane Parties, including, among other documents:

- Request No. 1: <u>All</u> documents and communications concerning the Sloane Parties, including but not limited to any telephone, video, or voice recordings of the Sloane Parties.
- Request No. 3: Documents sufficient to identify <u>all</u> persons who were party to any telephone, video, or voice recordings of the Sloane Parties that you made.
- Request No. 4: <u>All</u> documents and communications concerning the Film.
- Request No. 5: <u>All</u> documents and communications concerning any of the Wayfarer Parties, to the extent they are related to the allegations in the above-captioned matter.
- Request No. 6: <u>All</u> communications with any of the Wayfarer Parties concerning the Film, the Lively-Reynolds Parties, the Sloane Parties, Baldoni, the allegations in the above-captioned matter, and/or any press stories or social media related to the same.
- Request No. 9: <u>All</u> documents and communications concerning the Wayfarer Parties' provision to you of any information or material related to the [Lively Parties].

*See* Nathan Decl. Ex. 1 (emphasis added). The Subpoena has an original response date of May 19, 2025, but counsel for the Sloane Parties extended Ms. Nathan's time to respond to the Subpoena to June 3, 2025. *See* Declaration of Steven G. Mintz, dated June 3, 2025, ¶ 3.

## ARGUMENT

Federal Rule of Civil Procedure 45(d)(3)(A) ("Rule 45") provides, in pertinent part, that, "[o]n a timely motion, the court for the district where compliance is required must quash or

modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies; or . . . subjects a person to undue burden."

Here, the Subpoena should be quashed under Rule 45 because (1) the documents and information the Sloane Parties seek in the Subpoena are privileged materials obtained during the course of a journalist's newsgathering process and are therefore protected from disclosure by both state and federal law; and (2) in addition to the applicable newsgathering privilege, the Subpoena is, on its face, exceedingly overbroad and subjects Ms. Nathan to undue burden.

## I. The Court Should Quash the Subpoena Because the Information Sought is Protected by the New York Shield Law and the Federally Recognized Reporter's Privilege.

The information the Sloane Parties seek in the Subpoena is privileged and protected from compelled disclosure by both the New York Shield Law and the federal reporter's privilege and therefore the Subpoena should be quashed.

### A. The New York Shield Law protects Sara Nathan's documents from discovery.

#### 1. The New York Shield Law governs Sara Nathan's documents and information that the Sloane Parties seek through the Subpoena.

Under Federal Rule of Evidence 501, in a civil case founded on diversity jurisdiction, "state law governs privilege regarding a claim or defense for which the state law supplies the rule of decision." Fed. R. Evid. 501; *see Giuffre v. Maxwell*, 221 F. Supp. 3d 472, 475 (S.D.N.Y. Nov. 21, 2016) (applying New York State Shield Law to state law claim in federal court because of diversity of citizenship).[3] "A federal court sitting in diversity applies the choice of law rules of

---

[3]     This consolidated case is in federal court on diversity, federal question, and supplemental jurisdiction. *See* Wayfarer Parties' First Amended Complaint (ECF Doc. No. 50), ¶ 312 (diversity jurisdiction); Lively's First Amended Complaint (ECF Doc. No. 84), ¶ 67 (federal question and supplemental jurisdiction). Although courts generally apply federal privilege law to cases premised on federal question and supplemental jurisdiction, *see von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 141 (2d Cir. 1987); *Breaking Media, Inc. v. Jowers*, Case No. 21 Misc. 194 (KPF), 2021 WL 1299108, at

the forum state." *Breaking Media*, 2021 WL 1299108, at *3 n.2 (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). And "because privilege rules are considered conduct-regulating, New York applies the law of the locus of the conduct at issue." *Id.* (internal citations and quotations omitted). Thus, in *Breaking Media*, where a legal news website publisher moved to quash a subpoena seeking documents, the court held that New York law governed the privilege because, *inter alia*, the publisher was based in New York, carried out its publishing activities in New York, and "New York has expressed a strong interest in protecting the activities of its domiciliary news publishers through application of its privilege law." *Id.* (citations omitted).

So too, here, Ms. Nathan is a New York-based reporter (Nathan Decl. ¶¶ 1-2), the *Post* Articles were written in New York based on information Ms. Nathan collected and gathered while working in New York (Nathan Decl. ¶ 11), and the articles were published in the *Post,* a New York publication (Nathan Decl. ¶¶ 2, 9-10). Accordingly, New York law—including the Shield Law—governs the scope of the privilege applicable to Ms. Nathan's work. *See In re Application to Quash Subpoena to Nat. Broad. Co., Inc.*, 79 F.3d 346, 351 (2d Cir. 1996) (applying New York Shield Law for subpoena issued to New York-based broadcaster in suit under Massachusetts law); *Dobrovolskaya v. Monarch Air Grp.*, Case No. 25-mc-00032 (JLR),

---

*4 (S.D.N.Y. Apr. 7, 2021), in this action the Sloane Parties issued the Subpoena in connection with the Wayfarer Parties' case (the only case in which the Sloane Parties are named as parties), which is premised on diversity jurisdiction. Therefore, New York State law should govern Ms. Nathan's privilege claim.

     In any event, the Second Circuit has noted that "the contours of privilege under federal law are 'identical' to those under the applicable New York statute." *Gonzales* at 34 (citing *Krase v. Graco Children Prods., Inc.*, 79 F.3d 346, 353 (2d Cir. 1996)). Accordingly, even if the Court were to determine that New York's Shield Law is inapplicable and only federal law governs the scope of the reporter's privilege here, the Subpoena should still be quashed as discussed in Section I.B, *infra*.

2025 WL 733258, at *3 (S.D.N.Y. Mar. 7, 2025) (applying New York Shield Law to subpoena issued to New York journalist for case in another jurisdiction).[4]

## 2. The information sought in the Subpoena is confidential and therefore absolutely privileged under the Shield Law.

Under the Shield Law, a New York professional journalist has an absolute privilege against compelled disclosure of "any news obtained or received in confidence or the identity of the source of such news coming into such person's possession in the course of gathering or obtaining news for publication." § 79-h(b); *see Baker v. Goldman Sachs & Co.*, 669 F.3d 105, 107 (2d Cir. 2012) ("New York's Shield Law provides journalists an absolute privilege from testifying with regard to news obtained under a promise of confidentiality."); *Dobrovolskaya*, 2025 WL 733258, at *4 (Shield Law "'bars compelled disclosure of news or its source obtained in confidence'") (quoting *Giuffre*, 221 F. Supp. 3d at 476). The Shield Law is based on the freedom of the press clause of the New York State Constitution (Article I, § 8) and New York's long-standing public policy of protecting the free press. *Immuno AG. v. Moor-Jankowski*, 77 N.Y.2d 235, 249 (1991) (citing *O'Neill v. Oakgrove Constr.*, 71 N.Y.2d 521, 528-29 (1988)).

Sara Nathan is a professional journalist and the Editor At Large of the *Post*. Nathan Decl. ¶¶ 1-2; *see* § 79-h(a)(6) (defining "professional journalist" as "one who, for gain or livelihood, is engaged in gathering, preparing, collecting, writing, editing . . . of news intended for a newspaper, magazine, news agency, press association or wire service or other professional medium or agency which has as one of its regular functions the processing and researching of news intended for dissemination to the public"). And Ms. Nathan gathered information regarding the dispute between the Lively Parties and the Wayfarer Parties for the purpose of writing a news

---

[4]     Although the Wayfarer Parties' claims against the Sloane Parties are asserted under California law, *see* ECF Doc. No. 50 at 211 n.27, New York law should still apply to this motion because of New York's superior interest in protecting its domiciliary journalists and news publications.

article to be published in the *Post* and disseminated to the public. Nathan Decl. ¶ 8. Thus, there is no question that the Shield Law applies to the documents and information she obtained in her newsgathering activities.

And the Subpoena seeks broad swaths of information—including, for example, all documents and communications concerning the Film, the Wayfarer Parties, and the Sloane Parties—that Ms. Nathan received under a promise of confidentiality precisely because of her position as a journalist. *See* Nathan Decl. Ex. 1; ¶ 12 (explaining the information Ms. Nathan gathered and relied upon to write the *Post* Articles was all provided to her on a confidential basis).[5]

Thus, under the Shield Law, Ms. Nathan cannot be compelled to reveal any of the documents or information sought in the Subpoena. *See, e.g.*, *Giuffre* at 476-77 (granting motion to quash subpoena to extent it sought information that journalist stated in declaration she received in confidence from sources whose identities are confidential); *Dobrovolskaya*, 2025 WL 733258 at *4 (rejecting subpoena-issuing party's argument that New York's absolute privilege can be overcome); *Flynn v. NYP Holdings Inc.*, 235 A.D.2d 907, 908 (3d Dep't 1997) ("[I]f the requested documents were deemed confidential, defendants would be afforded unqualified protection from having to divulge such sources or materials."). This, alone, demands that the Court grant Ms. Nathan's motion and quash the Subpoena.

### 3. The Sloane Parties cannot satisfy their heavy burden to overcome the Shield Law's privilege governing non-confidential information.

Even if the information the Sloane Parties seek in the Subpoena was <u>not</u> confidential— and it is—the Shield Law still provides a qualified privilege for non-confidential information.

---

[5] The articles, themselves, corroborate this fact, as they state details regarding the dispute were provided by "multiple sources," "one industry source," an "industry insider," a "studio source," and "sources close to production," all of whom are unidentified. *See* Nathan Decl. Exs. 2-3 (the *Post* Articles).

*See* § 79-h(c); *Dobrovolskaya*, 2025 WL 733258 at *5 ("The New York Shield Law provides

journalists with a qualified privilege as to news that is 'both unpublished and not obtained under

a promise of confidentiality.'") (quoting *Baker v. Goldman Sachs*, 669 F.3d at 107). New York's

"qualified privilege is a stringent one that imposes 'a very heavy burden' on any party seeking to

overcome it." *Giuffre*, 221 F. Supp. 3d at 476 (quoting *In re Am. Broad. Companies, Inc.*, 189

Misc.2d 805, 808 (N.Y. Sup. Ct. N.Y. Cnty. Oct. 1, 2001)).

The Shield Law's qualified privilege precludes compelled disclosure of unpublished,

non-confidential information obtained during the newsgathering process unless the subpoenaing

party satisfies an exacting three-part test by making a "clear and specific showing" that the news:

"(i) is highly material and relevant; (ii) is critical or necessary to the maintenance of a party's

claim, defense or proof of an issue material thereto; and (iii) is not obtainable from any

alternative source." § 79-h(c); *Baker*, 669 F.3d at 108; *Giuffre* at 477. Thus, "if the material

sought is pertinent merely to an ancillary issue in the litigation, not essential to the maintenance

of the litigant's claim, or obtainable through an alternative source, disclosure may not be

compelled." *O'Neill*, 71 N.Y.2d at 527 (collecting cases).

Because the party seeking to overcome the qualified privilege bears the burden of

proving each of these three elements by clear and convincing evidence, courts applying the

Shield Law routinely quash subpoenas seeking non-confidential information obtained by a

journalist. *See, e.g.*, *Nat. Broad Co.*, 79 F.3d at 351 (quashing subpoena issued to NBC because

the requesting party failed to demonstrate that the information was critical to its defense and not

available from other sources); *In re Eisinger*, Case Nos. 11-mc-00060 (BSJ), 09-10053-PBS,

2011 WL 1458230, at *4 (S.D.N.Y. Apr. 12, 2011), *aff'd sub nom. Baker v. Goldman Sachs*, 669

F.3d 105 (quashing subpoena to journalist because the requested information "cannot be deemed

critical or necessary to maintain [p]laintiffs' claims"). This Court should reach the same

conclusion here because the Sloane Parties cannot satisfy the three requirements to overcome the

Shield Law's privilege.

### a. The requested information is not highly material and relevant.

First, the Sloane Parties cannot make a "clear and specific showing" by demonstrative

factual corroboration that the information they seek from Ms. Nathan is "highly material and

relevant." *See* § 79-h(c); *O'Neill*, 71 N.Y.2d at 527. The Wayfarer Parties' First Amended

Complaint alleges that the Sloane Parties extorted and defamed the Wayfarer Parties and invaded

their privacy by orchestrating a smear campaign at Lively's direction, including "plant[ing] false

and defamatory information about Baldoni to throw Wayfarer and Baldoni on the defensive." *See*

ECF Doc. No. 50, ¶¶ 8, 187, 192, 194. But information Ms. Nathan obtained through her

newsgathering is not "highly material" to the underlying case merely because it relates to the

Lively Parties and the Wayfarer Parties. *See Giuffre*, 221 F. Supp. 3d at 479 (finding

newsgathering materials and testimony are not needed to "prove" an assertion about the

allegedly changing nature of a public "story"). For this reason alone, the Court should quash the

Subpoena.

### b. The requested information is not critical or necessary.

Second, the Sloane Parties cannot establish that the information is "critical or necessary"

to the maintenance of their defense against the Wayfarer Parties' claims. *See Giuffre* at 477-78

("The 'unpublished details of the newsgathering process' are . . . protected by the Shield Law,

and where the testimony is not 'critical or necessary' to maintain the plaintiff's claims, a motion

to quash must be granted by the district court.") (quoting *Eisinger*, 2011 WL 1458230, at *2). To

be "critical or necessary," the court must find "that the claim for which the information is to be

used virtually rises or falls" with the information sought. *Baker v. Goldman Sachs*, 669 F.3d at 108 (quoting *Nat'l Broad. Co.*, 79 F.3d at 351); *see Fowler v. Vary*, Case No. 22-mc-0063 (LAK), 20-CV-9586 (LAK), 2022 WL 3211638, at *12 (S.D.N.Y. Aug. 9, 2022) ("The test is 'not merely that the material be helpful or probative, but whether or not the defense of the action may be presented without it.'") (quoting *Nat'l Broad. Co.* at 351).

Importantly, this element is not satisfied merely because the journalist's materials support or undermine the <u>credibility</u> of a party or witness or may be used as impeachment. In *Fowler v. Vary*, the defendant subpoenaed a journalist concerning an article in *Buzzfeed* about an alleged sexual assault, seeking to obtain information about the plaintiff's credibility, which was integral to the plaintiff's sexual assault claim because there were no witnesses to the alleged incident. The court found that the Shield Law precluded compelled disclosure because the credibility information was not "critical or necessary" to the defense. Indeed, even if the alleged victim's credibility were a "central issue to the case," it would "require a sizeable leap to hold that it rises or falls on the admission or exclusion of [the journalist's] documents." *Fowler*, 2022 WL 3211638, at *12; *see Giuffre*, 221 F. Supp. 3d at 479-80 (holding journalist's communications with plaintiff in defamation lawsuit were not "critical" or "necessary" because the sought-after information would merely speak to plaintiff's credibility); *Am. Broad Cos.*, 189 Misc.2d at 808 ("[T]he privilege may only yield when the party seeking the material can define the specific issue, other than general credibility, as to which the sought-after interview provides truly necessary proof."). As Judge Kaplan noted in *Fowler*, there is a "lingering doubt surrounding whether credibility is <u>ever</u> a proper basis for overcoming the qualified privilege." 2022 WL 3211638, at *12 (emphasis in original); *see Nat'l Broad Co.*, 79 F.3d at 352 ("Ordinarily, impeachment material is not critical or necessary to the maintenance or defense of a claim.").

The same analysis applies here. The entire dispute in this case, including the Wayfarer Parties' claims against the Sloane Parties, concerns the credibility of the Lively Parties (including the Sloane Parties) versus the credibility of the Wayfarer Parties. *See generally* ECF Doc. Nos. 50, 84. But subpoenaing information that is merely "cumulative, or used to bolster witness credibility, [is] an improper use under the Shield Law." *Matter of Home Box Off., Inc. (Lasker)*, 64 Misc.3d 566, 2013 N.Y.S.3d 794 (Sup. Ct. N.Y. Cnty. 2019). The first demand in the Subpoena includes "telephone, video, or voice recordings of the Sloane Parties" – i.e., communications with the very party issuing the Subpoena. *See* Nathan Decl. Ex. 1 Request No. 1. For what purpose other than to bolster their own credibility would the Sloane Parties request telephone, video, or voice recordings of themselves? They can simply testify regarding their own communications; they do not need to pierce New York's Shield Law merely to attempt to corroborate their own testimony. The Sloane Parties' defense against the Wayfarer Parties' claims does not "rise or fall" upon Ms. Nathan's newsgathering information. The Subpoena should be quashed.

### c. The requested information can be obtained through alternative sources.

Finally, the Sloane Parties cannot plausibly argue that the materials sought in the Subpoena are "not obtainable from any alternative source." § 79-h(c). To overcome this hurdle, the subpoenaing party must "establish that it has turned to [the non-party journalist] 'only as a last resort.'" *Giuffre*, 221 F. Supp. 3d at 480 (quoting *Matter of Grand Jury Subpoenas Nat'l Broad. Co.*, 178 Misc.2d 1052 (Sup. Ct. N.Y. Cnty. 1998)). The Sloane Parties cannot satisfy this element because the information they seek can be obtained from other sources. For example, several of the documents demanded in the Subpoena consist of communications with parties to the lawsuit. *See* Nathan Decl. Ex. 1, Request Nos. 1, 4, 5, 6. If parties to the lawsuit participated

in the communications, the Sloane Parties should obtain discovery from those parties before attempting to pierce the privilege granted to journalists under the Shield Law. *See Giuffre* at 480 (granting motion to quash, in part, because defendant failed to exhaust alternative sources and was not permitted to "conscript [the non-party journalist] as her 'investigative arm' in the meantime"); *Home Box Off.*, 64 Misc.3d 566 (granting motion to quash subpoena because information sought from unused documentary footage was obtainable from other sources).

Moreover, it is not enough for the Sloane Parties to argue that the journalist's underlying work product (which, of course, can only be obtained from the journalist) is distinguishable from the information contained within that work product. If the fact that a journalist prepared her own notes—unavailable to any parties to a lawsuit—were enough to satisfy this element, the Shield Law's privilege over non-confidential information would be eliminated because the exception would swallow the rule. As one court in New York has explained:

> [T]he statute states that the "news" sought must not be otherwise available, meaning the information or news with the [unaired] footage, not the work product itself. If the statute were interpreted otherwise, outtakes would always be obtainable under the Shield Law because there would never be an alternative source.

*Home Box Off.*, 64 Misc.3d at 574.

In sum, the Sloane Parties cannot overcome the New York Shield Law that protects the documents and information Ms. Nathan obtained in her newsgathering, whether confidential or not. The Subpoena should be quashed.

**B.      The Federal Reporter's Privilege also precludes compelled disclosure of Sara Nathan's documents and warrants quashing the Subpoena.**

Even if the Court were to hold that the New York Shield Law does not apply in this case (and it does), Ms. Nathan's documents and information are protected from disclosure under federal law for the same reasons. The Second Circuit recognizes a reporter's privilege, based on

the First Amendment and federal common law, which protects journalists from compelled disclosure of confidential and non-confidential information obtained during newsgathering. *Marshall Project, Inc. v. City of Cleveland*, Case No. 24-MC-309 (VC), 2024 WL 4589667, at *4 (S.D.N.Y. Oct. 28, 2024) (citing *Baker v. F & F Inv.*, 470 F.2d 778, 783 (2d Cir. 1972) and *Gonzales*, 194 F.3d at 33).

The federal reporter's privilege serves a similar interest to New York's Shield Law and application of the federal standard routinely justifies quashing subpoenas issued to journalists. *See, e.g.*, *Marshall Project*, 2024 WL 4589667, at *6-7 (applying federal reporter's privilege and quashing subpoena seeking non-confidential sources from journalist); *In re McCray, Richardson, Santana, Wise, and Salaam Litig.*, 928 F. Supp. 2d 748 (S.D.N.Y. 2013), *adopted*, No. 03 Civ. 9685 (DAB), 991 F. Supp. 2d 363 (S.D.N.Y. 2013) (applying "Second Circuit's articulation of the reporter's privilege" and quashing subpoena issued to documentary film production company); *Pugh v. Avis Rent A Car Sys.*, Case No. M8-85, 1997 WL 669876 (S.D.N.Y. Oct. 28, 1997) (granting CBS, Inc.'s motion to quash subpoena seeking unpublished information obtained in connection with *60 Minutes* broadcast under federal common law).

For the federal reporter's privilege to apply, the journalist need only demonstrate the intent to use the collected material to "'disseminate information to the public'" and that such intent "'exist[ed] at the inception of the newsgathering process.'" *McCray*, 991 F. Supp. 2d at 467 (S.D.N.Y. 2013) (quoting *von Bulow*, 811 F.2d at 144). Ms. Nathan has satisfied both requirements here. *See* Nathan Decl. ¶ 8.

Like New York State courts, courts in the Second Circuit apply different standards to the reporters' privilege for confidential and non-confidential information. Since Ms. Nathan has established that the documents and information the Sloane Parties seek in the Subpoena were

obtained by her from confidential sources, *see* Nathan Decl. ¶¶ 9-10, 12, the higher protection

affording confidential information should apply. But regardless of which standard applies, for the

same reasons articulated above, the Sloane Parties cannot overcome the federal reporter's

privilege and the Subpoena should be quashed.

> **1.** **The Sloane Parties cannot overcome the Federal Reporter's Privilege protecting Ms. Nathan's confidential information.**

The standard for compelled disclosure of confidential information under the federal

reporter's privilege parallels the standard for <u>non-confidential</u> information under New York's

Shield Law. *See Petroleum Prods. Antitrust Litig.*, 680 F.2d at 5, 7 (2d Cir. 1982). Thus, the

Subpoena should be quashed under the federal reporter's privilege for the same reasons it should

be quashed under New York law. *See* Section I.A.3, *supra*.

> **2.** **The Sloane Parties cannot overcome the Federal Reporter's Privilege protecting Ms. Nathan's non-confidential information.**

Even for non-confidential information, a party subpoenaing a journalist bears the burden

to overcome the privilege under federal law. *See Schoolcraft v. City of N.Y.*, Case No. 10 Civ.

6005 (RWS), 2014 WL 1621480, at *3 (S.D.N.Y. Apr. 22, 2014) (although the standard to

compel disclosure of non-confidential journalist's information "'is less exacting than that which

applies to confidential materials, a litigant seeking nonconfidential materials will not be granted

unfettered access'") (quoting *Sikelianos v. City of N.Y.*, No. 05 Civ. 7673, 2008 WL 2465120, at

*1 (S.D.N.Y. June 18, 2008)). Under federal law, a subpoena seeking non-confidential

newsgathering information from a journalist is unenforceable unless the issuing party

demonstrates (1) "that the materials at issue are of likely relevance to a significant issue in the

case," and (2) "that the materials at issue 'are not reasonably obtainable from other available

sources.'" *Gonzales*, 194 F.3d at 36; *see Breaking Media*, 2012 WL 1299108, at *3 (same). The Sloane Parties cannot meet either requirement.

### a. The requested information is cumulative.

Under the first prong, the subpoenaing party cannot compel disclosure of information and materials that are "merely duplicative or serv[e] a 'solely cumulative purpose.'" *Schoolcraft*, 2014 WL 1621480, at *3 (quoting *United States v. Burke*, 700 F.2d 70, 78 (2d Cir. 1983)). Here, to the extent the information the Subpoena seeks is relevant to the issues in the case, the information sought is duplicative of discovery that the Sloane Parties can obtain from the parties to the litigation and others who are not journalists. Litigants should not be permitted to compel disclosure of a journalist's unpublished nonconfidential information that is cumulative of other available evidence. *See Burke*, 700 F.2d at 78 (reporter's privilege not overcome because information sought would serve solely cumulative purpose). But that is precisely what the Sloane Parties seek to do here, as demonstrated by the expansive nature of the demands in their Subpoena. *See* Nathan Decl. Ex. 1, Request Nos. 1, 4. Such broad, unfocused demands reflect the Sloane Parties' unwillingness—or inability—to identify and seek non-duplicative information.

### b. The requested information can be obtained through alternative sources.

For the same reasons set forth in Section I.A.3.c, *supra*, the Sloane Parties cannot meet their burden to establish that the requested information is unavailable from alternative sources. *See Gonzales* at 36; *In re Petroleum Prods.*, 680 F.2d at 9 (finding litigant must first run alternative sources to ground to "obviate the need to inquire of the journalists"). Courts in the Second Circuit have quashed subpoenas when information similar to the journalist's work product could be obtained elsewhere. *See, e.g.*, *Lebowitz v. City of New York*, 948 F. Supp. 2d

392, 394-95 (S.D.N.Y. 2013) (holding defendant failed to demonstrate the information sought in subpoena was not reasonably obtainable from other sources because three identified witnesses had not yet been questioned about the information). Parties to the action and witnesses to the facts from whom the journalist obtained information are more "closely associated" with the case and obtaining information from those individuals does not impinge on the First Amendment rights of journalists. Therefore, alternative witnesses are a preferable source of information for litigants. *See Lebowitz*, 948 F. Supp. 2d at 395-96 (a party, "having failed almost completely to pursue the testimony of numerous non-reporter witnesses to [relevant events], can hardly bootstrap that failure into an argument for breaking the reporter's privilege").

The Sloane Parties cannot show that Ms. Nathan is the only source for the requested information. The Subpoena should be quashed on that basis as well.

## II. The Court Should Quash the Subpoena Because it Places an Undue Burden on Non-Party Sara Nathan.

The Subpoena also should be quashed under Rule 45 because it is overbroad and subjects Ms. Nathan to an undue burden. *See* Fed. R. Civ. P. 45(d)(3)(A)(iv).

Federal Rule of Civil Procedure 26 permits discovery of materials relevant to "any party's claim or defense." But "[d]iscovery is not boundless, and a court may place limits on discovery demands that are 'unreasonably cumulative or duplicative,' or in cases 'where the burden or expense of the proposed discovery outweighs its likely benefit.'" *Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*, Case No. 03 Civ. 5560 (RMB) (HBP), 2008 WL 4452134, at *4 (S.D.N.Y. Oct. 2, 2008) (quoting Fed. R. Civ. P. 26(b)(2)(C)). Thus, subpoenas that seek "all documents and communications" related to a subject matter are impermissible. *See, e.g.*, *Oakley v. MSG Networks, Inc.*, Case No. 17-cv-6903 (RJS), 2025 WL 72111 (S.D.N.Y. Jan. 9, 2025) ("Courts have regularly held that subpoenas seeking 'All Documents' or 'All

Communications' on a given issue are 'overbroad,' 'impermissible,' and 'presumptively improper.'") (quoting *Hedgeye Risk Mgmt., LLC v. Dale*, No. 21-cv-3687 (ALC) (RWL), 2023 WL 4353076, at *2 (S.D.N.Y. July 5, 2023)); *Gropper v. David Ellis Real Estate L.P.*, Case No. 13 Civ. 2068 (ALC) (JCF), 2014 WL 518234, at *4 (S.D.N.Y. Feb. 10, 2014) (holding request for "any and all documents concerning [a] subject" was "inherently overbroad").

Further, "a party issuing a subpoena must take reasonable steps to avoid imposing an undue burden on the person subject to the subpoena, and a court must, on a timely motion, quash or modify a subpoena if it subjects a person to undue burden." *Breaking Media, Inc.*, 2021 WL 1299108, at *5 (internal quotation and citations omitted). In determining whether a subpoena imposes an undue burden, courts must

> "weigh the burden to the subpoenaed party against the value of the information to the serving party. Whether a subpoena imposes an 'undue burden' depends upon such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed."

*Breaking Media*, 2021 WL 1299108, at *5-6 (quoting *Copantitla v. Fiskardo Estiatorio, Inc.*, No. 09 Civ. 1608 (RJH) (JCF), 2010 WL 1327921, at *10 (S.D.N.Y. Apr. 5, 2010)).

Here, the Sloane Parties' requests in the Subpoena are "inherently overbroad," particularly since they seek documents that are cumulative of information already collected and/or obtainable from other sources. *See* Nathan Decl. Ex. 1, Request Nos. 1, 4 (seeking "all documents and communications" concerning the Sloane Parties and the Film).

Moreover, the Sloane Parties made no effort to limit, reduce, or minimize the burden being placed on a non-party, let alone a non-party journalist who has the protections of, at a minimum, the federally recognized reporter's privilege. Indeed, based on the breadth of the

documents requested in the Subpoena, the Sloane Parties would be hard-pressed to identify any information relating to the lawsuit that they are <u>not</u> demanding that Ms. Nathan produce.

The Court therefore should quash the Subpoena in its entirety as unduly burdensome.

## **CONCLUSION**

For all the foregoing reasons, Sara Nathan respectfully requests that this Court grant her motion to quash the Subpoena and grant such other and further relief as the Court deems appropriate.

Dated: New York, New York
June 3, 2025

Respectfully submitted,

MINTZ & GOLD LLP

By: _____

Steven G. Mintz
Scott A. Klein
Timothy J. Quill, Jr.
600 Third Avenue, 25th Floor
New York, New York 10016
Tel: (212) 696-4848
mintz@mintzandgold.com
klein@mintzandgold.com
quill@mintzandgold.com

*Attorneys for Non-Party Sara Nathan*